James L. Wraith, State Bar No. 112234
E-mail: jwraith@selvinwraith.com
David A. Evans, State Bar No. 181854
E-mail: devans@selvinwraith.com
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone: (510) 874-1811
Facsimile: (510) 465-8976

Attorneys for Plaintiff
Western World Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PROFESSIONAL COLLECTION CONSULTANTS,<br><br>Defendant. | CASE NO.<br><br>**WESTERN WORLD INSURANCE COMPANY'S COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT** |

Plaintiff Western World Insurance Company complains and alleges against Defendant Professional Collection Consultants as follows:

## I. JURISDICTION AND VENUE

1. Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between plaintiff and defendant in this matter and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, as more fully explained below. This court also has jurisdiction over these claims under 28 U.S.C. § 2201, the Declaratory Judgment Act.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(a)(1) and (c) in that the defendant resides in this district and because it is subject to personal jurisdiction at the time the action is commenced. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claim occurred in this district, including the execution of the application for insurance and an underlying wrongful termination claim involving defendant's business located in Culver City, California. In addition, the contract of insurance that is the subject of this complaint identifies a location within this district – 6700 South Centinela Boulevard, Culver City, California 90230 – as the location of the insured's business.

## II. PARTIES

3. Plaintiff Western World Insurance Company ("Western World") is a New Hampshire corporation with its principal place of business in Franklin Lakes, New Jersey, which is duly authorized to conduct business in California.

4. Defendant Professional Collection Consultants ("PCC") is a California corporation with its principal place of business in Culver City, California.

## III. GENERAL ALLEGATIONS

### *The Insurance Application*

5. In February 2014, PCC applied to Western World for a directors and officers liability insurance policy by submitting a CNA-branded application form entitled EPack Extra Renewal Application accepted by Western World ("Application").

6. The Application, submitted to Western World on February 7, 2014, was signed by PCC President Todd Shields. A true and correct copy of the Application bearing what Western World is informed and believes to be Mr. Shields' signature is attached hereto as Exhibit A, and is incorporated herein by reference.

7. On page 3 of the Application, the applicant is asked: "None of the individuals to be insured under any Coverage Part (the "Insured Persons") have a basis

to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim?" In response, PCC checked the "no" box.

8. On page 3 of the Application, the application states: "Without prejudice to any other rights and remedies of CNA, any claim arising from any facts, circumstances, or situations required to be disclosed is excluded from the portion of any renewal limit of liability that exceeds the expiring limit of liability in the proposed insurance."

***The Western World Policy***

9. Based upon the representations made by PCC and its agents and representatives, Western World issued a "Directors, Officers, Insured Entity and Employment Practices" liability insurance policy to Professional Collection Consultants for the policy period February 17, 2014 to February 17, 2015, under policy number PRL8000034 ("Western World Policy"). A true and correct copy of the Western World Policy is attached hereto as Exhibit B and is incorporated herein by reference.

10. The Western World Policy is subject to all of the terms, conditions, limitations, exclusions, and endorsements contained therein, including the following Limits of Liability: a $1,000,000 limit under Coverage A – Directors and Officers Liability, with a 15,000 retention; and a $1,000,000 limit under Coverage B – Employment Practices Liability, with a $50,000 retention.

11. The Western World Policy provides: "In consideration of the payment of the premium and reliance upon the statements made and information furnished to us as part of the 'application', and subject to all the provisions of this policy, we agree to provide insurance described in this Coverage Form and its applicable endorsements."

12. The insuring agreement of the Western World Policy for Coverage A - Directors and Officers Liability, provides, in pertinent part:

> We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful acts":
>
> a. Arising solely out of the "individual insured's" performance of his or her duties on behalf of the "organization"; or
>
> b. Attributed to the "organization".

13. The insuring agreement of the Western World Policy for Coverage B - Employment Practices Liability, provides, in pertinent part:

> We will pay on behalf of the insured all "loss" that the insured becomes legally obligated to pay because of a "claim" first made against the insured during the policy period for "wrongful employment acts" or "third party wrongful acts":
>
> a. Arising solely out of the "individual insured's" performance of his or her duties on behalf of the "organization"; or
>
> b. Attributed to the "organization".

