# EXHIBIT "A"

Mark Allen Kleiman [115919]
Pooja Rajaram [241777]
2907 Stanford Avenue
Venice, CA 90292
Telephone: (310) 306-8094
Facsimile: (310) 306-8491
mkleiman@quitam.org
prajaram@quitam.org

Jay W. MacIntosh, SBN 209912
Law Offices of Jay W. MacIntosh
16633 Ventura Boulevard, Suite 1200
Encino, CA 91436
Telephone: (310) 288-4330
Facsimile: (310) 479-4629
jay@jaywmacintoshlaw.com

Attorneys for Plaintiff

FILED
Superior Court of California
County of Los Angeles

JAN 29 2015

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Shaunya Bolden

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

GREGORY LORENZO HUDSON;

    Plaintiff,

v.

PROFESSIONAL COLLECTION
CONSULTANTS, Inc.; Does 1-10, and each of them,

    Defendants.

Case No.: BC 570780

COMPLAINT FOR DAMAGES

1. Wrongful Termination in Violation of Public Policy;
2. Violation of Labor Code §1102.5;
3. Disability Discrimination in Violation of Government Code §12940, et. seq.;
4. Defamation

Plaintiff Gregory Lorenzo Hudson hereby alleges as follows:

1. Professional Collections Consultants (hereinafter "PCC") is a debt collection agency.

2. Gregory Hudson was fired by PCC. He was fired because of his opposition to the company's illegal debt collection practices, which included bribing government employees and bank personnel to get private and confidential information about debtors. Hudson openly cooperated with

1

COMPLAINT FOR DAMAGES

1. the criminal investigation into PCC by the Federal Bureau of Investigation and the United States Department of Justice. Hudson was believed by PCC to be the source of information that led to a search warrant being executed at the PCC offices.

3. Along with (and perhaps as a part of PCC's retaliation against Hudson) was a campaign of incessant discrimination against him because of his disabling medical conditions, and the repeated refusal of his reasonable and modest requests for accommodation.

4. In firing Hudson and thereafter, PCC's President, Todd Shields, made statements which were false and defamatory, wrongly accusing Hudson of theft and dishonesty.

## PARTIES

5. Plaintiff Gregory Hudson is a resident of California and was employed by PCC as a Debt Collector beginning in February, 2002.

6. Defendant PCC, Inc., is a corporation headquartered in Culver City, California that collects debts on overdue commercial accounts.

7. At all times material hereto, Todd Shields (hereinafter "Shields") was the President of PCC, Inc.

8. Plaintiff is informed and believes and based thereon alleges that Does 1-10 served as agents, partners, and/or representatives of one and another in the retaliation against him, and were acting within the course, scope and authority of such agency, partnership and/or representation for the conduct described herein.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over the Defendant PCC because the Defendant operates a business in the State of California and has offices in the County.

## ALLEGATIONS

10. PCC is a debt collector. PCC would purchase delinquent accounts from Pac Bell Wireless/Cingular, Verizon, Chase Bank, and other creditors and attempt to collect on the debts. As a debt collector PCC is governed by federal and state laws intended to protect debtors from unfair, deceptive, and illegal collection practices.

//

11. One of those laws is the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. In passing this law Congress found that there was "abundant evidence of abusive, deceptive, and unfair debt collection practices' which contribute "to invasions of individual privacy". (15 U.S.C. §1692(a).)

12. The Act protects against invasions of privacy by prohibiting, *inter alia*, communicating "in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (15 U.S.C. §1692c(b).)

13. The Act likewise prohibits debt collectors from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." (15 U.S.C. §1692e(10).)

14. Similarly in passing California's Fair Debt Collection Practices Act the Legislature found that "Unfair or deceptive collection particles undermine the public confidence which is essential to the continued functioning of the banking and credit system . . ." (Civil Code §1788.1(a).)

