1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4     _____

WESTERN WORLD INSURANCE            )

5     COMPANY,                           )

                                    )         **CERTIFIED**

6                  Plaintiff,         )      **TRANSCRIPT**

                                    )

7          vs                       ) No. 2:15-cv-02342 MWF

                                    )    (VBKx)

8     PROFESSIONAL COLLECTION        )

CONSULTANTS,                       )

9                                    )

               Defendant.           )

10    _____        )

11

12

13

14    DEPOSITION OF PERSON MOST QUALIFIED CLARK GAREN

15               Los Angeles, California

16          Wednesday, February 3, 2016

17                    Volume I

18

19

20

21    Reported by:

22    LYNN ZINK, RPR

23    CSR No. 9466

24    JOB No. 2190452

25    PAGES 1 - 60

                                        Page 1

DAE DEC - EXHIBIT H
Page 000067

```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3

 4       _____

         WESTERN WORLD INSURANCE           )

 5       COMPANY,                          )

                                           )

 6                  Plaintiff,             )

                                           )

 7            vs                           )  No. 2:15-cv-02342 MWF

                                           )     (VBKx)

 8       PROFESSIONAL COLLECTION           )

         CONSULTANTS,                      )

 9                                         )

                    Defendant.             )

10       _____   )

11

12

13

14

15           Deposition of PERSON MOST QUALIFIED CLARK GAREN,

16       Volume I, taken on behalf of Plaintiff, at 2049 Century

17       Park East, Suite 2450, Los Angeles, California, beginning

18       at 10:08 a.m. and ending at 11:50 a.m. on Wednesday,

19       February 3, 2016, before LYNN ZINK, Certified Shorthand

20       Reporter No. 9466.

21

22

23

24

25
```

Page 2

DAE DEC - EXHIBIT H
Page 000068

```
 1    APPEARANCES:

 2

 3    For Plaintiff:

 4        SELVIN WRAITH HALMAN LLP

 5        BY:  DAVID A. EVANS

 6        Attorney at Law

 7        505 14th Street, Suite 1200

 8        Oakland, California 94612

 9        (510) 874-1811

10        devans@selvinwraith.com

11

12    For Defendant:

13        LAW OFFICES OF DAVID W. WIECHERT

14        BY:  DAVID W. WIECHERT

15        Attorney at Law

16        115 Avenida Miramar

17        San Clemente, California 92672

18        (949) 361-2822

19        dwiechert@aol.com

20

21        LAW OFFICES OF CLARK GAREN

22        6700 South Centinela Avenue, 3rd Floor

23        Culver City, California 90230

24        (310) 391-0800

25        clarkgaren@msn.com
```

                                                        Page 3

DAE DEC - EXHIBIT H
Page 000069

```
 1                           INDEX
 2    WITNESS                              EXAMINATION
 3    CLARK GAREN
      Volume I
 4
 5                         BY MR. EVANS          6, 54
 6                         BY MR. WIECHERT          49
 7
 8
 9
10                         EXHIBITS
11    EXHIBIT            DESCRIPTION          PAGES
12    Exhibit 1    Notice of Taking Deposition of     10
13                 Person Most Qualified and
14                 Production of Documents
15
16    Exhibit 2    Application, Bates Nos. WW 1       20
17                 to 15
18
19    Exhibit 3    Search and Seizure Warrant,        24
20                 Bates Nos. WW 89 to 121
21
22    Exhibit 4    Letter dated 9/25/13, Bates Nos.   29
23                 WW 74 to 79
24
25
```

Page 4

DAE DEC - EXHIBIT H
Page 000070

```
 1    INDEX (Continued):
 2                          EXHIBITS
 3    EXHIBIT            DESCRIPTION            PAGES
 4    Exhibit 5   Letter dated 10/15/13, Bates Nos.   32
 5                WW 80 to 84
 6
 7    Exhibit 6   Letter dated 11/26/13, Bates Nos.   34
 8                WW 85 to 88
 9
10    Exhibit 7   Letter dated 8/7/14, Bates Nos.     36
11                WW 122 to 123
12
13    Exhibit 8   Letter dated 1/9/15, Bates Nos.     38
14                WW 124 to 127
15
16    Exhibit 9   Letter dated 7/7/14                 39
17
18    Exhibit 10  Letter dated 1/28/15, Bates Nos.    40
19                WW 128 to 135
20
21
22
23
24
25
                                              Page 5
```

DAE DEC - EXHIBIT H
Page 000071

1       Los Angeles, California, Wednesday, February 3, 2016

2                       10:08 a.m.

