

**WESTERN WORLD INSURANCE COMPANY**

400 PARSON'S POND DRIVE
FRANKLIN LAKES, NEW JERSEY 07417-2600
TELEPHONE: (201) 847-8600
FAX: (201) 847-1010

TOLL FREE NO.: (866) 852-2990 x2761
DIRECT FAX NO.: (201) 847-7970
E-MAIL: s.joseph@westernworld.com

January 28, 2015

Clark McGarin, Esq.
Professional Collection Consultants
3rd Floor
6700 South Centinela Avenue
Culver City, CA 90230

RE:   Insured:              Professional Collection Consultants
      Claimants:             Gregory Hudson, Beblen Pole,
                             Lisa McCann
      Claim Nos.:            114165, 117482, 117483
      Limit of Liability:    $1 million per claim/aggregate
      Self-Insured Retention: $50,000 per claim

Dear Mr. McGarin:

This letter is written in response to your letter of January 12, 2015, addressing the Reservation of Rights letter issued by my office on January 9, 2015. This letter also acknowledges receipt of two additional claims asserted by Beblen Pole and Lisa McCann.

As indicated above, claim files have been established for each of these three claims. Please refer to these claim file numbers whenever corresponding with Western World Insurance Company on this matter. Facsimiles can be sent directly to my attention at (201) 847-7970. I can also be reached through electronic mail at s.joseph@westernworld.com.

As set forth in my letter of January 9, 2015, Western World Insurance Company has reserved its rights to provide coverage for the three claims based on the failure to disclose the known criminal Grand Jury investigation that was being conducted by the US Attorney General's Office in response to the insurance application's question regarding PCC's knowledge of facts, events, situations and circumstances, as well as the Exclusion for Prior Knowledge.

Please be advised that this reservation of rights in which Western World Insurance Company reserves its rights to rescind the policy or deny coverage for these three claims based on the representations made by PCC in the insurance application, as well as the Exclusion for Prior Knowledge, extends to the claims asserted on behalf of Beblen Pole and Lisa McCann.

We have noted that in your response to the Reservation of Rights letter of January 9, 2015, you acknowledged that federal agents served a search warrant on PCC's premises in September 2013, and that federal agents questioned three PCC employees before the Grand Jury in October 2013 concerning allegedly criminal activity by PCC.

A MEMBER COMPANY OF THE WESTERN WORLD INSURANCE GROUP

EXHIBIT 10
GABEN
2-3-16

WW 000128

DAE DEC - EXHIBIT K
Page 000088

Clark McGarin, Esq.
Page 2
January 28, 2015

Your letter indicates federal agents issued subpoenas for company employees to testify in December 2013, but cancelled and reset these appearances twice in December 2013 and January 2014.

Your letter indicates that by the end of January 2014, federal agents advised PCC that subpoenas for PCC employee testimony were cancelled. Your letter states PCC deduced from the cancellation of federal subpoenas that the criminal investigation related to the search warrant FBI raid of PCC's premises was concluded in favor of PCC and federal agents had resolved that PCC and its insured persons had not violated the law.

Accordingly, you state PCC had no basis to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction might reasonably be expected to result or be in the basis of a future claim when PCC submitted the insurance application for the Western World policy several days later on February 1, 2014.. Similarly, because PCC and its employees did not hear anything further from the federal agents for several days, your letter asserts PCC and the insured persons had no reason to believe on February 4, 2014, that there was a basis to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction might be expected to result in or be the basis of a future claim in connection with the employment of Greg Hudson.

Your letter acknowledges PCC and the insured persons were well aware that the initiation of the federal criminal investigation gave Greg Hudson whistleblower protection, and PCC and the insured persons knew that Greg Hudson could not be terminated unless he engaged in misconduct that was so blatant that it would be obvious that the termination was not retaliation for his initiation of the federal criminal investigation.

Lastly, your letter states that when PCC concluded Greg Hudson's placement of $101.50 into a wrong account constituted theft that PCC's conclusion protected PCC from a retaliatory whistleblower claim by Greg Hudson for PCC's termination of Greg Hudson's employment. Your letter asserts neither PCC nor any insured person knew on February 4, 2014, that Greg Hudson would place $101.50 into the wrong account or that this action would justify PCC's termination of Greg Hudson's employment. S

If the above in any way misrepresents or misstates your position, please advise my office immediately. This letter also invites you to provide any additional information for Western World's consideration.

After receipt of your letter of January 12, 2015, Western World Insurance Company received a copy of the Draft Complaint that counsel for Greg Hudson intends to file against Professional Collection Consultants in the Superior Court for the State of California, Los Angeles County.