14. The Western World Policy defines "application" to mean, in pertinent part, "an application, whether it is ours or another's, and any material submitted for this coverage."

15. The Western World Policy defines "claim" to mean, in pertinent part:

> a. A written demand for monetary relief received by an insured seeking to hold the insured responsible for a "wrongful act", "wrongful employment act", or "third party wrongful act" including, but not limited to, the service of suit or the institution of arbitration or mediation proceedings against the insured;
>
> b. A judicial or administrative proceeding initiated against an insured seeking to hold the insured responsible for a "wrongful employment act" or a "third party wrongful act", including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal therefrom;

c. A written demand for non-monetary or injunctive relief received by an insured seeking to hold the insured responsible for a "wrongful act", "wrongful employment act", or "third party wrongful act" including, but not limited to, the service of suit or the institution of arbitration or mediation proceedings against the insured;

d. A civil proceeding against any insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

e. A criminal proceeding against any insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

f. A civil, administrative or regulatory proceeding against any insured commenced by the filing of a notice of charges or similar document;

g. A civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by any "individual insured" of a written notice, investigative order, or subpoena from the investigating authority identifying such "individual insured" as an individual, against whom a proceeding described in paragraph c., d., or e. immediately above, may be commenced.

A "claim" will be considered first made when an insured or its legal representative or agent first receives written notice of a "claim". If more than one "claim" arises out of the same "wrongful act", "wrongful employment act" or "third-party wrongful act", or if an "interrelated claim", we will consider all the "claims" to be first made on the date the earliest of the "claims" was made.

16. The Western World Policy defines "defense costs" to mean, in pertinent party, "reasonable and necessary fees, costs and expenses resulting from the defense and appeal of any 'claim' against the insured, excluding salaries and bonuses of the 'organization's' officers or 'employees.'"

17. The Western World Policy defines "employee" to mean "any natural person whose labor or service is engaged by and directed by the 'organization' while

performing duties related to the conduct of the 'organization's' business. 'Employee' includes leased, part-time, seasonal and temporary workers, volunteers and interns."

18. The Western World Policy defines "interrelated claims" to mean:

> all "claims" based upon or arising from "wrongful acts", "wrongful employment acts," or "third-party wrongful acts" that have in common any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

19. The Western World Policy defines "individual insureds" to mean "any person(s) who were, now are, or will be directors, trustees, officers, 'employees', or committee members of the 'organization', including their estates, heirs, legal representatives, or assigns in the event of their death, incapacity or bankruptcy."

20. The Western World Policy defines "loss" to mean, in pertinent part:

> damages and settlements which an insured is legally obligated to pay as a result of a "claim" for a "wrongful act" or "wrongful employment act", or "third party wrongful act", pre-judgment and post-judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law.
>
> "Loss" does not include fines, penalties, taxes, the multiplied portion of any multiple damage award or damages owed based on an express obligation by written or oral agreement or amounts owed under any contract or agreement.…
>
> In addition, "loss" does not include the cost of any remedial, preventative or non-monetary relief, including but not limited to, any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority.

21. The Western World Policy defines "wrongful act" to mean:

> any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duties, "personal injury offense" or violations of the Sherman Antitrust Act or similar federal, state or local statutes or rules.
>
> a. By the "organization"; or

b. By an "individual insured", arising solely from duties conducted on behalf of the "organization"; or

c. Asserted against an "individual insured" because of an actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties by the "organization".

A "wrongful act" does not include any "wrongful employment act" or "third party wrongful act".

22. The Western World Policy defines "wrongful employment act" to mean, in pertinent part:

any actual or alleged act of the following:

b. "Harassment; or

c. "Retaliation"; or

d. "Wrongful termination."

23. The Western World Policy defines "wrongful termination" to mean:

termination of an employment relationship in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment. However, "wrongful termination" does not include any breach of a written employment contract.

24. The Western World Policy contains exclusions under which the Western World Policy does not apply to any "loss" or "defense costs" in connection with any "claim" made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving the following, among others:

"prior knowledge": any actual or alleged act, error or omission, breach of duty or circumstance that an insured:

a. Had knowledge of prior to the effective date of the policy; and

b. Had a reasonable belief the actual or alleged act, error or omission, breach of duty or circumstance could result in a "claim".