15. Accordingly, the California FDCPA prohibits "Communicating to any person a list of debtors which discloses the nature or existence of a consumer debt". (Civil Code §1788.12(c).)

16. Relator is informed and believes and based thereon alleges that in or about 2006, PCC hired a collector named Mike Flowers (hereafter "Flowers").

17. Flowers began working in the "Legal Collections" Department, which involved debts that were supposedly being turned over for litigation. It quickly became apparent to Hudson and the other collectors that Flowers was being given the first opportunity to collect on any bad debts in California or Nevada that were over $1,500.00.

18. Hudson learned Flowers received this favorable treatment because Flowers had a contact within a government agency. Flowers would give his government source a list of debtors and their social security numbers. The government agency source gave Flowers private confidential information about the consumer's wages, job location, and other information, in violation of the law.

19. Hudson learned that Flowers then used the information he had illegally obtained to initiate collection actions against the debtor.

20. When Hudson complained about this illegal activity to his then-supervisor, Gary Conden, Conden told him to get his own "source".

21. Hudson later discovered that another collector, Michael Jackson, had a source at the Bank of America. Jackson would give the Bank of America employee a list of debtor's names along with their social security numbers. The Bank of America employee then gave Jackson information about the debtors' bank account numbers (if they had B of A accounts) and the amount of money in the accounts, so that Jackson could initiate collection actions.

22. Although Hudson again complained about this to his supervisor, Gary Conden, Conden merely reiterated his earlier suggestion that Hudson join in the illegal conduct. Hudson refused, stating that PCC was breaking the law and that he wanted no part of it.

23. It was also clear to Hudson that PCC's President knew of and condoned this activity, as Hudson saw Shields at a company Christmas party hand Flowers a thick envelope which, on information and belief, stuffed with cash, while Shields told Flowers that this gift was for Flowers' source.

24. Instead, in 2007, Hudson reported this to the EDD. For months, Hudson was in contact with an EDD fraud investigator named "Chemy" about this matter, but the EDD ultimately dropped the investigation because it could never locate Flowers' source.

25. PCC retaliated against Hudson for his refusal to join in the aforementioned illegal activities. The primary (although by no means the exclusive) weapon of retaliation was economic. PCC manipulated the accounts given to Hudson to make sure that his income plummeted. With fringe benefits, Hudson's salary had steadily increased from 2002 though 2005:

| Year | Salary | Fringe Package | Total Compensation | Change from Prior Year |
|------|--------|----------------|--------------------|------------------------|
| 2002 | 40,814.31 | 8,571.01 | 49,385.32 | — |
| 2003 | 71,821.65 | 15,082.55 | 86,904.20 | 76% increase |
| 2004 | 84,331.24 | 17,709.56 | 102,040.80 | 17.4% increase |
| 2005 | 91,927.14 | 19,304.70 | 111,231.84 | 9.0% increase |

4

COMPLAINT FOR DAMAGES

After Hudson complained about the illegal conduct, this picture changed abruptly and dramatically:

| Year | Salary | Fringe Package | Total Compensation |
|---|---|---|---|
| 2006 | 74,881.30 | 15,725.07 | 90,606.37 |
| 2007 | 64,726.98 | 13,592.67 | 78,319.65 |
| 2008 | 66,822.76 | 14,032.78 | 80,855.54 |
| 2009 | 61,903.12 | 12,999.66 | 74,902.78 |
| 2010 | 59,154.96 | 12,212.54 | 71,367.50 |
| 2011 | 54,245.47 | 11,391.55 | 65,637.02 |
| 2012 | 47,257.25 | 9,924.02 | 57,181.27 |
| 2013 | 43,464.15 | 9,127.47 | 52,591.62 |

26. In addition to the unrelenting squeeze on Hudson's ability to earn a living, PCC embarked upon a campaign of mounting harassment with the intent of forcing him to either join in the lawbreaking or to quit. The office manager, Josephine Young (hereinafter "Young") singled Hudson out for to intense and ongoing scrutiny and discriminatory treatment. Unlike other employees, Hudson:

(A) Was not permitted to read a newspaper at his desk during break times;

(B) Was not allowed to talk to his co-workers unless he and they were on break;

(C) Was not permitted to begin work early to make up time lost for necessary medical appointments;

(D) Had to clock in – even though he was on salary;

(E) Was harassed for wearing sandals for his foot condition;

(F) Was not allowed to take calls from Spanish speaking debtors even though other collectors who did not speak Spanish were allowed to take such calls.

27. Hudson was also denied reasonable requests for accommodation for his orthopedic and other problems, and was told he should seek work somewhere else because of his poor health.

//

28. Hudson suffered increasingly severe physical and emotional problems, which effected his well-being, as well as his relationship with his wife.

29. On or about August 27, 2013, the Federal Bureau of Investigation executed a search warrant at the PCC offices detaining and speaking with several employees, including Hudson, and seizing evidentiary material.

30. Clark Garen, PCC's counsel, and Shields met with Hudson in Shield's office and encouraged him to quit, promising Hudson that if he did so, PCC would not contest Hudson's application for unemployment benefits. However, if he forced PCC to fire him, PCC would contest Hudson's application for unemployment benefits.

31. On September 26, 2013, a private investigator hired by PCC sought to interview Hudson about what he had told the FBI. Hudson declined to answer.

32. On November 26, 2013, while Hudson was at work, he was served with a subpoena to testify before a federal grand jury, and to produce documents relating to the allegations that PCC was illegally obtaining financial and employment information about debtors from the EDD and from banks.

33. On December 10, 2013, Hudson complied with the subpoena, was interviewed by a Criminal Division attorney from the United States Attorney's Office for the Central District of California, and produced documents as required by the subpoena.

34. It is a violation of public policy to retaliate against witnesses in federal proceedings. 42 U.S.C. §1985(2) prohibits from injuring a party or witness "in his person or property" for having testified in a federal proceeding.

35. On March 19, 2014, Hudson was fired. In the letter of termination Todd Shields, PCC President, falsely and maliciously alleged Hudson had stolen money and had been dishonest.

36. As a direct and legal result of Defendant's unlawful conduct, the Plaintiff has suffered and continues to suffer economic loss and other benefits, as well as ongoing emotional distress.

//
//

## FIRST CAUSE OF ACTION FOR
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

37. Plaintiff repeats and repleads any incorporates herein each of the allegations contained in Paragraphs 1-36, inclusive.

38. Plaintiff believed in good faith that PCC was violating laws protecting consumer privacy and prohibiting deceptive collection practices. He was discriminated against in the terms and conditions of his employment and fired because of his lawful acts taken to oppose Defendant's conduct.

39. Although Plaintiff had suffered drastically reduced income, Plaintiff had remained gainfully employed until after he was served with a subpoena to testify before a federal grand jury investigating criminal conduct by PCC.

40. As a direct and legal result of the conduct of PCC and other defendants, and each of them, Plaintiff has sustained and will suffer the loss of salary and other valuable employee benefits, and interest thereon

41. As a direct and legal result of the conduct of PCC and other Defendants, and each of them, Plaintiff has suffered emotional distress.

42. The actions of Defendants, and each of them, were carried out in a deliberate manner in conscious disregard of the rights of Plaintiff and were malicious, despicable, and were intended to harm Plaintiff. Plaintiff is therefore entitled to punitive damages against Defendants in an amount sufficient to punish defendants, and to deter future similar misconduct.

43. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the intention of injuring Hudson for an improper and evil motive amounting to malice. All actions described herein were authorized, directed, ratified, and approved by Defendants, and each of them. Hudson is therefore entitled to recover punitive and exemplary damages from defendants, and each of them in an amount based on the wealth and ability to pay and according to proof at trial.