3

4                       CLARK GAREN,

5   having been first administered an oath, was examined and

6   testified as follows:

7

8                       EXAMINATION

9   BY MR. EVANS:

10      Q    If you could state your name for the court reporter,

11  please.

12      A    Clark Garen, G-a-r-e-n.

13      Q    Mr. Garen, we're here on the Western World versus

14  Professional Collection Consultants matter.  My name's Dave

15  Evans.  I represent Western World Insurance Company.  And I

16  understand that you are an attorney, but for the sake of a

17  clean record, let's go through some of the standard

18  admonitions as we get started just so that everything is

19  clear.

20           Have you been deposed in the past?

21      A    Yes.

22      Q    How many times would you estimate?

23      A    Three to five.

24      Q    When was the most recent time you were deposed?

25      A    It's been so long ago I really don't remember.

                                                    Page 6

DAE DEC - EXHIBIT H
Page 000072

1    two issues are similar to the last one, but referring to

2    former PCC employees Beblen Pole and Lisa McCann.

3    Mr. Garen, you and I recently had a --

4        A    Why don't I make a statement.

5        Q    Okay.

6        A    Beblen Pole and Lisa McCann submitted a claim for

7    arbitration with the same attorney who is representing Greg

8    Hudson.   Their mediation -- excuse me, not arbitration.

9    The mediation did not resolve it.   No action has ever been

10   filed, no governmental complaint has ever been filed, and

11   the statute of limitations for making such a complaint has

12   now expired.   So based on the fact that it does not appear

13   there is a claim by either Beblen Pole or Lisa McCann, we

14   are withdrawing the portion of our counterclaim insofar as

15   it relates to Beblen Pole and Lisa McCann.

16       Q    Thank you.   That's my understanding of our agreement

17   as well.   And for that reason we will not be going into

18   these issues for this deposition today.

19       A    That is correct.

20       Q    Moving down to the issue No. 8, which reads -- which

21   addresses PCC's claim that Western World breached the

22   Western World policy with respect to the Hudson action,

23   Pole claim, and McCann claim.   With the caveat that we are

24   dropping the Pole claim and McCann claim from this issue,

25   are you the person most qualified to testify as to this

Page 12

DAE DEC - EXHIBIT H
Page 000073

1      Q    I'd like to show you another document.  I know that

2    it is in your files because we got it from you.  This is --

3    this will be Exhibit 3.

4         (Exhibit 3 was marked for identification

5      by the court reporter and is attached hereto.)

6         THE WITNESS:  What do you want me to do with the --

7         MR. WIECHERT:  The ones that you've used, hand them

8    to me, and that will be our copies.

9         THE WITNESS:  Okay.

10   BY MR. EVANS:

11     Q    So I'm providing you with -- you want me to provide

12   this to counsel first so you can label it?

13        MR. WIECHERT:  Sure.  That would be great.

14        MR. EVANS:  Will be Exhibit 3.  This is a search and

15   seizure warrant.

16     Q    Are you familiar with this document?

17     A    Yes.

18     Q    When did you first see this document?

19     A    I don't remember the date, but it would have been

20   the date that the FBI visited the office of PCC, probably

21   about 2:00 or 3:00 in the afternoon.

22     Q    Was this in August, 2013, to the best of your

23   recollection?

24     A    I believe it was August 27, 2013, as I'm looking at

25   the inventory of the receipt that's dated August 27, 2013.

Page 24

DAE DEC - EXHIBIT H
Page 000074

1       the service of subpoenas, no communications.