The Complaint alleges that in or about 2006, Professional Collection Consultants hired a collector named Mike Flowers, and he allegedly began working in the Legal Collections Department, which involved debts that were supposedly being turned over for litigation. The Draft Complaint asserts that Mr. Hudson had learned that Mike Flowers had a contact within the

WW 000129

DAE DEC - EXHIBIT K
Page 000089

California Employment Development Department, and when Flowers would give his source within this department a list of debtors and their Social Security Numbers, the department source then gave Flowers private and confidential information about the consumers' wages, job locations, and other information, in violation of federal and state law. The Draft Complaint alleges that Flowers then used this information he had illegally obtained to initiate collections against the debtors.

The Draft Complaint also asserts that Hudson later discovered that another collector, Michael Jackson, had a source at the Bank of America. It is alleged that Jackson would give the Bank of America employee a list of debtors' names, along with their Social Security Numbers. The Bank of America employee then allegedly gave Jackson information about the debtors' bank account numbers and the amount of money in the account so he could initiate collection actions.

The Draft Complaint alleges that after Hudson complained about the legal conduct of Flowers and Jackson, his salary substantially decreased and Professional Collection Consultants allegedly embarked upon a campaign of harassment with the intent of forcing Hudson to either join in the law breaking or quit.

The Draft Complaint alleges that, on or about August 27, 2013, the Federal Bureau of Investigation executed a search warrant at the Professional Collection Consultants' offices, detaining and speaking with several employees, including Hudson, and seizing evidentiary material. The Complaint alleges that Hudson was then encouraged to quit, promising Hudson that if he did so, Professional Collection Consultants would not contest Hudson's application for unemployment benefits.

Thereafter, on September 26, 2013, the Draft Complaint alleges that a private investigator hired by Professional Collection Consultants sought to interview Hudson about what he told the FBI. However, it is asserted that Hudson declined to answer.

On November 26, 2013, it is asserted that while Hudson was at work, he was served with a subpoena to testify before a grand jury and to produce documents relating to the allegations that Professional Collection Consultants was illegally obtaining financial and employment information about debtors from the California Employment Development Department and from banks.

The Draft Complaint also asserts that on December 10, 2013, Hudson complied with the subpoena, was interviewed by a Criminal Division attorney from the United States Attorney's Office for the Central District of California, and produced documents as required by the subpoena.

The Draft Complaint asserts that in connection with this investigation, it is a violation of public policy to retaliate against witnesses in federal proceedings under 42 U.S.C. §1985(2).

We further reviewed the Notice of Termination, which includes theft as the reason for termination. The Notice of Termination asserts that on Monday, March 17, 2014, Mr. Hudson

WW 000130

DAE DEC - EXHIBIT K
Page 000090

Clark McGarin, Esq.
Page 4
January 28, 2015

had posted a payment of $101.50 to Account No. 11449324 standing in the name of Stephen Beevor. It is noted that this payment was in the form of an ACH check that was deducted from the trust account of the attorney for Alexander Gutierrez, Account No. 11493814.

Professional Collection Consultants had opined that since the account of Stephen Beevor was paid in full on November 10, 2011, almost two years earlier, and the account was clearly noted as paid in full, this payment transaction was a willful and intentional wrongdoing.

Thereafter, a second payment of $100.00 was posted to Account No. 11493824 standing in the name of Alexander A. Gutierrez. It was the opinion of Professional Collection Consultants that the payment transaction was willful and intentional, and the processed transaction for $100.00 was to make the transaction more difficult to identify and match with the incorrect transaction completed earlier in that day for $101.50.

The Notice of Termination asserts that when an office employee, Maria, discovered that Greg Hudson had deducted the two payments totaling $201.50 from a trust account of the attorney for Alexander A. Gutierrez, when only one payment of $101.50 was authorized, it was determined that Greg Hudson had stolen the $100.00 from the trust account of the attorney for Alexander A. Gutierrez.

We also have been provided with the Notice of Unemployment Insurance Claim filed by Greg Hudson dated March 23, 2014, in which he had asserted that Professional Collection Consultants is currently being investigated by the Grand Jury, and that he is a key witness against the company. We note that unemployment benefits were granted to Greg Hudson, and an appeal was filed by Professional Collection Consultants.

We note that the Administrative Law Judge's decision upheld the employment compensation for Greg Hudson, and the Administrative Law Judge, Steven B. Chan, stated the following:

"Here it must be concluded that the claimant was discharged for reasons other than misconduct connected with the most recent work. The undersigned is not persuaded that the claimant acted to harm the employer's business on March 17, 2014. Rather, the evidence of record strongly suggests that the claimant simply made errors. As indicated, the claimant credited Golden One Credit Union the correct client, shortly after he mistakenly credited the Bank of the West with the $101.50. Further, the claimant had made numerous mistakes on similar transactions prior to March 17th. Next, the account numbers for Golden Credit Union and the Bank of West are similar. Finally, the undersigned credits the claimant's credible testimony that he was used to dealing with whole numbers, and as such, credited $100 to Golden One Credit Union instead of $101.50.