25. The Western World Policy contains a "Defense Costs Endorsement," form DEL16 (01/11), which amends Section I – Insuring Agreements, in pertinent part as follows:

> 5. Defense:
>
> b. Payments for "defense costs" will reduce the applicable Aggregate Limit of Insurance.
>
> c. Our right and duty to defend any "claim" ends when we have used up the applicable Aggregate Limit of Insurance in payment of "defense costs" and "loss".

26. The Western World Policy contains a "Shared Limits Endorsement," form DEL74 (10/11), which amends Section IV – Limits of Insurance as follows:

> 5. Notwithstanding Subsections 2. and 3. to the contrary, our maximum Aggregate Limit of Insurance, as stated on the Coverage Part Declarations, for the sum of all "loss" and "defense costs" for all "claims" or "interrelated claims" made under Coverages A. and B. will be $1,000,000.

27. The Western World Policy contains a "Reliance Upon Another's Application Endorsement," form DEL88 (10/11), which amends Section VI – Conditions, Subsection B to add the following:

> 8. Representations:
>
> Any and all references to an "application" in this policy will include the application or proposal described below. We have relied upon all statements, representations and other information and documents contained in or submitted with the other application or proposal as if they were submitted directly to us using our own "application" form.
>
> Type of Application/Proposal: EPack Extra
>
> Carrier: CNA
>
> Date Signed: 2/7/2014

***The Hudson, Pole and McCann Claims Against PCC***

28. PCC is a debt collector.

29. Gregory Hudson was employed by PCC beginning in 2002.

30. Beblen Pole and Lisa McCann were also employed by PCC.

31. In 2007, Hudson reported what he believed to be illegal conduct by PCC to the California Employment Development Department ("EDD").

32. As of March 2013, Hudson stated to other PCC personnel that PCC illegally obtained and made use of private financial information of debtors and believed that PCC would be forced to close.

33. On June 17, 2013, Hudson expressed to a PCC officer that he was dissatisfied with his job at PCC because he believed PCC illegally obtained and used debtors' financial information.

34. In or about August 2013, the Federal Bureau of Investigation ("FBI") conducted a search of the PCC offices, seized evidentiary material, and conducted interviews with PCC employees, including Hudson.

35. On or about September 11, 2013, PCC President Todd Shields' counsel met with an Assistant United States Attorney who advised that Shields was the target of a federal criminal investigation and that the Department of Justice began a criminal investigation of PCC for alleged illegal debt collection practices.

36. On about November 26, 2013, Hudson was served with a federal grand jury subpoena to testify and produce documents concerning allegations that PCC illegally obtained financial and employment information about debtors from the EDD and banks.

37. On or about December 10, 2013, pursuant to the subpoena, Hudson was interviewed by an attorney from the United States Attorney's Office for the Central District of California and produced documents.

38. On March 19, 2014, PCC terminated Hudson's employment.

39. On information and belief, Western World alleges that PCC also terminated Pole's and McCann's employment subsequent to March 2014.

40. On July 7, 2014, Hudson, demanded mediation with PCC as a prerequisite to initiating litigation arising from PCC's purported retaliation and discrimination

against and wrongful termination of Hudson.

41. PCC provided notice to Western World of Hudson's demand for mediation on July 11, 2014.

42. Western World agreed to defend PCC against Hudson's claim under a reservation of rights dated August 7, 2014 and a supplemental reservation of rights letter dated January 9, 2015.

43. On January 14, 2015, Pole and McCann also demanded mediation with PCC as a prerequisite to initiating litigation arising from PCC's purported retaliation and discrimination against and wrongful termination of Pole and McCann.

44. PCC provided notice to Western World of the demand for mediation by Pole and McCann on January 15, 2015.

45. Western World agreed to defend PCC against the claims asserted against Pole and McCann, and reasserted its agreement to defend Hudson, under a supplemental reservation of rights letter dated January 28, 2015.

46. Hudson filed a lawsuit against PCC on January 29, 2015, as Los Angeles County Superior Court Case No. BC570780, alleging causes of action for Wrongful Termination in Violation of Public Policy, Violation of Labor Code §1102.5, Disability Discrimination in Violation of Government Code §12940 et seq., and Defamation.