//
//

## SECOND CAUSE OF ACTION FOR
## VIOLATION OF LABOR CODE § 1102.5.

44. Plaintiff repeats and repleads any incorporates herein each of the allegations contained in Paragraphs 1-39, inclusive.

45. As a separate and distinct cause of action Plaintiff alleges he was discriminated against in the terms and conditions of employment and ultimately fired in violation of Labor Code §1102.5.

46. As a direct and legal result of the conduct of PCC and other defendants, and each of them, Plaintiff has sustained and will suffer the loss of salary and other valuable employee benefits, and interest thereon

47. As a direct and legal result of the conduct of PCC and other Defendants, and each of them, Plaintiff has suffered emotional distress.

48. As a direct and legal result of the conduct of Defendants, and each of them, Hudson has sustained and will suffer the loss of salary and other valuable benefits, and interest thereon

49. Plaintiff is entitled to all relief necessary to make him whole, including the amount of back pay lost, interest on the back pay, future lost income, and compensation for any special damages sustained as a result of the discrimination and retaliatory firing, including but not limited to the cost of this litigation.

50. The actions of Defendants, and each of them, were carried out in a deliberate manner in conscious disregard of the rights of Plaintiff and were malicious, despicable, and were intended to harm Plaintiff. Plaintiff is therefore entitled to punitive damages against Defendants in an amount sufficient to punish defendants, and to deter future similar misconduct.

51. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the intention of injuring Hudson for an improper and evil motive amounting to malice. All actions described herein were authorized, directed, ratified, and approved by Defendants, and each of them. Hudson is therefore entitled to recover punitive and exemplary damages from defendants, and each of them in an amount based on the wealth and ability to pay and according to proof at trial.

## THIRD CAUSE OF ACTION FOR
## VIOLATION OF GOVERNMENT CODE § 12940 et. seq.

52. Plaintiff repeats and repleads each of the allegations in Paragraphs 1-30 of this Complaint, and incorporates them ast though fully set forth herein.

53. At all times material hereto Defendant PCC employed five or more persons in California, so was subject to the Fair Employment and Housing Act, (hereinafter FEHA).

54. Hudson has exhausted his administrative remedies under FEHA by filing a complaint with the Department of Fair Employment and Housing and obtaining a 'right to sue' letter.

55. PCC knew or believed that Hudson had, or had a history of having a disability and or a medical condition which limited one or more of Hudson's major life activities, including, *inter alia*, his ability to work. At a minimum, PCC knew Hudson was and is disabled due to work related stress brought on by the harassment, discrimination, and retaliation in his employment.

56. Hudson was nonetheless able to preform his essential job duties as a debt collector with reasonable accommodations for his disability and/or medical condition. The reasonable accommodation included PCC providing Hudson with a work area free from discrimination, harassment, and retaliation, latitude in his footwear, an adequate chair, and the ability to quietly get up from a sitting position and quietly move about the office from time to time.

57. Hudson was a 'qualified individual' with a disability within the meaning of FEHA.

58. Hudson was able to perform the essential functions of his job as a Debt Collector with PCC with reasonable accommodation for his disability and/or medical condition.

59. Although Hudson requested accommodation, PCC failed to provide it and failed to make any suitable counter-proposal or alternative reasonable accommodation in violation of *Gov Government Code* §12940(m).

60. At all times material hereto, Hudson was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential requirements of his job.

//
//

9
**COMPLAINT FOR DAMAGES**

RJN - EXHIBIT A
Page 000011

61. PCC failed to participate in a timely, good faith interactive process with Hudson to determine whether reasonable accommodation could be made. This failure violated *Government Code* §12940(n).

62. Hudson was subjected to adverse employment actions.

63. As a direct and legal consequence of defendant's actions and failures to take action, Hudson was harmed.

64. Hudson's disability and/or medical condition was a motivating reason for the adverse employment actions PCC took against Hudson.

65. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the intention of injuring Hudson for an improper and evil motive amounting to malice. All actions described herein were authorized, directed, ratified, and approved by Defendants, and each of them. Hudson is therefore entitled to recover punitive and exemplary damages from defendants, and each of them in an amount based on the wealth and ability to pay and according to proof at trial.

## FOURTH CAUSE OF ACTION FOR DEFAMATION

66. Plaintiff repeats and repleads any incorporates herein each of the allegations contained in Paragraphs 1-39, inclusive as though fully set forth herein.

67. As a separate and distinct cause of action, Hudson alleges he was defamed.

68. On March 19, 2014 PCC's president, Todd Shields, issued a Notice of Termination to Hudson which expressly and/or impliedly accused Hudson of *inter alia*, theft; dishonesty or lying; incompetence or inefficiency; conduct unbecoming an employee; acts of deliberate sabotage or malicious mischief; and falsifying information supplied to the company.

69. These accusations were false. In making these accusations Shields failed or refused to investigate the factual bases for them thoroughly, including but not limited to consulting a significant number of available witnesses. In publishing these accusations PCC failed to disclose exculpatory information.

70. These accusations are defamatory *per se*.

71. Moreover, PCC published these accusations far beyond the limited number of people who actually needed to know them or who inquired about them, including, but not limited to, agents and employees of Defendants.

72. These accusations were motivated by, *inter alia*, a desire to retaliate against Hudson for his opposition to PCC's illegal and deceptive conduct, and Hudson's reporting of this conduct to federal and state law enforcement.

73. The publication of these accusations by Defendant were made as a pretext to justify Hudson's firing.

74. The publications of these accusations were outrageous, negligent, reckless, and were maliciously published and republished by Defendants by and through their agents and employees. They have been, and continue to be republished by Defendants, their agents and employees, and by others as a natural and probable consequence of the original publication of the defamatory statements.

75. The defamatory meaning of all of the above described defamatory statements were understood by the third-person recipients and others to refer to Hudson.

76. The above defamatory statements were understood as assertions of fact, and not as opinion.

77. Each of the false accusations was made with hatred, ill will, and an intent to vex, annoy, harass, and injure Hudson, and was made negligently, recklessly, and intentionally published in a manner constituting malice and the abuse of any conditional privilege (which, in any event, Hudson denies existed.).

78. Hudson is informed and believes and based thereon alleges that the defamatory statements shall continue to be published and republished for the foreseeable future, causing Hudson additional injury.

79. As a direct and legal result of the foregoing, Hudson has suffered injury to his personal, business, and professional reputation including suffering, embarrassment, humiliation, serious emotional distress, shunning, anguish, fear, loss of employment and employability, and

//

11

COMPLAINT FOR DAMAGES

1. significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

80. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the intention of injuring Hudson for an improper and evil motive amounting to malice. All actions described herein were authorized, directed, ratified, and approved by Defendants, and each of them. Hudson is therefore entitled to recover punitive and exemplary damages from defendants, and each of them in an amount based on the wealth and ability to pay and according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AGAINST DEFENDANTS AS FOLLOWS:

### FOR ALL CAUSES OF ACTION

1. For loss of salary and other valuable benefits, past, present, and future;
2. General damages for anguish and for mental and emotional distress;
3. For punitive damages in an amount sufficient to punish the defendants, and to deter future similar misconduct;
4. Such other and further relief as this Court deems just and necessary.