2               MR. WIECHERT:  Are we done with this exhibit?

3               MR. EVANS:  Yes.

4               MR. WIECHERT:  Thank you.

5       BY MR. EVANS:

6           Q    I'm providing you with another document.  This will

7       be Exhibit 4.  It is probably familiar to you because I

8       believe -- well, you produced it to me.  It is a September

9       25, 2013 federal grand jury subpoena with a cover letter

10      from the United States Department of Justice.

11          A    Uh-huh.

12              (Exhibit 4 was marked for identification

13          by the court reporter and is attached hereto.)

14      BY MR. EVANS:

15          Q    Are you familiar with this document?

16          A    Yes.

17          Q    If we could turn to the page -- it's labeled at the

18      bottom page 78 with Western World's Bates stamp number.  At

19      the top of the page it's labeled "Subpoena Attachment."

20      Are you on that page?

21          A    Yes.

22          Q    The subpoena attachment identifies documents that

23      PCC is to provide as part of this deposition -- part of

24      this grand jury.  Would you agree?

25          A    Yes.

Page 29

DAE DEC - EXHIBIT H
Page 000075

1     Q    Among the items requested, we look down at item 5,

2    it says, "Any and all records, including training manuals,

3    materials, handouts, instructions, guidelines, videos

4    training logs, and/or internal control records related to

5    'Skip Tracing' and or debt collection."   And in a

6    parenthetical the attachment states, "This material should

7    include any education provided to employees as it relates

8    to the Fair Debt Collection Act."

9         Do you see that?

10    A    Yes.

11    Q    Did you -- correct that.  Did PCC produce documents

12    pursuant to this particular request?

13    A    Absolutely.

14    Q    Did PCC provide documents as to all of the items

15    listed on the subpoena attachment, items 1 through 6?

16    A    We produced items in response to No. 1.  We produced

17    items for No, 2, produced items for No. 3, items for No. 4,

18    items for No. 6.

19    Q    Do you know who testified before the grand jury in

20    response to this subpoena?

21         MR. WIECHERT:  Assumes facts not in evidence.

22    BY MR. EVANS:

23    Q    Did anybody testify before the grand jury pursuant

24    to this subpoena?

25    A    No.

Page 30

DAE DEC - EXHIBIT H
Page 000076

```
 1   original back.
 2      Q    All right.  So we're looking at the August 7, 2014
 3   letter.  You agree this was to Todd Shields; correct?
 4      A    Yes.
 5      Q    And remind me, Todd Shields is the president of PCC;
 6   correct?
 7      A    Correct.
 8      Q    And this is a letter that Western World is
 9   responding to the tender of a claim by Gregory Hudson;
10   correct?
11      A    Well, the letter speaks for itself.
12      Q    It does.  If I could just direct your attention to
13   the second page of the letter, the first full paragraph,
14   which starts, "Please be advised that Western World has
15   retained the law office of Thompson, Coe & O'Meara, LLP to
16   respond to the demand for mediation and protect the
17   interests of Professional Collection Consultants in this
18   matter."
19          Is it your recollection that the law firm of
20   Thompson, Coe & O'Meara did, in fact, represent the
21   interests of Professional Collection Consultants at the
22   mediation that Mr. Hudson demanded?
23      A    Yes.
24      Q    Is Thompson, Coe & O'Meara continuing to represent
25   PCC with respect to the Hudson claim, as of today?
```

Page 37

DAE DEC - EXHIBIT H
Page 000077

```
 1      A    As of today they are still our attorneys.  I'm not

 2   too sure who they're representing, but they are our

 3   attorneys of record.

 4      Q    They are your attorneys of record; correct?

 5      A    Yes.

 6      Q    Thank you.

 7           THE WITNESS:  Can we go off the record here a

 8   minute?

 9           MR. EVANS:  Okay.

10           (Discussion off the record.)

11   BY MR. EVANS:

12      Q    Let's move to another document.  This will be

13   Exhibit 8.  This is a letter dated January 9, 2015 to Todd

14   Shields from Steve Joseph of Western World.

15           (Exhibit 8 was marked for identification

16      by the court reporter and is attached hereto.)

17   BY MR. EVANS:

18      Q    Is this letter familiar to you?  I believe it's one

19   that's in your file as well.

20      A    Yes.  I have the original.

21      Q    Okay.

22      A    Oh, by the way, we never did put this letter in.

23   This is the one that started everything.

24      Q    Okay.  Why don't we do that.  We'll take a moment

25   right now to do that.
```