Regarding the allegation that the claimant was uncooperative in the investigation, the claimant credibly testified that he informed the supervisor of the problem. The claimant's witness, an employee of the employer, credibly asserted that because of the timing of the events, the supervisor cannot have previously discovered the problem on her own before she spoke to the claimant. While the employer presented testimony that the claimant did not cooperate with the

WW 000131

DAE DEC - EXHIBIT K
Page 000091

Clark McGarin, Esq.
Page 5
January 28, 2015

supervisor until she threatened to speak to the employee's president, this evidence is no more compelling than the evidence presented by the claimant and his witness."

In response to your letter of January 12, 2015, we first note that your office has provided Western World Insurance Company with no information other than a belief on your part that because testimony for two witnesses were cancelled, the investigation was therefore closed. However, we have been provided with no documentation to support this assertion set forth in your January 12, 2015 letter. Additionally, the Draft Complaint asserts that on December 10, 2013, Hudson, in fact, complied with a subpoena issued by the United States Attorney General's Office, was interviewed by a Criminal Division attorney from the United States Attorney's Office for the Central District of California, and produced documents as required by the subpoena. This is contrary to the statements made in your January 12, 2015 letter.

We also note that the application requests whether any of the insured persons have a basis to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction might reasonably be expected to result in or be the basis of a future claim.

With respect to the above, it does appear that the following extraordinary events have occurred prior to the inception of the policy:

1. The August 23, 2013 FBI search warrant at the Professional Collection Consultants offices; detaining and speaking with several employees, including Hudson: and seizing evidentiary material.

2. The commencement of a Grand Jury investigation, including subpoenas issued to Hudson, to testify before the Federal Grand Jury; and possibly the other two claimants, Beblen Pole, and Lisa McCann.

3. The December 10, 2013 interview between Hudson and a Criminal Division attorney from the United States Attorney's Office for the Central District of California.

As indicated in my previous letter of January 9, 2015, Western World Insurance Company has reserved its rights to file a rescission action to rescind coverage under the policy or deny coverage based on the alleged misrepresentations made in the policy application, as well as the Exclusion for Prior Knowledge.

As noted, we have reserved our rights that the events described above would be potentially something that might reasonably be expected to be the basis of a claim. This is included, but not limited to, whistleblower claim that is currently being pursued by Greg Hudson, Beblen Pole or Lisa McCann.

WW 000132

DAE DEC - EXHIBIT K
Page 000092

Clark McGarin, Esq.
Page 6
January 28, 2015

We refer your attention to the definition of Claim, which provides as follows:

SECTION II - DEFINITIONS

"2. 'Claim' means:

a. A written demand for monetary relief received by an insured seeking to hold the insured responsible for a 'wrongful act', 'wrongful employment act', or 'third party wrongful act' including, but not limited to, the service of suit or the institution of arbitration or mediation proceedings against the insured;

b. A judicial or administrative proceeding initiated against an insured seeking to hold the insured responsible for a 'wrongful employment act' or a 'third party wrongful act', including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal therefrom;

c. A written demand for non-monetary or injunctive relief received by an insured seeking to hold the insured responsible for a 'wrongful act', 'wrongful employment act', or 'third party wrongful act' including, but not limited to, the service of suit or the institution of arbitration or mediation proceedings against the insured;

d. A civil proceeding against any insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

e. <u>A criminal proceeding against any insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;</u>

f. A civil, administrative or regulatory proceeding against any insured commenced by the filing of a notice of charges or similar document;

g. <u>A civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by any 'individual insured' of a written notice, investigative order, or subpoena from the investigating authority identifying such 'individual insured' as an individual, against whom a proceeding described in paragraphs c., d., or e. immediately above may be commenced;</u> or

h. A written request of the insured to toll a statute of limitations relating to a 'claim' described in paragraphs a. through g. immediately above."

As indicated above, the definition of Claim includes a criminal proceeding against any insured, commenced by a return of an indictment or similar document or receipt or filing a notice of charges. Claim is also defined to include a civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by any "individual insured" of a written notice, investigative order, or subpoena from the investigating authority identifying such "individual insured" as an individual, against whom a proceeding described in paragraphs c., d., or e. immediately above may be commenced.