**FIRST CAUSE OF ACTION**

**(Rescission)**

47. Western World refers to paragraphs 1 through 46, inclusive, and by reference makes them a part hereof.

48. PCC submitted an application for insurance to Western World for the Western World Policy on February 7, 2014.

49. The questions asked by Western World in the Application were important and material to Western World in determining whether PCC was a risk that Western World was willing to undertake for the policy period at issue and what premium would

be appropriate to charge for the coverage provided.

50. Western World is informed and believes, and on that basis, alleges, that PCC failed to disclose, misrepresented, or concealed material information in the Application, including but not limited to, the question of whether PCC had a "basis to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim" against PCC.

51. Western World is informed and believes, and on that basis, alleges, that PCC's responses to the questions in the Application were false or materially incomplete. With respect to the question referenced in the preceding paragraph of this complaint, the response was false or materially incomplete and that the response failed to disclose, misrepresent, or concealed the following information:

a. Hudson accused PCC of illegally obtaining and using debtors' financial information to other PCC employees, including in a meeting with a PCC officers on June 17, 2013.

b. That the FBI executed a search warrant in August 2013 at the PCC offices, interviewed PCC personnel and seized evidentiary material.

c. That Shields was advised by an Assistant United States Attorney on September 11, 2013 that he was a target of a federal criminal investigation, and that the Department of Justice began a criminal investigation of PCC for alleged illegal debt collection practices.

d. That while at work in November 2013, PCC's employee, Hudson, was served with a federal grand jury subpoena to testify and produced documents concerning allegations that PCC illegally obtained financial and employment information about debtors from the EDD and financial institutions.

e. That in December 2013, Hudson complied with the federal grand jury subpoena, was interviewed by an attorney from the United States

Attorney's Office for the Central District of California and produced documents as required by the subpoena.

52. Western World is informed and believes that PCC knew that the responses it provided in the Application, including the concealment of the information in Paragraph 48, referenced above, were incorrect or incomplete.

53. PCC's failure to disclose the information in Paragraph 48 concealed PCC's exposure to significant liability to third parties for illegal acquisition and use of private financial information, including exposure to actual damages, statutory fines and penalties, punitive damages, litigation costs and attorneys' fees.

54. PCC's misrepresentations and concealments in the Application are material to Western World's decision to issue the Western World Policy because had Western World known that PCC's responses to the Application concealed facts and included misrepresentations, including PCC's exposure to significant civil liability, Western World would not have issued the Western World Policy, or would have issued the Western World Policy subject to materially different terms and conditions.

55. Western World intends the service of the Summons and Complaint in this action to serve as formal notice of rescission of the Western World Policy, and hereby offers to restore any insurance premiums paid for the Western World Policy to PCC.

56. Western World seeks an order rescinding the Western World Policy issued to PCC, so that it is null and void *ab initio*.

57. Western World seeks an order rescinding the Western World Policy because Western World has no other adequate remedy at law. Western World will suffer substantial harm and injury under the Western World Policy if it is not rescinded, because Western World has expended, and will continue to expend, substantial sums in the defense of PCC and may be found liable to indemnify PCC for a risk materially different from the risk bargained for, and all in an amount which exceeds the jurisdictional minimum.

///

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment – Duty to Defend)**

58. Western World refers to paragraphs 1 through 57, inclusive, and by reference makes them a part hereof.

59. There is at present a controversy between Western World and PCC in that Western World contends that there is no coverage under the Western World Policy for the claims asserted by Hudson, Pole and McCann, and therefore no duty to defend PCC. Western World is informed and believes and thereon alleges that PCC contends otherwise.

60. Western World requests that this Court declare that there is no potential for coverage and, therefore, no duty to defend PCC under the Western World Policy with respect to the Hudson, Pole and McCann claims for the reasons set forth below.

61. The Hudson, Pole and McCann claims against PCC are excluded by the Western World Policy's "prior knowledge" exclusion because prior to the inception of the Western World Policy on February 17, 2014, PCC knew that Hudson had been reprimanded repeatedly, knew Hudson openly charged that PCC was engaged in illegal conduct and would be shut down, and knew that Hudson, Pole and McCann had been whistleblowers who provided information to assist a criminal investigation against PCC beginning in September 2013.