### FOR THE FOURTH CAUSE OF ACTION

5. For additional economic losses and costs incurred by Plaintiff in establishing his claim against Defendants;

Dated: January 28, 2015

LAW OFFICES OF MARK ALLEN KLEIMAN

By: _____
MARK ALLEN KLEIMAN

Dated: January ___, 2015

LAW OFFICES JAY W. MACINTOSH

By: _____
JAY W. MACINTOSH

RJN - EXHIBIT A
Page 000014

1  significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic,
2  emotional, and general damage in an amount according to proof.
3      80.   Defendants, and each of them, committed the acts alleged herein recklessly,
4  maliciously, fraudulently, and oppressively, with the intention of injuring Hudson for an improper
5  and evil motive amounting to malice. All actions described herein were authorized, directed,
6  ratified, and approved by Defendants, and each of them. Hudson is therefore entitled to recover
7  punitive and exemplary damages from defendants, and each of them in an amount based on the
8  wealth and ability to pay and according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AGAINST DEFENDANTS AS FOLLOWS:

### FOR ALL CAUSES OF ACTION

1. For loss of salary and other valuable benefits, past, present, and future;
2. General damages for anguish and for mental and emotional distress;
3. For punitive damages in an amount sufficient to punish the defendants, and to deter future similar misconduct;
4. Such other and further relief as this Court deems just and necessary.

### FOR THE FOURTH CAUSE OF ACTION

5. For additional economic losses and costs incurred by Plaintiff in establishing his claim against Defendants;

Dated: January ___, 2015        LAW OFFICES OF MARK ALLEN KLEIMAN

                                By:_____
                                    MARK ALLEN KLEIMAN

Dated: January 28, 2015         LAW OFFICES JAY W. MACINTOSH

                                By:_____
                                    JAY W. MACINTOSH

12

COMPLAINT FOR DAMAGES

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mark Allen Kleiman (SBN 115919)<br>2907 Stanford Avenue<br>Venice, CA 90292<br>TELEPHONE NO.: 310-306-8094   FAX NO.: 310-306-8491<br>ATTORNEY FOR (Name): Plaintiff, Gregory Lorenzo Hudson | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**JAN 29 2015**<br>Sherri R. Carter, Executive Officer/Clerk<br>By_____ Deputy<br>Shaunya Bolden |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

CASE NAME:
Gregory Lorenzo Hudson v. Professional Collection Consultants, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC570780<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.☑ monetary  b.☐ nonmonetary; declaratory or injunctive relief  c.☑ punitive
4. Number of causes of action (specify): 4-wrongful term/Labor Code 1102.5/Disability Discrimination/Defamation
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 28, 2015
Mark Allen Kleiman
_____ (TYPE OR PRINT NAME) ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

| SHORT TITLE: Hudson v. Professional Collection Consultants, Inc. | CASE NUMBER BC 570780 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 14   ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | Local Rule 2.0<br>Page 1 of 4 |
|---|---|---|

| SHORT TITLE: Hudson v. Professional Collection Consultants, Inc. | | CASE NUMBER |
|---|---|---|

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | | |
| Wrongful Termination (36) | ☑ A6037 Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | | |
| Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 2 of 4

RJN - EXHIBIT A
Page 000018

| SHORT TITLE: Hudson v. Professional Collection Consultants, Inc. | | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2., 9. |
| | | ☐ A6160 Abstract of Judgment | 2., 6. |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2., 3., 9. |
| | | ☐ A6123 Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190 Election Contest | 2. |
| | | ☐ A6110 Petition for Change of Name | 2., 7. |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)        CIVIL CASE COVER SHEET ADDENDUM        Local Rule 2.0
LASC Approved 03-04           AND STATEMENT OF LOCATION               Page 3 of 4

RJN - EXHIBIT A
Page 000019

| SHORT TITLE: Hudson v. Professional Collection Consultants, Inc. | CASE NUMBER |
|---|---|

**Item III.** *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☑2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>6700 Centinela Ave., 3rd Floor |
|---|---|
| CITY: Culver City | STATE: CA | ZIP CODE: 90230 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: January 28, 2015

(SIGNATURE OF ATTORNEY/FILING PARTY)
Mark Allen Kleiman

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev. 03/11)<br>LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION | Local Rule 2.0<br>Page 4 of 4 |