Page 38

DAE DEC - EXHIBIT H
Page 000078

```
 1    legal conclusion.

 2         THE WITNESS:  Violations of the Fair Debt Collection

 3    Practices Act are the basis for a civil action.  As far as

 4    I know, they are not the basis for a criminal action.

 5    BY MR. EVANS:

 6       Q    PCC has actually been sued before under the Fair

 7    Debt Collection Practices Act; correct?

 8       A    Yes.

 9       Q    This is something that, in your capacity as an

10    officer or director and counsel for PCC, you're aware that

11    this is a major potential liability for PCC as it goes

12    about its business; correct?

13         MR. WIECHERT:  Calls for a conclusion and ambiguous

14    as to major liability.  I think that was the words that

15    counsel used.

16         THE WITNESS:  Well, it's not a major liability

17    because we comply with the act.  It is -- there are a

18    number of attorneys who have gone in the business of filing

19    collection torts based on the FDCPA because it is a heads

20    the consumer wins, tails the agency loses act, because if

21    the consumer wins, the debtor gets all his attorney fees

22    and then -- the attorney gets all the attorney fees, the

23    debtor gets $1,000.  If the agency wins, the agency doesn't

24    get anything.

25         So it's basically if you win, you pay your own
```

Page 46

DAE DEC - EXHIBIT H
Page 000079

1    attorney fees; if you lose, you pay your attorney fees and

2    the debtor's attorney fees.  So you can only afford to

3    litigate a case that is clearly no liability.  But it is

4    not a major -- it's only a major problem for an agency that

5    as a routine, does things that violate the act.

6         We take pride that we don't do things that violate

7    the act, which is why we have the kind of clients we have,

8    because in today's atmosphere, with the Consumer Finance

9    Protection Bureau, your clients are your biggest policeman

10   because they won't let you do anything.

11        And so, no, it is not a major problem to us.  It is

12   a nuisance problem to us, and one of the reasons it is is

13   that we have a deal with our carrier that allows us to

14   defend these cases in-house.  And if we have a liability,

15   we pay it right away.  We do that very infrequently.  If we

16   feel there is no liability, we defend it.

17        So these guys who are in the business of filing

18   these suits learn right away they don't want to sue us

19   because we don't pay like a slot machine.  The way the

20   industry works, once you pay A, you get a claim from B, C,

21   and D.  They just know, ah, here's a new pigeon.  And there

22   are a lot of agencies just -- it's a major problem because

23   they pay these claims right away as a cost of doing

24   business.  We don't.

25        And we get sued -- I would say we get sued maybe

Page 47

DAE DEC - EXHIBIT H
Page 000080

1  once, maybe twice a year.  It's very, very infrequent that

2  we get sued.  And the reason it's so infrequent is because

3  we comply with the law.

4  BY MR. EVANS:

5    Q    And the unfortunate thing from your perspective is

6  that doesn't stop somebody from suing you.  It's just that

7  from -- your testimony is that you do things the right way

8  so you're generally going to be able to defend those

9  lawsuits.

10   A    No, that is not my testimony.  My testimony is we do

11  things the right way so we tend not to get sued.  And

12  attorneys, because they know that we defend them, they

13  won't file a weak case against us.  That's why we don't get

14  sued, because they know we don't pay unless we did

15  something.  And they know if we did something, they get

16  paid with a letter.

17        And so, as I say, we get sued maybe once or twice a

18  year, whereas most agencies of our size get three to five

19  claims a month.

20   Q    Okay.

21        Okay.  That's all I have.  Thank you.  As far as I'm

22  concerned, we're done.

23        MR. WIECHERT:  Okay.  Want to take a break, and I'll

24  come back and see if there are any questions.

25        MR. EVANS:  Okay.  Sounds good to me.

Page 48

DAE DEC - EXHIBIT H
Page 000081