WW 000133

DAE DEC - EXHIBIT K
Page 000093

Clark McGarin, Esq.
Page 7
January 28, 2015

As indicated above, the Grand Jury investigation by the U.S. Attorney's Office for the Central District of the State of California would constitute a claim as defined under the policy and could lead to a criminal indictment which also would be defined as a claim under the policy. Additionally, the events described within the Draft Complaint could potentially lead to other claims separate and apart from the whistleblower actions brought by Greg Hudson, Beblen Pole, and Lisa McCann.

Additionally, your letter confirms that you were well aware that Greg Hudson was, in fact, a whistleblower. While you have asserted PCC had no intention of terminating Mr. Hudson's employment, we have noted the Administrative Law judge's opinion who did not find PCC's reason for termination to be credible. Moreover, a whistleblower action may be simply based on the constructive discharge theory and PCC's employment termination of Greg Hudson for "theft" does not protect PCC from a whistleblower claim.

Also note, the opinion of *Endurance American Specialty Insurance Company versus Michael Nommensen* cited under 2011 U.S. Dist. Lexis 158111, which was upheld by the United States Court of Appeal for Ninth Circuit under 2013 WL6623869.

In that case opinion, the Court noted that at the time the broker-dealer submitted an Application for Insurance, it was aware that the affiliate's employee had sent a tip to the Financial Industry Regulatory Authority regarding unregistered employee, Linda Palmer, and that the employee be terminated for violating FINRA rules.

You have correctly noted that in that opinion, the claim for unemployment insurance was filed prior to the application for insurance submitted by the insured. However, it does appear that the events that were not provided in the Application for Insurance by Professional Collection Consultants were far more extraordinary events, and a claim in its own right, that could give rise to a numerous assortment of civil as well as criminal claims that would receive coverage under the Western World policy in comparison to the whistleblowing activity by Nommensen.

As noted in the case cited, the plaintiff, Nommensen, had reported to FINRA that his employer had been allowing Linda Perry to work unregistered in violation of FINRA rules. The Court did opine that the FINRA investigation, in fact, should have been reported in response to the questions raised in the application for insurance.

In conclusion, while Western World Insurance Company continues to provide a defense through the law firm of Thompson, Coe & O'Meara, Western World has also retained counsel to further review its obligations with respect to the claims asserted under the policy against Professional Collection Consultants. In view of the issues raised, you may wish to consult your own counsel as to your rights and obligations with respect to the coverage afforded.

Western World Insurance Company reserves its rights to withdraw from the defense of this action. Western World also reserves its rights to bring a rescission action or otherwise file a Declaratory Judgment seeking the termination by a court of law that it has a no obligation to

Clark McGarin, Esq.
Page 8
January 28, 2015

provide coverage with respect to any of these claims asserted in view of the Prior Knowledge Exclusion.

Western World Insurance Company further reserves its rights to supplement this letter to raise additional terms set forth in the policy, based on facts that may either be known or further come to light based on any further investigation. Western World Insurance Company otherwise reserves the right to further deny coverage on any alternative bases, should any underlying facts or theories or additional information submitted for review and evaluation so warrant. Western World also reserves its rights to bring a declaratory judgment action in order to have a court of law further determine its obligations under the policy.

Western World also reserves the right to be reimbursed and/or to have an allocation of attorney's fees and expenses in this action if it is determined there is no coverage under the policy for some or all of the claims being asserted against PCC or if the policy is rescinded. This includes the right to allocate between covered and uncovered claims any payment of settlements and judgments, and to seek reimbursement from PCC for such payments. No payment by Western World shall constitute a waiver of its right to seek an allocation or reimbursement of such amounts on the ground there was no duty to defend or indemnify. Specifically, Western World reserves the right to recover defense fees incurred in defending claims which create no potential for coverage, to recover payments made for settlement or judgment of any claim not covered by the policy, or to recover all defense payments or indemnity payments if the policy is rescinded.

If you disagree with the contents of this, you may have the matter reviewed by the California Department of Insurance. The address and telephone number of the appropriate unit is: California Department of Insurance, Claims Service Bureau, 11th Floor, 300 South Spring Street, Los Angeles, California 90013, telephone number: 1 (800) 927-4357 or (213) 897-8921

Should you have any questions regarding this letter or the coverage that is provided under the policy, please do not hesitate to contact me at the above direct-dial number.

Very truly yours,

Steven H. Joseph
Second Vice President, JD

SNJ/rv
114165 Professional Collection L3 15 SJ rv.docx
Cert. 7014 0150 0001 0218 6240/RRR
cc: Agent #16104 – U.S. Risk Pro
    Jim Wraith, Esq.
        Selvin Wraith Halman LLP