62. Accordingly, Western World requests that this Court declare there is no coverage under the Western World Policy for the Hudson, Pole and McCann claims, and that Western World therefore has no duty to defend PCC against the Hudson, Pole or McCann claims.

63. The Hudson, Pole and McCann claims against PCC are not insured under the Western World Policy because they assert "claims" for "interrelated claims" which were first made to prior to the inception of the Western World Policy. The FBI action against PCC, the federal grand jury investigation and investigation by the United States Attorney's Office (the "Federal Claims") are "claims" under the Western World

Policy. The Hudson, Pole and McCann claims against PCC assert "wrongful acts" and "wrongful employment acts" that arise from the same facts, circumstances, situations, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes as the Federal Claims. The Federal Claims, which are "interrelated claims" with the Hudson, Pole and McCann claims, were first made on August 27, 2013, more than five months prior to the inception date of the Western World Policy.

64. Accordingly, Western World requests that this Court declare there is no coverage under the Western World Policy for the Hudson, Pole and McCann claims because they are "interrelated claims" with the Federal Claims which were first made prior to the inception of the Western World Policy, and that Western World therefore has no duty to defend PCC against the Hudson, Pole or McCann claims.

**THIRD CAUSE OF ACTION**

**(Declaratory Judgment – Duty to Indemnify)**

65. Western World refers to paragraphs 1 through 64, inclusive, and by reference makes them a part hereof.

66. There is at present a controversy between Western World and PCC in that Western World contends that there is no coverage under the Western World Policy for the claims asserted by Hudson, Pole and McCann, and therefore no duty to indemnify PCC. Western World is informed and believes and thereon alleges that PCC contends otherwise.

67. Western World requests that this Court declare that there is no potential for coverage and, therefore, no duty to indemnify PCC under the Western World Policy with respect to the Hudson, Pole and McCann claims for the reasons set forth below.

68. The Hudson, Pole and McCann claims against PCC are excluded by the Western World Policy's "prior knowledge" exclusion because prior to the inception of the Western World Policy on February 17, 2014, PCC knew that Hudson had been

reprimanded repeatedly, knew Hudson openly charged that PCC was engaged in illegal conduct and would be shut down, and knew that Hudson, Pole and McCann had been whistleblowers who provided information to assist a criminal investigation against PCC beginning in September 2013.

69. Accordingly, Western World requests that this Court declare there is no coverage under the Western World Policy for the Hudson, Pole and McCann claims, and that Western World therefore has no duty to indemnify PCC against the Hudson, Pole or McCann claims.

70. The Hudson, Pole and McCann claims against PCC are not insured under the Western World Policy because they assert "claims" for "interrelated claims" which were first made to prior to the inception of the Western World Policy. The "Federal Claims" are "claims" under the Western World Policy. The Hudson, Pole and McCann claims against PCC assert "wrongful acts" and "wrongful employment acts" that arise from the same facts, circumstances, situations, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes as the Federal Claims. The Federal Claims, which are "interrelated claims" with the Hudson, Pole and McCann claims, were first made on August 27, 2013, more than five months prior to the inception date of the Western World Policy.

71. Accordingly, Western World requests that this Court declare there is no coverage under the Western World Policy for the Hudson, Pole and McCann claims because they are "interrelated claims" with the Federal Claims which were first made prior to the inception of the Western World Policy, and that Western World therefore has no duty to indemnify PCC against the Hudson, Pole or McCann claims.

**PRAYER**

WHEREFORE, Plaintiff Western World Insurance Company prays for judgment against PCC as follows:

1. For entry of judgment rescinding the Western World Policy and returning

the parties to a position status quo ante, including reimbursement of expenses paid under the Western World Policy to defend PCC in the Hudson, Pole and McCann claims;

2. For a declaration by the Court that Western World has no duty to defend PCC in the Hudson, Pole and McCann claims;

3. For a declaration by the Court that Western World has no duty to indemnify PCC in the Hudson, Pole and McCann claims;

4. For such other and further relief as the court deems just and proper.

Dated: March 30, 2015

SELVIN WRAITH HALMAN LLP

By: /s/ David A. Evans
James L. Wraith
David A. Evans
Attorneys for Plaintiff
Western World Insurance Company

163904.doc