

 Extra
**Policy Declarations**

| NAMED INSURED AND ADDRESS | | PRODUCER |
|---|---|---|
| Item 1. | Professional Collection Consultants, Inc<br>6700 S Centinela Blvd 3rd Floor<br>Culver City, CA 90230 | DiBuduo & De Fendis Insurance Agency, Inc.<br>Kelly Vargas<br>6873 N West Avenue, Suite 101<br>P.O. Box 5479<br>Fresno, CA 93755-5479 |
| Attn: | Todd Shields | |

| CUSTOMER NUMBER | INSURER |
|---|---|
| 495089 | Continental Casualty Company |
| **POLICY NUMBER** | 333 S. Wabash Ave. |
| 425525639 | Chicago, IL<br>60604 |

Item 2. **Policy Period:**  2/17/2013 to 2/17/2014
12:01 a.m. local time at the address stated in Item 1.

Item 3. **Policy Premium:** $19,102 (does not include Surcharges or Taxes, if applicable)

| Lines of Business | Policy Year Premium | Policy Period Premium |
|---|---|---|
| Management Liability | $19,102 | $19,102 |

Item 4. **Coverage Parts and Endorsements:**

| | | |
|---|---|---|
| Epack Extra - Directors & Officers Liability Coverage Part | GSL12039XX | 03/2010 |
| Epack Extra - Fiduciary Liability Coverage Part | GSL12041XX | 03/2010 |
| Epack Extra - Employment Practices Liability Coverage Part | GSL12040XX | 03/2010 |
| | | |
| Coverage of and Cap on Losses for Certified Acts of Terrorism | GSL-3886-XXEE | 01/2008 |
| Notice of Terrorism Coverage - Notice Disclosure Of Premium | GSL-3908-XX | 01/2008 |
| AMEND WRONGFUL EMPLOYMENT PRACTICE | GSL-58712-XX | 03/2012 |
| Pre-Circumstance Engagement Of Counsel Credit | GSL-52400-XX | 03/2012 |
| Amend Defense Settlement And Consent | GSL-57799-XX | 02/2012 |
| Amend Public Offerings Exclusion | CNA-68260-XX | 06/2012 |
| Cancellation/Non-Renewal Endorsement - California | GSL-7541-CA | 11/2004 |

© CNA  All Rights Reserved

GAREN DECLARATION - EXHIBIT A
1



 Extra
Policy Declarations

Item 5. **Notices of Claims to Insurer:**

CNA Global Specialty Lines C/O: Claim Intake Manager
P.O. Box 8317
Chicago, IL 60680-8317
Email address: CAIntake@cna.com
Fax Number: 866-773-7504

These Declarations, along with the completed and signed Application, the Policy, and any written endorsements attached shall constitute the contract between the Insureds and the Insurer.

Authorized Representative:     *John B Brand*

Date:                                          08/22/2013

© CNA  All Rights Reserved

GAREN DECLARATION - EXHIBIT A
2



 **Extra**

Management Liability Coverage Part Declarations

## NOTICE

**THE LIABILITY COVERAGE PARTS ARE WRITTEN ON A CLAIMS MADE BASIS, AND AS SUCH, TO ALL PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE DURING THE POLICY PERIOD.  NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES.  DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION.   PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**Named Insured:**  Professional Collection Consultants, Inc

**Policy Number:**  425525639     **Policy Period:**  2/17/2013 to 2/17/2014

Item 1. **Policy Year Limits of Liability and Retentions** (inclusive of **Defense Costs**).  Regardless of the Option selected, as indicated by a checked box, please refer to the Coverage Schedule below for applicable Coverage Parts.

The Coverage Parts designated below are issued with the Limits of Liability and Retention Option selected below:

☑ Single Limit of Liability and Scheduled Retentions:
   Single Limit of Liability                          $1,000,000
   Scheduled Retentions                               Refer to Column 3 below

☐ Scheduled Limits of Liability and Scheduled Retentions:
   Scheduled Limits of Liability                      Refer to Column 2 below
   Scheduled Retentions                               Refer to Column 3 below

| ① Coverage Part | ② Scheduled Limits of Liability | ③ Scheduled Retentions Per Claim | Prior or Pending Date | Policy Year Premium | Policy Period Premium |
|---|---|---|---|---|---|
| Directors & Officers Liability | | $15,000 | 02/17/2010 | $7,323 | $7,323 |
| Fiduciary Liability | | $0 | 02/17/2000 | $800 | $800 |
| Employment Practices Liability | | $50,000 | 02/17/2010 | $10,979 | $10,979 |

NOTE:  The premium shown on this Declarations page does not include Surcharges or Taxes, if applicable

Authorized Representative :    *John S Brant*

Date:                08/22/2013

GAREN DECLARATION - EXHIBIT A

3





**GENERAL TERMS AND CONDITIONS**

The Insurer and the **Insureds**, in consideration of the payment of the premium and in reliance upon all statements made in the **Application** furnished to the Insurer designated in the Policy Declarations, a stock insurance corporation, hereafter called the "Insurer," agree as follows. Terms in bold face type have special meaning. See the Glossary of Defined Terms or the applicable Coverage Parts of this Policy.

---

| I. | TERMS AND CONDITIONS |
|---|---|

The terms and conditions of each **Coverage Part** apply only to that **Coverage Part** and shall not apply to any other **Coverage Part**. If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any **Coverage Part**, the terms and conditions of such **Coverage Part** shall control for purposes of that **Coverage Part**.

---

| II. | CANCELLATION |
|---|---|

A. **Insurer's Right to Cancel**

The Insurer shall not cancel this Policy except for non-payment of any premium when due. The Insurer shall provide to the **Named Insured** written notice of such cancellation stating when, not less than twenty (20) days thereafter, such cancellation shall be effective, except that non-payment of premium due at inception of this Policy will result in the policy being cancelled effective as of the effective date.

B. **Named Insured's Right to Cancel**

The **Insureds** grant the exclusive authority to cancel this Policy to the **Named Insured**. The **Named Insured** may cancel this Policy by providing the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing or delivery of such notice shall be sufficient. The unearned premium shall be computed on a pro-rata basis and premium adjustment may be made at the time cancellation is effected or as soon as practicable.

---

| III. | NON-RENEWAL |
|---|---|

If the Insurer decides not to offer any renewal terms for this Policy, the Insurer shall provide written notice to the **Named Insured** at least sixty (60) days prior to the Policy expiration date. The notice shall include the reason for such non-renewal.

---

| IV. | NAMED INSURED AUTHORIZATION AND NOTICES TO THE NAMED INSURED |
|---|---|

The **Insureds** agree that the **Named Insured** will act on behalf of the **Insureds** with respect to giving of all notices to the Insurer (except pursuant to Section **XXII.** Paragraph **A. Notice of Claim or Privacy Event** or **B. Notice of Circumstance**), the receipt of notices from the Insurer, the payment of the premiums, the receipt of any return premiums that may become due under this Policy, and the acceptance of endorsements.

Any notices required under Section **II. CANCELLATION,** and Section **III. NON-RENEWAL** shall be provided to the **Named Insured** at the last known address and to its insurance agent or broker. The mailing by certified mail of such notice shall be sufficient.

---

| V. | APPLICATION |
|---|---|

A. The **Insureds** represent and acknowledge that the statements contained in the **Application** (which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth of such representations.

---

GSL12049XX (01-2011)

Copyright © CNA  All Rights Reserved.

Page 1





**GENERAL TERMS AND CONDITIONS**

B.  In the event the **Application** contains any misrepresentation or omission made with the intent to deceive, or which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the Policy then this Policy shall be voided as to:

1.  the **Insured Entity**, if the Chief Executive Officer, Chairperson, Chief Financial Officer,  President (or any equivalent position), or the signer of the **Application** knew of such misrepresentation or omission and,

2.  any **Insured Persons** who knew of such misrepresentation or omission.  Such knowledge shall not be imputed to any other **Insured Persons**.

Notwithstanding anything to the contrary in this Policy and solely to the extent there is a **Non-Indemnifiable Loss**, the Insurer shall not seek to rescind the Policy with respect to any **Insured Person** for any reason.

| VI. | CHANGES |
|---|---|

Notice to or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the provisions of this Policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this Policy.

| VII. | NO ACTION AGAINST INSURER |
|---|---|

A.  No action shall be taken against the Insurer unless, as a condition precedent, there shall have been full compliance with all the provisions of this Policy or until the amount of the **Insureds'** obligation to pay shall have been finally determined either by final and nonappealable judgment against the **Insureds** after trial or by written agreement of the **Insureds**, the claimant and the Insurer.

B.  No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

| VIII. | ASSIGNMENT OF INTEREST |
|---|---|

Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed to this Policy.

| IX. | TERRITORY |
|---|---|

Coverage shall apply worldwide.

| X. | ENTIRE AGREEMENT |
|---|---|

The **Insureds** agree that this Policy constitutes the entire contract existing between them and the Insurer or any of its agents relating to this insurance.

| XI. | COORDINATION AMONG COVERAGE PARTS |
|---|---|

Subject always to the applicable Limit of Liability, should two or more **Coverage Parts** apply to the same **Claim**, the Insurer will not pay more than the actual **Loss** incurred by the **Insureds**.

| XII. | COVERAGE FOR NEW SUBSIDIARIES AND PLANS |
|---|---|

A.  If, after the effective date of this Policy:

GSL12049XX (01-2011)

Copyright © CNA  All Rights Reserved.

Page 2




**GENERAL TERMS AND CONDITIONS**

    1.  an **Insured Entity** creates or acquires a privately held entity or plan, or

    2.  an **Insured Entity** or any **Plan** merges with another privately held entity or plan such that an **Insured Entity** or any **Plan** is the surviving entity or plan,

then such entity or plan, and any subsidiaries, plans, directors, officers, trustees or employees of such entity or plan who otherwise would thereby become an **Insured**, shall be automatically covered under this Policy, subject to its terms and conditions.

Notwithstanding the above, solely with respect to the coverage provided under the Crime **Coverage Part**, Section **V, CONDITIONS**, Paragraph **A. 2** New **Employee Benefit Plans**, of the Crime **Coverage Part** controls whether or not such newly created, acquired, or merged plan is an **Insured** as set forth above.

B.  Solely with respect to any liability **Coverage Part**, there shall be no coverage for any **Wrongful Act** by such created, acquired or merged entity or **Plan**, or by any persons or entities considered to be **Insureds** pursuant to paragraph A of this Section, where such **Wrongful Act** occurred in whole or in part before the effective date of such acquisition or merger or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Acts** occurring before such date, would be considered **Interrelated Wrongful Acts**.

---

**XIII.   CHANGE OF STATUS OF INSUREDS**

A.  **Takeover of the Named Insured**

In the event of a **Takeover** of the **Named Insured**, coverage under this Policy shall continue until this Policy expires or is otherwise terminated, but only with respect to **Wrongful Acts** or **Crime Loss** that takes place before the effective date of the **Takeover**, unless:

    1.  the Insurer is notified in writing of the **Takeover** prior to the **Takeover** effective date and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and

    2.  the **Named Insured** accepts any special terms, conditions, exclusions or additional premium charge required by the Insurer.

B.  **Cessation of Subsidiary**

If any **Insured Entity** ceases to be a **Subsidiary**, coverage under this Policy shall continue for such **Subsidiary** but only for **Wrongful Acts** by such **Subsidiary** or any **Insured Person** or **Plan** of such **Subsidiary** occurring prior to the date such **Insured Entity** ceased to be a **Subsidiary**.

C.  **Transfer or Termination of a Plan**

If the sponsorship of a **Plan** is transferred so that an **Insured Entity** is no longer the sole employer sponsor of such **Plan** or if a **Plan** is terminated, coverage under this Policy shall continue for any **Wrongful Act** by or with respect to such **Plan** occurring prior to the date of such transfer or termination.

---

**XIV.   TRADE AND ECONOMIC SANCTIONS**

This Policy does not provide coverage for **Insureds**, transactions or that part of **Loss** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

---

**XV.   VALUATION**

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in United States of America currency. If any judgment, settlement or any part of **Loss** is expressed or calculated in any other currency, payment of such **Loss** due under this Policy will be made in the currency of the United States of America, at the rate of exchange published in <u>The Wall Street Journal</u> on the date the Insurer's obligation to pay such **Loss** is established, or, if not published on that date, on the date of next publication.

Copyright © CNA All Rights Reserved.



**E pack** Extra

## GENERAL TERMS AND CONDITIONS

| XVI. | HEADINGS |
|---|---|

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

| XVII. | BANKRUPTCY |
|---|---|

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of any of its obligations hereunder.

**THOSE LIABILITY COVERAGE PARTS DESIGNATED AS "CLAIMS MADE" APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MADE UNDER ANY CLAIMS MADE LIABILITY COVERAGE PARTS MUST BE REPORTED IN ACCORDANCE WITH THE SECTION XXII., NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. THE FOLLOWING TERMS AND CONDITIONS APPLY ONLY TO LIABILITY COVERAGE PARTS:**

| XVIII. | EXTENDED REPORTING PERIOD |
|---|---|

Solely with respect to those Liability **Coverage Parts** written on a claims made basis, the following applies:

A.  **Optional Extended Reporting Period**

If the **Named Insured** cancels or non-renews this Policy or if the Insurer decides not to offer any renewal terms for this Policy, the **Named Insured** shall have the right to purchase, upon payment of an additional premium an extension of this Policy immediately following the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover**. The additional premium for such extension is a percentage of the total **Policy Premium** attributable to the **Policy Year** in effect upon such cancellation or non-renewal. For a one year extension, the premium equals seventy-five percent (75%) of such total **Policy Premium**; for a two year extension, the additional premium equals one hundred and twenty-five percent (125%) of such total **Policy Premium**; and for a three year extension, the additional premium equals one hundred and fifty percent (150%) of such total **Policy Premium**.

This period shall be referred to as the Extended Reporting Period.

B.  **Payment of Extended Reporting Period Premium**

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this Policy must have been paid. The right to purchase the Extended Reporting Period ends sixty (60) days after termination or expiration of the **Policy Period** unless the Insurer receives written notice and full payment of the premium for such Extended Reporting Period within sixty (60) days after such termination or expiration

C.  **Non-Cancelable/Premium Fully Earned**

If the Extended Reporting Period is purchased, the entire premium shall be deemed fully earned at its commencement without any obligation by the Insurer to return any portion thereof.

D.  **No Separate Limit**

There is no separate or additional limit of liability for the Extended Reporting Period. The remainder of the Limit of Liability applicable to the **Policy Year** in effect at the end of the **Policy Period** is the limit of liability for all **Claims** reported during the Extended Reporting Period.

| XIX. | ESTATES, LEGAL REPRESENTATIVES AND SPOUSES |
|---|---|

Copyright © CNA  All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

Solely with respect to Liability **Coverage Parts**, the estates, heirs, legal representatives, assigns, spouses and any **Domestic Partners** of the **Insured Persons** shall be considered **Insureds** under this Policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for **Claims** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All terms and conditions of this Policy, including without limitation the retention, applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

---

| **XX.** | **LIMITS OF LIABILITY/RETENTIONS** |
|---|---|

Solely with respect to Liability **Coverage Parts**:

A. **Options**

This Policy is offered with one of the following options as set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations:

1. a Single per **Policy Year** Limit of Liability and Scheduled Retentions; or,

2. Scheduled per **Policy Year** Limits of Liability and Scheduled Retentions.

The **Policy Year** Limits of Liability may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage with respect to **Claims** first made or deemed made during any other **Policy Year**. If the applicable Limits of Liability of for any **Policy Year** are exhausted, the Insurer's obligation for that **Policy Year** shall be deemed completely fulfilled and extinguished.

B. **Single Limit of Liability Option**

Where the Single Limit of Liability Option has been selected, as set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations, the limits apply as follows:

1. the limit of liability set forth in the Management Liability **Coverage Part** Declarations shall be the maximum per **Policy Year** aggregate limit of liability of the Insurer for all **Loss** under this Policy from all Management Liability **Coverage Parts** shown on the Management Liability **Coverage Part** Declarations, regardless of the number of such **Coverage Parts**.

2. the limit of liability set forth in the Professional Liability **Coverage Part** Declarations shall be the maximum per **Policy Year** aggregate limit of liability of the Insurer for all **Loss**, all **Privacy Event Expenses**, and all **Network Extortion Expenses** under this Policy from all Professional Liability **Coverage Parts** shown on the Professional Liability **Coverage Part** Declarations, regardless of the number of such **Coverage Parts**.

C. **Scheduled Limits of Liability Option**

Where the Scheduled Limits of Liability Option as set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations, the Scheduled Limits of Liability for each **Coverage Part** shall apply as separate Limits of Liability for each such **Coverage Part** and shall be the maximum per **Policy Year** aggregate limit of liability of the Insurer for all **Loss**, all **Privacy Event Expenses** and all **Network Extortion Expenses** under the respective **Coverage Part** for each **Policy Year**.

D. **Each Claim Limits of Liability**

Subject to the applicable Limit of Liability provided in Paragraph B. or C., above, the amounts set forth in the Professional Liability **Coverage Part** Declarations as the each **Claim** Limit of Liability shall be the per **Policy Year** limit of liability of the Insurer for all **Loss** for each such **Claim**.

E. **Privacy Event Expenses/Network Extortion Expenses Sub-Limit of Liability**

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

Subject to the applicable Limits of Liability provided in Paragraph B., C. or D., above:

1. the amount set forth in the Professional Liability **Coverage Part** Declarations, if any, as the **Privacy Regulation Proceedings** in the Aggregate Limit shall be the per **Policy Year** limit of liability of the Insurer for all **Loss** for all **Privacy Regulation Proceedings;**;

2. the amounts set forth in the Professional Liability **Coverage Part** Declarations, if any, as the **Privacy Event Expenses** in the Aggregate Limit and as the **Network Extortion Expenses** in the Aggregate Limit are the per **Policy Year** limits of liability of the Insurer for all such **Privacy Event Expenses** and all such **Network Extortion Expenses**.

Such amounts as set forth in paragraphs E. 1 and 2 above are sublimits of liability which further reduce, and in no way increase, the applicable each **Claim** and Aggregate Limits of Insurance as set forth on the Professional Liability **Coverage Part** Declarations.

F. **Additional Limit of Liability for Non-Indemnifiable Loss**

Solely with respect to Section I. INSURING AGREEMENT A. of the Directors & Officers Liability **Coverage Part**, there is an additional Limit of Liability which shall not exceed $1,000,000 (the "non-indemnifiable **Loss** limit") per **Policy Year**. This non-indemnifiable **Loss** limit is available only after the applicable Limits of Liability as set forth in the Management Liability **Coverage Part** Declarations has been exhausted.

G. **Retentions**

1. Retentions set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations shall apply under each **Coverage Part** as set forth in such Declarations. The Insurer shall pay **Loss** in excess of any retention as it becomes due and payable to the **Insureds**.

2. Subject to paragraph 3. below, the Insurer's obligation to pay **Loss** is in excess of any applicable retentions. The Insurer will have no obligation to pay all or any portion of any applicable retention. Should the Insurer, in its sole discretion, pay any retention, then the **Named Insured** shall have the obligation to reimburse the Insurer for such amounts.

3. Solely with respect to the Directors & Officers Liability **Coverage Part** and the Fiduciary Liability **Coverage Part**, no retention applies to any **Insured Person** with respect to any **Claim** against such **Insured Persons** if:

   a. the **Insured Entity** and/or any **Plan** are not permitted to advance **Defense Costs** or to indemnify such **Insured Person** for **Loss** by reason of:

      i. **Financial Insolvency**; or

      ii. a good faith determination by the **Insured Entity** and/or any **Plan** that such payment is not permitted under the broadest construction of applicable law; or,

   b. there is a determination of **No Liability** of such **Insured Person** with respect to such **Claim,** or if such **Claim** is dismissed, or, there is a stipulation to dismiss such **Claim**, with prejudice and without the payment of any consideration.

4. Subject to Section **XI. Coordination Among Coverage Parts**, if a **Single Loss** is covered under more than one **Coverage Part** and if more than one retention applies to such **Single Loss**, the maximum total retention amount applicable to such **Single Loss** shall be the highest of such applicable retentions.

H. **Supplementary Payment - Defendant Reimbursement**

If the Insurer requests an **Insured Person's** presence at a trial, hearing, deposition, mediation or arbitration, the Insurer will pay up to $250.00 a day per person for reimbursement of costs and expenses incurred in connection with such presence, subject to a maximum amount of $2,500 per **Claim** per **Policy Year**. Such payments are in addition to the limits of liability and do not erode any retention.

Copyright © CNA All Rights Reserved.

 

**GENERAL TERMS AND CONDITIONS**

I.   **Multiple Insureds, Claims and Claimants**

The applicable limit of liability shown in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations, and subject to the provisions of this Policy, is the amount the Insurer will pay for **Loss**, **Privacy Event Expenses** (as applicable) or **Network Extortion Expenses** (as applicable) per **Policy Year** regardless of the number of **Insureds**, **Claims** (including **Privacy Regulation Proceedings**), **Privacy Events**, **Network Extortions**, or persons or entities making **Claims**.

---

**XXI.   DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE**

Solely with respect to Liability **Coverage Parts**, and solely with respect to those **Claims** that are not **Privacy Regulation Proceedings**:

A.   **Defense of Claims**

The Insurer has the right and duty to defend all **Claims** even if the allegations are groundless, false or fraudulent.  The Insurer shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary.  Alternatively the Insurer may at its option, give its written consent to the defense of any such **Claim** by the **Insureds**.  The Insurer's obligation to defend any **Claim** or pay any **Loss**, including **Defense Costs**, shall be completely fulfilled and extinguished if the applicable limit of liability has been exhausted by payment of **Loss**.

B.   **Settlement**

1.   Consent

The Insurer shall not settle a **Claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or compromise recommended by the Insurer, and acceptable to the claimant, then the limit of liability applicable to such **Claim** for all **Loss** including **Defense Costs** under this Policy shall be reduced to:

a.   the amount of the proposed settlement plus **Defense Costs** incurred up to the date of the **Named Insured's** refusal to consent to proposed settlement of such **Claim**;

plus, solely with respect to the Directors & Officers Liability **Coverage Part**, the Employment Practices Liability **Coverage Part**; and the Fiduciary Liability **Coverage Part**:

b.   eighty percent (80%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph a. above, incurred in connection with such **Claim**. The remaining twenty percent (20%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph a. above will be borne uninsured and at the **Insured's** own risk;

which amount shall not exceed the remainder of the applicable limit of liability specified in the Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations.

2.   Mediation

If, prior to institution of arbitration proceedings or service of suit or within sixty (60) days of the institution of such proceedings or service of suit, the Insurer and the **Named Insured** agree to use a process of non binding intervention by a neutral third party to resolve any **Claim** reported to the Insurer, and if such **Claim** is resolved through such process, the Insurer will reduce the retention applicable to such **Claim** by fifty percent or ten thousand dollars ($10,000.00), whichever is less.

3.   Admission

The **Insureds** shall not admit liability, consent to any judgment, agree to any settlement or make any settlement offer without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for any **Loss** to which it has not consented. The **Insureds** agree that they shall not knowingly take any action which increases the Insurer's exposure for **Loss** under this Policy.

GSL12049XX (01-2011)

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A

10





**GENERAL TERMS AND CONDITIONS**

4. Payment of **Loss** in Excess of Retentions

The Insurer is liable to pay only that amount of a covered **Single Loss** in excess of the applicable retention, if any, up to the applicable limit of liability. The retention shall be uninsured.

5. Cooperation/Assistance of **Insureds**

The **Insureds** shall furnish the Insurer with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Insurer may reasonably request.

C. **Pre-Claim Assistance**

Until the date a **Claim** is made, the Insurer may pay for all costs or expenses it incurs, at its sole discretion, as a result of investigating a circumstance that an **Insured** reports in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE**. Should a circumstance be investigated pursuant to this Section, and that circumstance later becomes a covered **Claim** under this Policy, then the limits of liability and the retention applicable to such **Claim** shall apply to such **Claim**.

D. **Defense of Privacy Regulation Proceedings**

Solely with respect to those **Claims** that are **Privacy Regulation Proceedings**, the **Insureds** and not the Insurer have the duty to defend any **Privacy Regulation Proceedings**. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Privacy Regulation Proceeding** that involves or appears reasonably likely to involve the Insurer.

E. **Allocation**

If, in any **Claim** under a liability **Coverage Part**, the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

1. **Defense Costs**: one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by such **Insured** from such **Claim** will be considered covered **Loss**; and

2. loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

## XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE

Paragraphs A. and B. apply only to those Liability **Coverage Parts** written on a claims made basis.

A. **Notice of Claim or Privacy Event**

The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this Policy, give prior written notice to the Insurer of a **Claim** or a **Privacy Event** as soon as practicable after the **Named Insured's** Chief Executive Officer, Chairperson, Chief Financial Officer, President, Risk Manager, In-House General Counsel or Plan Fiduciary (or any equivalent position) learns of such **Claim** or **Privacy Event** but in no event later than ninety (90) days after termination or expiration of the **Policy Period** or any subsequent renewal **Policy Period** in an uninterrupted series of renewals, or prior to the expiration of the Extended Reporting Period, if applicable.

B. **Notice of Circumstance**

If, during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insureds** first become aware of a **Wrongful Act** that occurred during the **Policy Period** which may reasonably give rise to a future **Claim** (a "circumstance") and during such period give written notice to the Insurer of:

GSL12049XX (01-2011)

Copyright © CNA All Rights Reserved.

Page 8



Extra

**GENERAL TERMS AND CONDITIONS**

1. the names of any potential claimants and a description of the **Wrongful Act** which forms the basis of their potential **Claim**;

2. the identity of the specific **Insureds** allegedly responsible for such specific **Wrongful Act**;

3. the consequences which have resulted or may result from such specific **Wrongful Act**;

4. the nature of the potential monetary damages or non-monetary relief which may be sought in consequence of such specific **Wrongful Act**; and,

5. the circumstances by which **Insureds** first became aware of such specific **Wrongful Act**;

then any **Claim** otherwise covered pursuant to a **Coverage Part** which is subsequently made and which arises out of such circumstance shall be deemed to have been first made and reported to the Insurer by the **Insureds** at the time such written notice was received by the Insurer. No coverage is provided for fees and expenses incurred prior to the time such notice results in a **Claim**.

C. **Notice of Occurrence for the Media Liability Coverage Part (Occurrence)**

Solely with respect to the Media Liability **Coverage Part (Occurrence)**, the **Insureds**, as a condition precedent to the obligations of the Insurer under Media Liability **Coverage Part**, shall give written notice to the Insurer as set forth in such Occurrence form.

D. **Interrelated Claims**

1. More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed made on the earlier of:

   a. the date on which the earliest such **Claim** was first made, or

   b. the first date valid notice was given by the **Insureds** to the Insurer under this Policy of any **Wrongful Act** or under any prior policy of any **Wrongful Act** or any fact, circumstance, situation, event or transaction which underlies any such **Claim**.

2. More than one **Privacy Event** involving the same **Wrongful Act** or **Related Wrongful Acts** shall be considered as one **Privacy Event** which shall be subject to the **Privacy Event** limit applicable to the earliest such **Privacy Event** reported to the Insurer under this Policy or under any prior policy.

E. **To Whom Notice of Claim or Circumstance is Sent**

The Insureds shall give written notice of Claims or circumstances to the Insurer under this Policy as specified in the Policy Declarations, which notice shall be effective upon receipt.

| XXIII. | OTHER INSURANCE |
|---|---|

Solely with respect to Liability **Coverage Parts**:

A. If any **Loss** resulting from any **Claim** is insured under any other valid and collectible insurance, this Policy shall apply only as excess over such other insurance unless such other insurance is written only as specific excess insurance over the limit of liability provided by this Policy.

B. Any coverage under this Policy for **Claims** against any **Insured Person** while acting as an **Outside Entity Executive** shall be specifically excess of any valid and collectible insurance and/or indemnification available to such **Outside Entity Executive** from the **Outside Entity**. Payment by the Insurer or any affiliate of the Insurer under another policy as a result of a **Claim** against an **Insured Person** while acting as an **Outside Entity Executive** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Policy with respect to such **Claim**.

| XXIV. | SUBROGATION AND RECOVERY |
|---|---|

Solely with respect to Liability **Coverage Parts**:

Copyright © CNA  All Rights Reserved.



**E pack** Extra
**GENERAL TERMS AND CONDITIONS**

A. To the extent it pays any **Loss**, the Insurer shall be subrogated to all the **Insureds'** rights of recovery therefore, including without limitation an **Insured Person's** right to indemnification or advancement from an **Insured Entity**. The **Insureds** shall execute all papers necessary to secure such rights, including executing any documents necessary to enable the Insurer effectively to bring suit in their name, and shall take no action which impairs the Insurer's rights of subrogation or recovery.

B. If a **Single Loss** is in part insured and in part uninsured under this Policy or is in an amount in excess of the applicable limit of liability, the **Insureds** and the Insurer shall attempt to agree upon an equitable allocation of any recoveries made, whether before or after payment of the **Loss** by the Insurer, from any person or source responsible for causing the **Loss**. Reasonable expenses incurred in making a recovery shall always have priority of payment from all such recoveries. If, after exerting their best efforts, the **Insureds** and the Insurer are unable to agree upon such an allocation after taking into account due consideration for the respective parties' willingness to pay the expenses of making any recovery, the Insurer, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators.

C. In no event shall the **Insureds** be entitled to recoup from recoveries any amount to satisfy any retention until after all amounts which the Insurer is required to pay or pays under any applicable **Coverage Part** are reimbursed to the Insurer.

D. No person or **Insured Entity** shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

E. Solely with respect to coverage under the Fiduciary Liability **Coverage Part**, the Insurer shall have the right to full recourse against **Insured Persons** who actually commit a **Wrongful Act**, provided however, that if the **Insured Persons** or the **Insured Entity** shall have paid the premium set forth in the Policy Declarations and no part of such premium has been paid, directly or indirectly, from any assets of the **Plan**, then the Insurer shall have no such rights of recourse.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its Chairman and Secretary at Chicago, Illinois, but the same shall not be binding upon the Insurer unless countersigned by a duly authorized representative of the Insurer.

Chairman                                                Secretary

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A
13



**E**pack Extra

**GLOSSARY OF DEFINED TERMS**

For purposes of this Policy, words in bold, whether expressed in the singular or the plural, have the meaning set forth below.

---

### ADMINISTRATOR

**Administrator** means an **Insured** who renders **Administration Services** in connection with the **Plan**.

---

### ADMINISTRATION SERVICES

**Administration Services** means any of the following services in connection with the **Plan**:

1. communicating with or providing information to **Employees** or **Plan** participants or beneficiaries regarding any **Plan**;

2. determining vesting and eligibility for **Plan** participation or benefits;

3. calculating benefits provided under the **Plan**;

4. processing applications and related forms required for the payment of benefits;

5. performing any record-keeping and data processing functions required by **ERISA or any Similar Act** or the **Plan**;

6. preparing and filing any necessary reports or returns required under **ERISA or any Similar Act** or the Internal Revenue Code, and the regulations thereunder;

7. effecting the payment of benefits or authorized administrative expenses; or,

8. enrolling, terminating or canceling **Employees** or **Plan** participants or beneficiaries.

---

### APPLICATION

**Application** means all signed applications for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer or any affiliate of the Insurer of which this Policy is a renewal or replacement. **Application** includes any materials submitted or required to be submitted therewith. An "affiliate of the Insurer" means an insurer controlling, controlled by, or under common control with, the Insurer.

---

### CLAIM

**Claim** means:

1. a written demand for monetary damages or non-monetary relief (including demands for injunctive or declaratory relief) against an **Insured** alleging a **Wrongful Act**, which **Claim** shall be deemed made on the date of the **Insureds'** receipt of such written demand; or

2. a written request received by the **Insured** to toll or waive a statute of limitations in connection with a **Claim** as defined in paragraph **I.** through **III.** below, which **Claim** shall be deemed made on the date of the **Insureds'** receipt of such written request; or

When used in the:

I    Directors & Officers Liability **Coverage Part**, **Claim** also means:

    A.  solely with respect to the Insuring Agreements A., B. and C.1., a proceeding which is

        i.  a civil or criminal proceeding in a court of law or equity or any alternative dispute resolution proceeding; or,

        ii.  a formal civil or criminal administrative or regulatory proceeding;

---

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A

14



 Extra

**GLOSSARY OF DEFINED TERMS**

against an **Insured** alleging a **Wrongful Act**, including any appeal therefrom.  Such **Claim** shall be deemed made on the earliest of the date of service upon, or other receipt by, any **Insured** of a complaint, subpoena, indictment, notice of charge or similar document in such proceeding or arbitration;

B.   solely with respect to Insuring Agreements A. and B., a formal civil, criminal, administrative or regulatory investigation of an **Insured Person** alleging a **Wrongful Act**, which **Claim** shall be deemed made upon such **Insured Person** being identified by name in a formal order of investigation, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or similar document, as someone against whom a formal civil, criminal, administrative or regulatory investigation may be brought; or,

C.   solely when used with respect to Insuring Agreement C.2., a **Shareholder Demand** which **Claim** shall be deemed made on the date of any **Insured's** receipt of such written demand;

II.   Employment Practices Liability **Coverage Part**, **Claim** also means:

A.   a civil proceeding in a court of law or equity or any alternative dispute resolution proceeding; or,

B.   a formal civil administrative or regulatory proceeding or formal civil, administrative or regulatory investigation (including an **EEOC Proceeding**);

against an **Insured**, alleging a **Wrongful Employment Practice,** including any appeal therefrom.  Such **Claim** shall be deemed made on the earliest of the date of service upon, or other receipt by, any **Insured** of a complaint, subpoena, formal order of investigation, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or similar document in such proceeding, arbitration or investigation.

However, **Claim** does not include any criminal proceeding, criminal administrative or criminal regulatory proceeding or criminal investigation.  Nor does **Claim** include an audit conducted by the Office of Federal Contract Compliance Programs unless a Notice of Violation, Order to Show Cause or written demand for monetary relief or injunctive relief has been issued;

III.   Fiduciary Liability Coverage Part. **Claim** also means a proceeding which is a:

A.   civil or criminal proceeding in a court of law or equity or any alternative dispute resolution proceeding; or

B.   a formal civil or criminal administrative or regulatory proceeding or formal civil, administrative or regulatory investigation;

against an **Insured** alleging a **Wrongful Act**, including any appeal therefrom.  Such **Claim** shall be deemed made on the earliest of service upon, or other receipt by, any **Insured** of a complaint, subpoena, indictment, notice of charge, formal order of investigation, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or similar document in such proceeding, arbitration or investigation.

---

**COMPLIANCE COSTS**

**Compliance Costs** means:

1.   **Consulting Fees** incurred in connection with, or

2.   any fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to,

a **Voluntary Compliance Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation; provided **Compliance Costs** shall not include: (i) any costs to correct the non-compliance, or (ii) any **Consulting Fees**, fines, penalties or sanctions relating to a **Plan** which, as of the earlier of inception of this **Policy** or inception of the first policy in an uninterrupted series of policies issued by the **Insurer** of which this **Policy** is a direct or indirect renewal or replacement, any **Insured Person** knew  to be actually or allegedly non-compliant.

---

**CONSULTING FEES**

**Consulting Fees** means reasonable and necessary fees, costs and expenses incurred by the **Insureds** with the prior written consent of the Insurer, including the fees charged by a third party actuary, benefits consultant, accountant or legal counsel, resulting solely from the correction of an actual or alleged inadvertent non-compliance by a **Plan** with

Copyright © CNA  All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**

any statute, rule or regulation. However, **Consulting Fees** shall not include fees, costs or expenses relating to a **Plan** audit or relating to finding, assessing or identifying such violation.

---

**COVERAGE PART**

**Coverage Part** means only those coverage parts designated as included in the Declarations.

---

**DEFENSE COSTS**

**Defense Costs** with respect to all Liability **Coverage Parts** (except Insuring Agreement C.2. of the Directors & Officers Liability **Coverage Part**), means:

1.  all fees charged by attorneys designated by the Insurer, and all reasonable fees charged by attorneys designated by the **Named Insured** with the Insurer's prior written consent;
2.  all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** incurred by the Insurer or by the **Insureds** with the prior written consent of the Insurer; and,
3.  the costs of appeal, attachment or similar bonds. The Insurer has no obligation to provide such bonds.

**Defense Costs** do not include any fees, costs or expenses incurred by an **Insured** to the extent the **Defense Costs** are without the Insurer's prior written consent.

Solely with respect to Insuring Agreement C.2. of the Directors & Officers Liability **Coverage Part**, **Defense Costs** means **Investigative Costs**.

All fees, costs and expenses incurred in the investigation, adjustment, defense and appeal of a **Claim** must be reasonable and necessary to the defense of the **Claim**.

However, **Defense Costs** does not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, **Employees** of the **Insured Entity**.

---

**DOMESTIC PARTNER**

**Domestic Partner** means any person qualifying as a "domestic partner" under any federal, state or local laws or under the **Insured Entity's** employee benefit plans.

---

**EEOC PROCEEDING**

**EEOC Proceeding** means an investigative proceeding before the Equal Employment Opportunity Commission or an adjudicatory or investigative proceeding before any similar federal, state or local government body whose purpose is to address **Wrongful Employment Practices**.

---

**EMPLOYEE**

**Employee** means all past, present or future full-time or part-time employees of the **Insured Entity** or **Plan**, including seasonal and temporary employees and employees leased or loaned to the **Insured Entity**.  **Employee** does not include any volunteers or independent contractors except when used in connection with the Employment Practices Liability **Coverage Part**.

When used in connection with the Crime **Coverage Part**, **Employee** has the meaning set forth therein.

---

**EMPLOYMENT RELATED BENEFITS**

**Employment Related Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan, **Stock Benefits** and any other payment to or for the benefit of an **Employee** arising out of the employment relationship.  **Employment Related Benefits** shall not include salary, wages, commissions, or non-deferred cash incentive compensation.

Copyright © CNA  All Rights Reserved





**GLOSSARY OF DEFINED TERMS**

---

**ERISA OR ANY SIMILAR ACT**

**ERISA or any Similar Act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

---

**EXECUTIVE**

**Executive** means any past, present or future:

1. duly elected or appointed director, officer, trustee, governor or **Manager** of the **Insured Entity** or **Plan**;

2. management committee member if the **Insured Entity** is a joint venture; or,

3. official in the **Insured Entity** organized and operated in a **Foreign Jurisdiction** who is holding a position that is equivalent to an executive position listed in 1. or 2. above.

When used in the Employment Practices Liability **Coverage Part**, **Executive** also includes the director of human resources or functional equivalent position of any **Insured Entity**.

---

**FIDUCIARY**

**Fiduciary** means any **Insured Person** who is described as a fiduciary with respect to the **Plan** in Section 3(21)(A) of Employee Retirement Income Security Act of 1974, as amended.

---

**FINANCIAL INSOLVENCY**

**Financial Insolvency** means:

1. the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Entity** or **Plan**; or such **Insured Entity** or **Plan** becoming a debtor in possession; or

2. the inability of such **Insured Entity** or **Plan** financially or under applicable law to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss**.

---

**FOREIGN JURISDICTION**

**Foreign Jurisdiction** means any jurisdiction, other than the United States or any of its territories or possessions.

---

**INSURED**

**Insured** means the **Insured Person** and the **Insured Entity**.

When used in the Fiduciary Liability **Coverage Part**, **Insured** also means any **Plan**.

---

**INSURED ENTITY**

**Insured Entity** means the **Named Insured** and any **Subsidiary** including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

When used in connection with the Crime **Coverage Part**, **Insured** has the meaning set forth therein.

---

**INSURED PERSON**

**Insured Person** means **Executives** and **Employees** of the **Insured Entity**.

---

GSL13699XXc (Ed. 03-10)

Copyright © CNA  All Rights Reserved.

Page 4

 

**GLOSSARY OF DEFINED TERMS**

When used in the:

I.   Directors & Officers Liability **Coverage Part**, **Insured Person** also includes any **Outside Entity Executive**;

II.  Fiduciary Liability **Coverage Part**, **Insured Person** also includes **Executives** or **Employees** of any **Plan**;

---

### INTERRELATED WRONGFUL ACTS

**Interrelated Wrongful Acts** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

---

### INVESTIGATIVE COSTS

**Investigative Costs** means reasonable and necessary fees and expenses (other than regular or overtime wages or salaries) incurred by the **Insured Entity**, with the prior written consent of the Insurer, in connection with the investigation or evaluation of a **Shareholder Demand**.

---

### LOSS

**Loss** means:

1.  damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the **Insured** is legally obligated to pay on account of a covered **Claim**; and

2.  punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this Policy's other terms, conditions and limitations).  Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiplied amounts.  As used herein, "applicable law" means the law of any of the following jurisdictions:

    a.   where the **Claim** seeking such **Loss** is brought or where such **Loss** is awarded or imposed; or

    b.   where the **Wrongful Act** giving rise to the **Claim** occurred; or

    c.   where the **Insureds** subject to such **Loss** are incorporated, have their principal place of business or reside; or

    d.   where the Insurer is incorporated or has its principal place of business.

Solely with respect to the:

1.  Directors & Officers Liability **Coverage Part**, Insuring Agreement C.2, **Loss** also includes **Investigative Costs**;

2.  Employment Practices Liability **Coverage Part**, **Loss** also includes back pay and front pay, and liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act.

However, **Loss** does not include:

1.  any amount for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

2.  any matters which are uninsurable (other than punitive, exemplary and the multiplied portion of multiplied awards as set forth above) under the law pursuant to which this Policy shall be construed.

In addition to the above, and solely with respect to the:

I.   Directors & Officers Liability **Coverage Part**, **Loss** does not include:

    1.   civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an **Insured** whether pursuant to law, statute, regulation or court rule, other than those civil fines or penalties imposed under 42 USC 1320d-5(a) of the Health Insurance Portability and Accountability Act of 1996, provided however that the maximum

GSL13699XXc (Ed. 03-10)                                                                                              Page 5

Copyright © CNA  All Rights Reserved.



 Extra

**GLOSSARY OF DEFINED TERMS**

limit of the Insurer's liability for all such fines and penalties shall be $100,000 per **Claim**. This sublimit of Liability is part of and not in addition to the applicable Limits of Liability;

2.  any amount (other than **Defense Costs**) attributable to the cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature;

3.  any amounts for which an **Insured** is liable due to an act or omission in knowing violation of any written contract or agreement or due to its assumption of the liability of others under any contract or agreement; or

4.  compensation earned by the claimant in the course of employment but unpaid by the **Insured**, including salary, wages, commissions, severance, bonus or incentive compensation.

II.  Employment Practices Liability **Coverage Part**, **Loss** does not include:

1.  civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an **Insured** whether pursuant to law, statute, regulation or court rule;

2.  compensation earned by the claimant in the course of employment but unpaid by the **Insured**, including salary, wages, commissions, severance, bonus or incentive compensation; or

3.  any amounts for which an **Insured** is liable due to an act or omission in knowing violation of any written contract of employment;

4.  amounts, other than **Defense Costs**, representing medical or insurance premiums or benefit claim payments;

5.  future salary, wages or commissions of a claimant who is hired, promoted or reinstated to employment pursuant to a settlement of, order in, or other resolution of any **Claim**; or

6.  Employment Related Benefits.

III.  Fiduciary Liability **Coverage Part**, **Loss** does not include civil or criminal fines, penalties, taxes, sanctions or forfeitures, imposed on an **Insured** whether pursuant to law, statute, regulation or court rule other than:

1.  Compliance Costs;

2.  the five percent or less or the twenty percent or less penalty imposed upon an **Insured** as a **Fiduciary** under Section 502(i) or 502(l) of ERISA; or,

3.  those civil fines or penalties imposed under 42 USC 1320d-5(a) of the Health Insurance Portability and Accountability Act of 1996, provided however that the maximum limit of the Insurer's liability for all such fines and penalties shall be $100,000 per **Claim**. This sublimit of Liability is part of and not in addition to the applicable Limits of Liability.

---

### MANAGEMENT CONTROL

**Management Control** means:

1.  owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

2.  having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Insured Entity**, to elect, appoint or designate a majority of the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

---

### MANAGER

**Manager** means any natural person manager, member of the management board or equivalent executive of an **Insured Entity** that is a limited liability company.

---

### NAMED INSURED

---

Copyright © CNA All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**

**Named Insured** means the person or entity named in Item 1 of the Policy Declarations.

---

**NO LIABILITY**

**No Liability** means a final judgment of no liability obtained in favor of an **Insured Person** after the exhaustion of all appeals.

---

**NON-INDEMNIFIABLE LOSS**

**Non-Indemnifiable Loss** means **Loss** which the **Insured Entity** fails or refuses to indemnify an **Insured Person**:

1. because of **Financial Insolvency**; or,

2. because it is not permitted to indemnify pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of the **Insured Entity** or **Plan**.

---

**NOT-FOR-PROFIT OUTSIDE ENTITY**

**Not-For-Profit Outside Entity** means any organization exempt from federal income taxation pursuant to 26 U.S.C. §501(c)(3), (4), (6), (7), and (10), as amended.

---

**OCCURRENCE**

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

---

**OUTSIDE ENTITY**

**Outside Entity** means any **Not-For-Profit Outside Entity**.

---

**OUTSIDE ENTITY EXECUTIVE**

**Outside Entity Executive** means an **Executive** of the **Insured Entity** who is or was acting as a member of the board of directors, board of trustees, board of managers, or functional equivalent thereof, in any **Not-For-Profit Outside Entity**, provided and so long as such service is at the specific request, consent or direction of the **Insured Entity**.

---

**PENSION PLAN**

**Pension Plan** means any employee pension benefit plan, as defined in 29 U.S.C. §1002, subject to regulation under **ERISA or any Similar Act**.  However, **Pension Plan** shall not include an excess benefit plan as defined in 29 U.S.C. §1002 or an employee stock ownership plan as defined in 26 U.S.C. §4975.

---

**PLAN**

**Plan** means:

1. any **Welfare Plan** or **Pension Plan** which was, on or prior to the effective date of this Policy, sponsored solely by the **Insured Entity**, or sponsored jointly by the **Insured Entity** and a labor organization, solely for the benefit of the **Employees** of the **Insured Entity**;

2. any **Welfare Plan** or **Pension Plan** which, after the effective date of this Policy, becomes sponsored solely by the **Insured Entity**, or jointly by the **Insured Entity** and a labor organization, solely for the benefit of the **Employees** of the **Insured Entity**, if and to the extent coverage with respect to such **Plan** is afforded pursuant to paragraph A of Section XII. **COVERAGE FOR NEW SUBSIDIARIES AND PLANS** of the General Terms and Conditions of this Policy;

GSL13699XXc (Ed. 03-10)

Copyright © CNA  All Rights Reserved.

Page 7





**GLOSSARY OF DEFINED TERMS**

3.  any other plan or program otherwise described in paragraphs 1. and 2. above while such plan or program is being actively developed, formed or proposed by the **Insured Entity** prior to the formal creation of such plan or program; or,

4.  any government-mandated insurance for workers' compensation, unemployment, social security or disability benefits for **Employees** of the **Insured Entity**.

**Plan** does not include any multi-employer plan as defined in **ERISA or any Similar Act**.

---

**POLICY PERIOD**

**Policy Period** means the period of time from the effective date and time of this Policy to the date and time of termination as shown in the Policy Declarations, or its earlier cancellation date.  If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

---

**POLICY PREMIUM**

**Policy Premium** means the original premium and the fully annualized amount of any additional premiums, other than the Extended Reporting Period premium, charged by the Insurer before or during the **Policy Period**.

---

**POLICY YEAR**

**Policy Year** means the period of one year following the effective date of the **Policy Period** or any subsequent one-year anniversary thereof.  As permitted by individual state law, a **Policy Year** may be extended or reduced by endorsement or by termination of the Policy.

---

**POLLUTANTS**

**Pollutants** means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart.  **Pollutants** includes, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

---

**PROPERTY DAMAGE**

**Property Damage** means:

1.  physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or,

2.  loss of use of tangible property that is not physically damaged except that with respect to the Technology & Telecommunications Liability **Coverage Part** such loss of use must be caused by an **Occurrence**.

When used in the Technology & Telecommunications Liability **Coverage Part** or the Network Security & Privacy Injury **Coverage Part**, **Property Damage** does not include electronic data.  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

---

**SHAREHOLDER DEMAND**

GSL13699XXc (Ed. 03-10)

Copyright © CNA  All Rights Reserved.



 Extra

**GLOSSARY OF DEFINED TERMS**

**Shareholder Demand** means any written demand by one or more shareholders of the **Insured Entity** upon the board of directors of any **Insured Entity** to bring a civil proceeding in a court of law against any **Insured Person** for a **Wrongful Act** provided such demand is brought without the assistance, participation or solicitation of any **Executive**.

---

**SINGLE LOSS**

**Single Loss** means all **Loss** arising from each **Claim**.

---

**STOCK BENEFITS**

**Stock Benefits** means:

1. any offering, plan or agreement between the **Named Insured** and any **Employee** which grants stock, stock warrants or stock options of the **Named Insured** to any such Employee, including but not limited to grants of stock options, restricted stock, stock warrants, performance stock shares, or any other compensation or incentive granted in the form of securities of the **Named Insured**; or

2. any payment or instrument in the amount or value of which is derived from the value of securities of the **Named Insured**, including but not limited to stock appreciation rights or phantom stock plans or arrangements.

However, **Stock Benefits** shall not include employee stock ownership plans or employee stock purchase plans.

---

**SUBSIDIARY**

**Subsidiary** means:

1. any entity (other than a partnership) in which the **Named Insured** has **Management Control** directly or indirectly through one or more other **Subsidiaries**:

   a. on or before the effective date of this Policy; or

   b. after the effective date of this Policy by reason of being created or acquired by the **Named Insured** and any **Subsidiary** after such date, if and to the extent coverage with respect to the entity is afforded pursuant to the General Terms and Conditions, Section **XII.**, **COVERAGE FOR NEW SUBSIDIARIES AND PLANS**; or

2. any not-for-profit entity under section 26 U.S.C. §501(c)(3). (4), (6), (7), and (10), as amended, sponsored exclusively by any **Insured Entity** or any Political Action Committee formed by any **Insured Entity**.

When used in connection with the Crime **Coverage Part**, **Subsidiary** has the meaning set forth therein.

---

**TAKEOVER**

Takeover means:

1. the acquisition by another entity or person, or group of entities or persons acting in concert, of:

   a. the Management Control of the Named Insured; or,

   b. assets of the **Named Insured** resulting in the ownership of more than 50% of the total consolidated assets of **Named Insured** as of the date of the **Named Insured's** most recent audited consolidated financial statement prior to such acquisition;

2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity; or,

3. the consolidation of the **Named Insured** with another entity.

---

**VOLUNTARY COMPLIANCE PROGRAM**

---

GSL13699XXc (Ed. 03-10)

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A

22





**GLOSSARY OF DEFINED TERMS**

**Voluntary Compliance Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the United States Internal Revenue Service, the United States Department of Labor or other similar governmental authority located outside the United States, including without limitation:

1. the Employee Plans Compliance Resolution System consisting of the Self-Correction Program, the Voluntary Compliance Resolution Program and the Audit Closing Agreement Program all as set forth in IRS Revenue Procedure 2003-44 (as amended, modified, expanded or superseded by any successor Revenue Procedure); or

2. Delinquent Filer Voluntary Compliance Program, and the Voluntary Fiduciary Correction Program administered by the Department of Labor.

---

## WELFARE PLAN

**Welfare Plan** means any employee welfare benefit plan as defined in 29 U.S.C. §1002, subject to regulation under **ERISA or any Similar Act**. **Welfare Plan** shall not include an excess benefit plan as defined in 29 U.S.C. §1002.

---

## WHISTLEBLOWER ACTIVITY

**Whistleblower Activity** means the kind of activity protected under a federal or state whistleblower statute or any regulation promulgated thereunder, regardless of whether or not such activity is done by an **Employee** protected under such statute or regulation.

---

## WRONGFUL ACT

**Wrongful Act** has the meanings set forth below.

I. When used in the Directors & Officers Liability **Coverage Part**, **Wrongful Act** means:

    1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty (including violations of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA)) committed or attempted by:

        a. the **Insured Persons** in their capacity as such; or

        b. the **Insured Entity** or by any natural person for whose **Wrongful Act** the **Insured** is legally responsible; or,

    2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity.

II. When used in the Employment Practices Liability **Coverage Part**, **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by an **Insured Entity**.

III. When used in the Fiduciary Liability **Coverage Part**, **Wrongful Act** means:

    1. any actual or alleged error, omission, negligent act, misstatement, misleading statement, neglect or breach of duty imposed upon an **Insured** by **ERISA or any Similar Act**, solely in such **Insured's** capacity as a **Fiduciary** of a **Plan**, or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary** of a **Plan**;

    2. any actual or alleged error, omission, negligent act, misstatement, misleading statement, neglect or breach of duty committed or attempted by the **Insureds**, including any violation of regulation 45 CFR, Subchapter C, Part 164, under the Health Insurance Portability and Accountability Act of 1996, solely in such **Insured's** capacity as an **Administrator**; or,

    3. the failure to properly or timely provide COBRA notices, but only with respect to a **Plan**.

---

## WRONGFUL EMPLOYMENT PRACTICE

Copyright © CNA  All Rights Reserved.



 Extra

**GLOSSARY OF DEFINED TERMS**

**Wrongful Employment Practice** means any **Wrongful Act** constituting or relating to:

1.  wrongful dismissal, discharge or termination of employment, whether actual or constructive;

2.  employment-related misrepresentation;

3.  violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment, including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and the Family and Medical Leave Act of 1993;

4.  sexual harassment or other unlawful harassment;

5.  wrongful deprivation of career opportunity, demotion, failure to grant tenure, failure to employ or promote; failure to afford partnership or other equity status and failure to train;

6.  wrongful discipline of **Employees**;

7.  retaliation against **Employees** for the exercise of any legally protected right or for engaging in any legally protected activity;

8.  negligent evaluation of **Employees**, negligent hiring, negligent supervision, and negligent training;

9.  failure to adopt adequate workplace or employment policies and procedures;

10. employment-related libel, slander or defamation, humiliation or invasion of privacy;

11. employment-related wrongful infliction of emotional distress;

12. solely with respect to any natural person other than an **Employee**, any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment; or

13. breach of a written contract of employment.

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A
24



Thank you for purchasing EPL coverage from CNA. As a CNA EPack Extra policyholder, you are entitled to a package of services, offered **at no additional charge**, to help you manage your business risks.

## Beyond HR<sup>sm</sup>

Beyond HR<sup>sm</sup> is an interactive, web-based platform that helps CNA policyholders train their employees on a variety of employment topics and develop employment policies, practices and procedures.

The Equal Employment Opportunity Commission, courts, and certain state laws have made it clear that employers must take all necessary steps, including periodic training, to prevent certain wrongful employment practices. To assist you in diminishing this risk to your company, CNA's Beyond HR<sup>sm</sup> provides complimentary training in areas such as preventing harassment, wrongful termination and retaliation. For companies with employees in states where the law requires employers to provide sexual harassment prevention training, Beyond HR<sup>sm</sup> can assist your company in meeting these requirements by providing training in an interactive web-based format, with the capability to track employee participation through an easy to use, online mechanism. Comparable training and materials may cost hundreds or thousands of dollars if purchased separately.

Beyond HR<sup>sm</sup> also offers a variety of other features to assist your company in mitigating employment practices risks, such as:

- A searchable database of articles and checklists on important workplace topics.
- Refresher bulletins to support the online training modules.
- A model employment handbook and model policies and forms.
- Webinars and Best practices minutes podcasts on various workplace topics such as disability accommodation, bullying, social media and cyber crime.

Registration is quick and easy. From your web browser, navigate to www.cnabeyondhr.com, click on the "How to Register" link, and follow the instructions. Your CNA policy number will be required to register for the first time.

## H. R. HELP LINE

Eligible CNA policyholders can receive human resources consulting advice through the H.R. Help Line, provided by Jackson Lewis, LLP, a national law firm that specializes in employment law. Simply have your human resources representative call the toll-free H. R. Help Line at 1-888-CNA-EPL1 (1-888-262-3751), identify your company as a CNA employment practices policyholder and provide your company's policy number. The H.R. Help Line is serviced by attorneys who do not act as legal counsel to callers, but rather as human resources consultants, providing information regarding risk control strategies. You can begin using the Help Line today by following the enclosed instructions.

We think you will find these services to be valuable to your business. For more details, please go to our website at http://www.cnapro.com/html/riskmanagement.html or contact your insurance representative.....and **Thank You for insuring with CNA.**

These services are available at no additional charge to most CNA employment practices liability policyholders.

The McCalmon Group, Inc. and Jackson Lewis, LLP are neither affiliates of CNA, nor an agent or broker. As such, information reported to them is not notice to CNA of any claim or potential claim. Please contact CNA or your insurance agent or broker to report claims or potential claims. Risk Management is your responsibility. H.R. Web Training is not intended to substitute for your own risk management and compliance programs.

CNA Employment Practices Liability policies are underwritten by one of the CNA member property and casualty companies. One or more of the CNA companies provide the products and/or services described. CNA accepts no responsibility for the accuracy or completeness of this material and recommends the consultation with competent legal counsel and/or other professional advisors before applying this material in any particular factual situations. This material is for illustrative purposes and is not intended to substitute for the

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A
25



guidance of retained legal or other professional advisors, or to constitute a contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice. Any references to non-CNA Web sites are provided solely for convenience and CNA disclaims any responsibility with respect thereto. CNA is a registered trademark of CNA Financial Corporation. Copyright © 2013 CNA. All rights reserved.

Copyright © CNA  All Rights Reserved

GAREN DECLARATION - EXHIBIT A
26



## HOW TO ACCESS THE H.R. HELP LINE

CNA EPack Extra policyholders that purchase EPL receive the benefit of professional risk management consultation provided by Jackson Lewis, a national law firm that specializes in employment practices law.

CNA EPack Extra policyholders are entitled to human resources consulting advice for their Human Resources representative or senior managers, at no additional charge, through a toll-free number at **1-888-CNAEPL1 (1-888-262-3751).** They can receive proactive, effective information and strategies to help manage employment practices risks.

Policyholders who have accessed the H. R. Help Line find it to be a useful resource to properly understand and manage sensitive Human Resources issues. The service is of particular value to small businesses that may not have a dedicated Human Resources department. The following five areas appear to generate the most questions and discussions:

- Medical leave issues especially in regard to an employee who is currently on leave and may have a change in job status;
- Proper handling of a reduction in force – a common situation in today's economy;
- Allegations of unfair treatment or harassment;
- Handling employee disciplinary situations; and
- Unique circumstances that "textbooks" do not address.

The Jackson Lewis attorneys are first and foremost active listeners. They can offer valuable guidance on proper procedures (file documentation, best practices, etc), consideration of potential options, and development of a game plan.

For more information on CNA's Risk Control products and services, please visit http://www.cnapro.com/html/riskmanagement.html. The H.R. Help Line is not for advice concerning specific legal matters. For these types of issues, we encourage you to speak to your own employment attorney.

Jackson Lewis is neither an affiliate of CNA, nor an agent or broker.  As such, information reported to Jackson Lewis is not notice to CNA of any claim or potential claim.  Please contact your insurance agent or broker to report claims or potential claims.

These services are available only to CNA policyholders that have employment practices liability coverage with CNA.

CNA accepts no responsibility for the accuracy or completeness of the services described herein or the information supplied by the HR Help Line or Jackson Lewis and recommends the consultation with competent legal counsel and/or other professional advisors before applying the information obtained in any particular factual situations.  This material is for illustrative purposes and is not intended to substitute for the guidance of retained legal or other professional advisors, or to constitute a contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured.  All products and services may not be available in all states and may be subject to change without notice.  CNA does not endorse, recommend, or make any representations or warranties as to the accuracy, completeness, effectiveness, suitability, or performance of any of the products, applications, software, or programs identified herein.

CNA is a registered trademark of CNA Financial Corporation. Copyright © 2013 CNA. All rights reserved.

GAREN DECLARATION - EXHIBIT A
27



**E**pack Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART**

---

**I.    INSURING AGREEMENT**

**A.  Management Liability (Individual) – Non-Indemnifiable Loss**

The Insurer shall pay on behalf of the **Insured Persons** (including **Outside Entity Executives**) that **Loss** up to the applicable limit of liability, resulting from any **Claim** first made against them during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified them for such **Loss**.

**B.  Management Liability – Indemnifiable Loss**

The Insurer shall pay on behalf of an **Insured Entity** that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, for which such **Insured Entity** has indemnified an **Insured Person** and which results from any **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**.

**C.  Insured Entity Liability**

The Insurer shall pay on behalf of **Insured Entity**:

1.  that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against the **Insured Entity** for a **Wrongful Act**; and

2.  all **Investigative Costs**, up to the applicable sublimit of liability, resulting from any **Shareholder Demand** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against the **Insured Entity** for a **Wrongful Act**.

Provided, however, that such **Claim** must be reported in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions for coverage to apply.

---

**II.    EXCLUSIONS**

**A.  Exclusions Applicable to All Insureds**

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against any **Insured**:

1.  **Bodily Injury/Property Damage**

    for any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, humiliation, libel, slander or defamation of any person, or **Property Damage** except that this exclusion does not apply to any actual or alleged emotional distress, mental anguish or humiliation made in connection with any employment-related **Wrongful Act**;

2.  **Claims by Insureds**

    by or on behalf of any **Insured** in any capacity provided, however that this exclusion shall not apply to:

    a.   any **Claim** brought derivatively on behalf of the **Insured Entity** provided that such **Claim** is brought and maintained solely by persons acting independent of and without the solicitation, assistance, active participation or intervention of the **Insured Entity** or any **Executive** (unless such solicitation, assistance, participation or intervention is **Whistleblower Activity**);

    b.   any **Claim** that is in the form of a cross claim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy;

    c.   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator or creditors committee for an **Insured Entity** or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator or creditors committee;

Copyright © CNA  All Rights Reserved.

 **E pack** Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART**

d.  any **Claim** brought by any past **Executive** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the Board of **Managers**, General Counsel (or equivalent position) of an **Insured Entity** for at least three (3) years prior to such **Claim** being first made by any such person;

e.  any **Claim** brought by an **Executive**, who is also an **Employee**, for any actual or alleged wrongful dismissal, discharge or termination of employment;

f.  any **Claim** (other than an employment-related **Claim**) brought by an **Employee** who is not an **Executive**: or,

g.  any **Claim** brought and maintained in a jurisdiction outside the United States of America, Canada or Australia by an **Insured Person** of the **Named Company** or any **Subsidiary** chartered in such foreign jurisdiction;

3.  **Discrimination or Harassment/Fair Labor Standards Act**

by any third party or independent contractor alleging any actual or alleged:

a.  discrimination or harassment including but not limited to violation of any federal, state or local laws (whether common-law or statutory) concerning discrimination including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866; or

b.  violation of the Fair Labor Standards Act as amended, or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies;

4.  **ERISA or any Similar Act**

for any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA or any Similar Act**;

5.  **Illegal Profits/Deliberate Acts**

where:

a.  such **Insureds** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled; or

b.  such **Insureds** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage.

as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding;

For purposes of determining the applicability of this exclusion:

1.  the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

2.  only facts pertaining to and knowledge possessed by any past, present or future Chief Executive Officer, Chairperson, Chief Financial Officer, President (or any equivalent position) of an **Insured Entity** shall be imputed to all **Insured Entities**;

6.  **Outside Entity vs. Insured Persons**

made against an **Outside Entity Executive** by or on behalf of the **Outside Entity** or one or more of the **Outside Entity's** directors, officers, trustees, governors or equivalent executives; provided, however, that this exclusion shall not apply to:

a.  any **Claim** brought derivatively on behalf of the **Outside Entity** provided that such **Claim** is brought and maintained solely by persons acting independent of and without the solicitation, assistance, active participation or intervention of the **Outside Entity** or any **Outside Entity Executive** (unless such solicitation, assistance, participation or intervention is **Whistleblower Activity**);

Copyright © CNA  All Rights Reserved



E·track™ Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART**

b.   any **Claim** that is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy;

c.   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator or creditors committee for an **Outside Entity** or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator or creditors committee;

d.   any **Claim** brought by any past directors, officers, trustees, governors or equivalent executives of an **Outside Entity** who has not served as a duly elected or appointed past directors, officers, trustees, governors or equivalent executives of for an **Outside Entity** for at least three (3) years prior to such **Claim** being first made against any person; or,

e.   any **Claim** brought and maintained by a director, officer, trustee or governor, management committee member or **Manager** of an **Outside Entity** in a jurisdiction outside the United States of America, Canada or Australia;

7.  **Pollutants**

    based upon or arising out of:

a.   any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

b.   any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or

c.   any actual or alleged **Property Damage**, bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity** or any **Outside Entity**, their security holders, or their creditors resulting from any of the aforementioned matters;

However, this exclusion shall not apply to the extent:

i.   there is no indemnification of the **Insured Persons** for such **Claim** by the **Insured Entity**; and,

ii.  such **Claim** is brought by or on behalf of any owners of securities in their capacity as such while acting totally independently of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity** or any **Insured Persons**;

8.  **Prior Notice**

    based upon or arising out of:

a.   any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or

b.   any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

9.  **Prior or Pending**

    based upon or arising out of or constituting any civil, criminal, administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

10. **Prior Wrongful Acts of Subsidiaries**

    for:

a.   any **Wrongful Act** by **Insured Persons** of any **Subsidiary** or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or,

Copyright © CNA  All Rights Reserved.



E pack Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART**

    b.   any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

**11. Professional Services**

based upon or arising out of any **Wrongful Act** in connection with the performance of professional services by or on behalf of the **Insured Entity** for the benefit of any other entity or natural person; provided, however, this exclusion shall not apply to any **Claim** which alleges that any **Executive**, in his or her capacity as such, failed to supervise those who performed such professional services;

**12. Public Offerings**

based upon or arising out of:

    a.   the public offer, sale, solicitation or distribution of securities issued by the **Insured**; or

    b.   the actual or alleged violation of any federal, state, local or provincial statute relating to securities or any rules or regulations promulgated thereunder if such violation actually or allegedly occurred after a transaction described in a. above;

provided that if, at least 30 days prior to the transaction described in a. above, the Insurer receives notice of the proposed transaction and any additional information requested by the Insurer, the Insurer shall offer to the **Insured Entity** a proposal to delete this exclusion subject to the terms and conditions, and payment of any additional premium, described in such proposal;

However this exclusion shall not apply:

    1.   to the extent that such **Claim** is made by a security holder of the **Insured Entity** for the failure of the **Insured Entity** to undertake or complete an initial public offering or sale of securities of the **Insured Entity**; or

    2.   to any offer, purchase or sale of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933;

**13. Wrongful Acts of Executives of other Entities**

for any **Wrongful Act** by such **Insured Person** while serving in the capacity, or solely by reason of their status, as a director, officer, trustee, governor, manager, employee or similar position in any entity, other than an **Insured Entity** or an **Outside Entity**;

**B. Exclusions Applicable to the Insured Entity**

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against the **Insured Entity**:

**1. Corporate Distributions**

based upon or arising out of:

    a.   the actual or proposed payment by an **Insured** of an allegedly inadequate price or consideration for the purchase of securities issued by an **Insured Entity**; or

    b.   any dividends or other distributions of corporate profits of an **Insured Entity** to any shareholder of an **Insured Entity**;

provided however, that the Insurer shall provide a defense of such Claim and will pay Defense Costs in connection with such Claims subject to the applicable limits of liability and retentions;

**2. Employment Related Wrongful Acts**

based upon or arising out of any employment-related **Wrongful Act**:

**3. Failure of Product**

GSL12039XX (Ed. 03-10)

Copyright © CNA  All Rights Reserved

Page 4



**E**pack Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART**

based upon or arising out of any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

4. **Intellectual Property**

for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade dress, trade secret or any other intellectual property rights;

5. **Unfair Trade Practices**

based upon or arising out of:

a. charges of price fixing, restraint of trade, monopolization or unfair trade; or

b. any actual or alleged violation of:

i. the Federal Trade Commission Act, the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade;

ii. any rules or regulations promulgated under or in connection with the above statutes; or

iii. any similar provision of any state, federal or local statutory law or common law.

---

**III.   INVESTIGATIVE COSTS SUBLIMIT**

The Insurer shall reimburse the **Insured**, subject to the maximum aggregate Limit of Liability, up to $250,000.00 for all **Investigative Costs** arising out of all **Shareholder Demands** first made against an **Insured Entity** during the **Policy Period** or the Extended Reporting Period (if applicable). This **Investigative Costs** Sublimit shall be part of and not in addition to the aggregate limit of liability stated in the Management Liability **Coverage Part** Declarations. No retention applies to **Investigative Costs**.

---

**IV.   ORDER OF PAYMENTS**

If the amount of any covered **Loss** which is otherwise due and owing by the Insurer under this **Coverage Part** exceeds the then-remaining Limit of Liability of this Policy, the Insurer shall pay such **Loss** under this **Coverage Part** (subject to such Limit of Liability) in the following priority:

1. first, the Insurer shall pay **Loss** for which coverage is provided under Insuring Agreement A. of this **Coverage Part**; then

2. only after payment of **Loss** has been made pursuant to 1. above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer, or equivalent officer, of the **Named Insured**, the Insurer shall either pay or withhold payment of such other **Loss** for which coverage is provided under Insuring Agreements B. and C. of this **Coverage Part**.

In the event the Insurer withholds payment pursuant to Paragraph 2. above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions from the Chief Executive Officer, or equivalent officer, of the **Named Insured** remit such payment to an **Insured Entity** or directly to or on behalf of an **Insured Person**. The Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

The bankruptcy or insolvency of any **Insured Entity** or any **Insured Person** shall not relieve the Insurer of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Part** pursuant to this Section.

---

**V.   COORDINATION WITH EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION**

If a **Claim** is covered under both this **Coverage Part** and the Employment Practices Liability **Coverage Part** then such **Claim** first shall be covered pursuant to the Employment Practices Liability **Coverage Part**, including its limit

GSL12039XX (Ed. 03-10)                                                                                    Page 5

Copyright © CNA  All Rights Reserved.



 Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART**

of liability and retention.  Any remaining **Loss** otherwise covered by this **Coverage Part** which is not paid under such Employment Practices Liability **Coverage Part** shall be covered pursuant to this **Coverage Part**, including its limit of liability and retention; provided any applicable Retention under this **Coverage Part** shall be reduced by the amount of **Loss** (otherwise covered by this **Coverage Part**) which is paid by the **Insureds** as the retention under such Employment Practices Liability **Coverage Part**.

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A
33



**E**pack™ Extra

**FIDUCIARY LIABILITY COVERAGE PART**

---

| I. | **INSURING AGREEMENT** |
|---|---|

The Insurer shall pay on behalf of the **Insured** that **Loss**, in excess of the retention and up to the applicable limit of liability, resulting from any **Claim** first made against any **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act** by such **Insured** or by any natural person for whose **Wrongful Act** such **Insured** is legally responsible.   Provided, however that such **Claim** must be reported in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions for coverage to apply.

---

| II. | **EXCLUSIONS** |
|---|---|

**A. Exclusions Applicable to All Loss**

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against any **Insured**:

1. **Assumed Liability**

    based upon or arising out of liability of others assumed by any **Insured** under any contract or agreement, however, this exclusion shall not apply to the extent that:

    a. the **Insured** would have been liable in the absence of such contract or agreement; or

    b. the liability was assumed in accordance with or under the trust instrument or equivalent documents governing the assets of the **Plan**;

2. **Bodily Injury/Property Damage**

    for any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, libel, slander or defamation of any person, or **Property Damage**;

3. **Discrimination**

    for discrimination in violation of any law other than **ERISA or any Similar Act**;

4. **Illegal Profits/Deliberate Acts**

    where:

    a. such **Insured** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled; or,

    b. such **Insured** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage;

    as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding;

    For purposes of determining the applicability of this exclusion:

    i. the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and,

    ii. only facts pertaining to and knowledge possessed by any past, present or future Chief Executive Officer, Chairperson, Chief Financial Officer, President (or any equivalent position) of an **Insured Entity** shall be imputed to all **Insured Entities**; or past, present or future trustee or **Administrator** of a **Plan** shall be imputed to all **Plans**;

5. **Prior Notice**

    based upon or arising out of:

    a. any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or

Copyright © CNA  All Rights Reserved.





**FIDUCIARY LIABILITY COVERAGE PART**

    b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

6.  **Prior or Pending**

    based upon or arising out of or constituting any administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Management Liability Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

7.  **Prior Wrongful Acts of Subsidiaries**

    for:

    a.  any **Wrongful Act** by **Insured Persons** or **Plans** of any **Subsidiary** or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or,

    b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

8.  **Pollutants**

    based upon or arising out of:

    a.  any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

    b.  any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or

    c.  any actual or alleged **Property Damage**, bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity** or the **Plan**, their security holders, or their creditors resulting from any of the aforementioned matters.

    However this exclusion shall not apply to:

    i.  any **Claim** by or on behalf of a beneficiary of or participant in any **Plan** by reason of the diminution in value of any securities (other than the **Insured Entity's** securities) owned by the **Plan**, resulting from, or allegedly resulting from, any of the aforementioned matters; or

    ii.  **Non-Indemnifiable Loss**.

B.  **Exclusions Applicable to Loss Other than Defense Costs**

The Insurer shall not be liable to pay that portion of **Loss**, other than **Defense Costs**, which constitutes:

1.  **Benefits Due**

    benefits due or to become due under any **Plan**, or benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, except to the extent that:

    a.  an **Insured Person** is legally obligated to pay such benefits as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

    b.  the **Claim** alleges that a covered **Wrongful Act** caused or contributed to a reduction or loss in the value of the Plan's assets and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as benefits or held by a court to be benefits;

2.  **Non-Monetary Relief**

Copyright © CNA  All Rights Reserved.





**FIDUCIARY LIABILITY COVERAGE PART**

any costs incurred by an **Insured** to comply with any order for remedial, preventive, injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

3. **Owed Contributions**

an employer's contributions owed to a **Plan**.

For the purpose of determining the applicability of any exclusion set forth in this subsection B., the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**.

---

### III.   SUPPLEMENTARY PAYMENTS

The Insurer shall reimburse the **Insured**, subject to the aggregate Limit of Liability, up to $150,000.00 for **Compliance Costs** incurred during the **Policy Period** in connection with any **Voluntary Compliance Programs** provided the **Insured** gives prior written notice to the Insurer of its intent to enter into such **Voluntary Compliance Programs** during the **Policy Period**.  This supplementary payment is part of and not in addition to the Limit of Liability for the Fiduciary Liability **Coverage Part** stated in the Management Liability **Coverage Part** Declarations.  No retention applies to this supplementary payment.

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A
36





**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

| I. | INSURING AGREEMENT |
|---|---|

The Insurer shall pay on behalf of **Insured** that **Loss**, in excess of the retention and up to the applicable limit of liability, resulting from any **Claim** first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, by or on behalf of:

**A.** a natural person who is an **Employee** or an applicant for employment for a **Wrongful Employment Practice** as described in paragraphs 1. through 11. of the definition of **Wrongful Employment Practice**.

**B.** any other natural person, for a **Wrongful Employment Practice** but solely to the extent that such **Wrongful Employment Practice** is as described in paragraph 12. of the definition of **Wrongful Employment Practice**.

Provided, however, that such **Claim** must be reported in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions for coverage to apply.

| II. | EXCLUSIONS |
|---|---|

**A. Exclusions Applicable to All Loss**

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against any **Insured**:

1.  **Bodily Injury /Property Damage**

    for any actual or alleged bodily injury (including death), sickness, disease of any person, or **Property Damage** except that this exclusion shall not apply to allegations of emotional distress, humiliation, mental anguish or loss of reputation;

2.  **Prior Notice**

    based upon or arising out of:

    a.  any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or

    b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

3.  **Prior or Pending**

    based upon or arising out of or constituting any administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Management Liability Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

4.  **Prior Wrongful Acts of Subsidiaries**

    for:

    a.  any actual or alleged **Wrongful Act** by **Insured Persons** of any **Subsidiary**, or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**, or

    b.  any other actual or alleged **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

5.  **Pollutants**

    based upon or arising out of:

    a.  any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

GSL12040XX (Ed. 03-10)

Copyright © CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A

37



**E**pack™ Extra
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

   b.  any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so;

   c.  any actual or alleged **Property Damage**, bodily injury, sickness, disease or death of any person, or financial loss.

6.  **Violation of Law**

   a.  for any actual or alleged violation of:

      i.  **ERISA or any Similar Act**, or any other federal, state or local statutory law or common law anywhere in the world governing any employee benefit program, policy, plan or arrangement of any type, including but not limited to laws governing retirement or pension benefit programs, welfare plans, insurance plans, employee stock options, employee stock ownership or employee stock purchase plans or deferred compensation programs;

      ii.  the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

      iii.  any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

      iv.  the Occupational Safety and Health Act of 1970 (OSHA), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing workplace safety and health;

      v.  the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing an employer's obligation to notify or bargain with others in advance of any facility closing or mass layoff;

      vi.  the National Labor Relations Act, as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing employees' rights and the employers duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts or collective activities; and,

   b.  based upon or arising out of any actual or alleged violation of: the Fair Labor Standards Act (except the Equal Pay Act), as amended, or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies.

However, exclusions 5. and 6. do not apply to any **Claim** alleging retaliation (including any **Claim** alleging retaliation in violation of Section 510 of ERISA) or wrongful dismissal or discharge or termination of employment whether actual or constructive, because of:

   a.  with respect to exclusion 5., a claimant's actual or threatened disclosure of the matters described in the Pollutants Exclusion; and

   b.  with respect to exclusion 6., a claimant's exercise of a right pursuant to any such laws.

B.  **Exclusions Applicable To Loss Other than Defense Costs**

The Insurer shall not be liable under this **Coverage Part** to pay that portion of **Loss**, other than **Defense Costs**, which constitutes:

1.  **Cost of Accommodations**

the costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of the Americans With Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws;

2.  **Non-monetary Relief**

Copyright © CNA  All Rights Reserved.





**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

the cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement.

| III. | RISK MITIGATION |
|---|---|

A.   The Insurer will reduce the **Insured Entity's** retention for a **Claim** by 50%, up to $10,000, whichever is less, if the **Insured Entity**, involved in such **Claim**, demonstrates, to the Insurer's reasonable satisfaction, the existence of the following four (4) conditions:

    1.   proof of legal review and sign-off of in-force employment practices policies and procedures for harassment, discrimination and employee grievance by outside counsel who specializes in employment practices law;

    2.   proof of distribution of employment practices policies and procedures on harassment, discrimination and employee grievance, to all employees;

    3.   proof that all directors, officers and managers of the **Insured Entity** have attended outside training and education programs on sexual harassment within the last 24 months prior to the filing of a **Claim**; and,

    4.   a copy of the **Insured Entity's** written policy on email or other electronic communications.

B.   In the event that one **Claim** is eligible for both this Risk Mitigation Credit Section and the Mediation provision found in the General Terms and Conditions, Section **XXI. DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE** Paragraph B.2 Mediation, then the **Insured Entity** shall receive only the benefit of one retention credit, but not both. In no way shall either section be construed to afford any more than a total of 50% or $10,000 credit toward any one retention for any one **Claim**.

Copyright © CNA All Rights Reserved.

GAREN DECLARATION - EXHIBIT A



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE AND CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

Wherever used in this endorsement: 1) "We" means the Insurer listed on the policy declarations page; and 2) "Your" means the Named Insured listed on the policy declarations page.

This endorsement modifies insurance provided under "your" policy.

The changes set forth below are applicable only to those Coverage Parts included within the scope of this endorsement. The Coverage Parts included within the scope of this endorsement are indicated by "Yes" as included. If neither "yes" nor "no" is designated for a Coverage Part, such Coverage Part is not included.

| Included | Form Number | Coverage Part | Premium |
|---|---|---|---|
| Yes | GSL12039XX | Directors & Officers Liability | $0 |

This policy provides coverage for losses arising from "Certified Acts of Terrorism" subject to all other terms and conditions of this policy.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and "we" have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL3886XX (1-08)
Page 1
Continental Casualty Company
Insured Name: Professional Collection Consultants, Inc
© CNA  All Rights Reserved.

Policy No:   425525639
Endorsement No:   1
Effective Date:   02/17/2013

GAREN DECLARATION - EXHIBIT A
40

**CNA**

## IMPORTANT INFORMATION

### NOTICE - OFFER OF TERRORISM COVERAGE
### NOTICE - DISCLOSURE OF PREMIUM

**THIS NOTICE DOES NOT FORM A PART OF YOUR POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY**

You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally the Act provides that to be certified an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act no longer requires the act of terrorism to be committed by or on behalf of a foreign interest and certified acts of terrorism now encompass, for example, a terrorist act committed against the United States government by a United States citizen when the act is determined by the federal government to be "a certified act of terrorism".

In accordance with the Act, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the federal program. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage for your policy is $0.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

LIMITATION ON PAYMENT OF TERRORISM LOSSES (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Further, this coverage is subject to a limit on our liability, pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of the Policy remain unchanged.

---

GSL3908XX (1-08)
Page 1
Continental Casualty Company
Insured Name: Professional Collection Consultants, Inc
© CNA  All Rights Reserved.

Policy No:   425525639
Endorsement No:   2
Effective Date:   02/17/2013

GAREN DECLARATION - EXHIBIT A
41

The image at top left is a CNA logo.



This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date) _____

© CNA  All Rights Reserved.

Policy No:   425525639
Endorsement No:   2
Effective Date:   02/17/2013

GAREN DECLARATION - EXHIBIT A
42



## AMEND WRONGFUL EMPLOYMENT PRACTICE

In consideration of the premium paid for this Policy, it is agreed that the Glossary of Defined Terms, the term **Wrongful Employment Practice**, is amended to delete subparagraph 12 and replace it as follows:

12.   solely with respect to any natural person other than an **Employee**, any actual or alleged discrimination, harassment or violation of an individual's civil rights relating to such discrimination or harassment.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL58712XX (3-12)
Page 1
Continental Casualty Company
Insured Name: Professional Collection Consultants, Inc

Policy No:   425525639
Endorsement No:   3
Effective Date:   02/17/2013

© CNA  All Rights Reserved



## PRE-CIRCUMSTANCE ENGAGEMENT OF COUNSEL CREDIT

In consideration of the premium paid for this Policy, it is understood and agreed that solely with respect to the Employment Practices **Coverage Part**, the Policy is amended as follows:

1.  The Employment Practices **Coverage Part** Section **III. RISK MITIGATION CREDIT**, is amended as follows:

    The following new paragraph is added after Paragraph A:
    *   **Pre-Circumstance Engagement Of Counsel Credit**
        If, prior to the occurrence of a **Wrongful Act**, the **Insured Entity** utilizes a qualified employment practices liability attorney for advice and counsel with respect to any of the following matters:
        1.  a **Leave Request**;
        2.  **Request for Accommodation**; or
        3.  **Proposed Employee Termination**;
        then the Insurer will reduce the **Insured Entity's** retention, applying to a **Claim** which arises from such matter, by 50%, up to a total amount of $2,500.

    Paragraph B. is deleted in its entirety and replaced as follows:

    B.  In the event that one **Claim** is eligible for the Risk Mitigation Credit, the Pre Circumstance Engagement of Counsel Credit and the Mediation provision found in the General Terms and Conditions, Section **XXI. DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE** Paragraph B.2 Mediation, then the **Insured Entity** shall receive the benefit of a total retention credit of 50%, or $10,000 in total, whichever is less. In no event shall any provision be construed to afford any more than a total credit of 50% or $10,000, whichever is less, toward any one retention for any one **Claim**.

2.  The Glossary of Defined Terms is amended to add the following new terms:
    *   **Leave Request** means a request by an **Employee** for leave under the Americans with Disabilities Act (ADA), as amended, the Family Medical Leave Act ("FMLA") as amended, Uniformed Services Employment and Reemployment Rights Act ("USERRA,") or any other similar state or local law or regulation.
    *   **Proposed Termination of Employment** means a plan to terminate the employment of one or more **Employees,** which is neither a "circumstance" as defined in Section XXII. B of the General Terms & Conditions, nor a **Claim** against an **Insured. Proposed Termination of Employment** includes a planned reduction in force ("RIF").
    *   **Request for Accommodation** means an **Employee's** request for an accommodation for:
        1.  a disability under the Americans with Disabilities Act (ADA) or any other similar federal, state or local law or regulation; or
        2.  for religious beliefs under Title VII or any other similar federal, state or local law or regulation.

Nothing herein shall serve to amend the Policy with respect to the **Insured's** obligations with respect to Notice of **Claim** or **Privacy Event** or Notice of Circumstance; or with respect to the Insurer's right to appoint defense counsel.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

© CNA  All Rights Reserved.

GAREN DECLARATION - EXHIBIT A

44

CNA

## AMEND DEFENSE, SETTLEMENT AND CONSENT

In consideration of the premium paid for this Policy, it is understood and agreed that the General Terms & Conditions, Section **XXI. DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE**, is amended as follows:

1.     Paragraph A. **Defense of Claims** is deleted in its entirety and replaced as follows:

    A.     **Defense of Claims**

        The Insurer has the right and duty to defend all **Claims** even if the allegations are groundless, false or fraudulent. The Insurer shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary. The Insurer's obligation to defend any **Claim** or pay any **Loss**, including **Defense Costs**, shall be completely fulfilled and extinguished if the applicable limit of liability has been exhausted by payment of **Loss**.

2.     Paragraph B. **Settlement**, subparagraph 1. Consent is deleted in its entirety, except for the first sentence as follows:

    1.     Consent

        The Insurer shall not settle a **Claim** without the written consent of the **Named Insured**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL57799XX (2-12)  
Page 1  
Continental Casualty Company  
Insured Name: Professional Collection Consultants, Inc  
© CNA  All Rights Reserved.

Policy No:   425525639  
Endorsement No:   5  
Effective Date:   02/17/2013

GAREN DECLARATION - EXHIBIT A  
45



## AMEND PUBLIC OFFERINGS EXCLUSION

In consideration of the premium paid for this Policy, it is agreed and understood that the Directors & Officers Liability **Coverage Part**, Section **II. EXCLUSIONS**, exclusion 12. titled **Public Offerings** is deleted in its entirety and replaced with the following:

12.   **Public Offerings**
   based upon or arising out of:

   a.   the public offer, sale, solicitation or distribution of securities or any **Crowdfunding Offer** issued by the **Insured**; or

   b.   the actual or alleged violation of any federal, state, local or provincial statute relating to securities or any rules or regulations promulgated thereunder if such violation actually or allegedly occurred after a transaction described in a. above;

   provided that if, at least 30 days prior to the transaction described in a. above, the Insurer receives notice of the proposed transaction and any additional information requested by the Insurer, the Insurer shall offer to the **Insured Entity** a proposal to delete this exclusion subject to the terms and conditions, and payment of any additional premium, described in such proposal;

   However this exclusion shall not apply:

   1.   to the extent that such **Claim** is made by a security holder of the **Insured Entity** for the failure of the **Insured Entity** to undertake or complete an initial public offering or sale of securities of the **Insured Entity**; or

   2.   to any offer, purchase or sale of securities, whether debt or equity, other than **Crowdfunding Offers**, in a transaction that is exempt from registration under the Securities Act of 1933;

   As used in this endorsement, **Crowdfunding Offer** means any offer or sale of securities exempted from registration under Section 4(6) of the Securities Act of 1933.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA68260XX (6-12)
Page 1
Continental Casualty Company
Insured Name: Professional Collection Consultants, Inc
© CNA. All Rights Reserved.

Policy No:   425525639
Endorsement No:   6
Effective Date:   02/17/2013

GAREN DECLARATION - EXHIBIT A



## CANCELLATION/NON-RENEWAL ENDORSEMENT-CALIFORNIA

Wherever used in this endorsement: 1) Insurer means "we", "us", "our" or the "Company" as those terms are defined in the policy; and 2) Named Insured means the first person or entity named on the declarations page; and 3) "Insured(s)" means all persons or entities afforded coverage under the policy.

Any cancellation, non-renewal or termination provision(s) in the policy are deleted in their entirety and replaced with the following:

## CANCELLATION AND NON-RENEWAL

**A.     CANCELLATION**

1.   The Named Insured may cancel the policy at any time. To do so, the Named Insured must return the policy to the Insurer or any of its authorized representatives, indicating the effective date of cancellation; or provide a written notice to the Insurer, stating when the cancellation is to be effective.

2.   If the policy has been in effect for less than sixty (60) days and is not a renewal the Insurer may cancel the policy for any reason by mailing or delivering written notice to the Named Insured, at the last mailing address known to the Insurer, and the producer of record. The notice of cancellation will be provided at least thirty (30) days prior to the effective date of cancellation except that in the case of cancellation for nonpayment of premiums or for fraud the notice will be given no less than ten (10) days prior to the effective date of the cancellation.

3.   If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

a.   Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

b.   A judgment by a court or an administrative tribunal that the Named Insured has violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

c.   Discovery of fraud or material misrepresentation by either of the following:
(1)   The Named Insured or Insured(s) or a representative of same in obtaining the insurance; or
(2)   The Named Insured or his or her representative in pursuing a claim under the policy.

d.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the Named Insured or Insured(s) or a representative of same, which materially increase any of the risks insured against.

e.   Failure by the Named Insured or Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Named Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

f.   A determination by the commissioner that the loss of, or changes in, the Insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

g.   A determination by the commissioner that a continuation of the policy coverage would place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

h.   A change by the Named Insured or Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

A notice of cancellation will be in writing and will be delivered or mailed to the Named Insured, at the last mailing address known to the Insurer, and the producer of record at least thirty (30) days prior to the

---

GSL7541CA (11-04)
Page 1
Continental Casualty Company
Insured Named: Professional Collection Consultants, Inc

Policy No:   425525639
Endorsement No:   7
Effective Date:   02/17/2013

© CNA  All Rights Reserved.



effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

4. The notice will state the actual reason for the cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. NON-RENEWAL**

1. The Insurer can non-renew the policy by giving written notice to the Named Insured, at the last mailing address known to the Insurer, at least sixty (60) days but not more than one hundred twenty (120) days before the expiration date.

2. The notice of non-renewal will state the actual reason for non-renewal.

3. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. A notice of non-renewal will not be required in any of the following situations:

    a. The transfer of, or renewal of, a policy without change in its terms or conditions or the rate on which the premium is based between insurers that are members of the same insurance group.
    b. The policy has been extended for ninety (90) days or less, if the notice required has been given prior to the extension.
    c. The Named Insured has obtained replacement coverage or has agreed, in writing, within sixty (60) days of the termination of the policy, to obtain that coverage.
    d. The policy is for a period of no more than sixty (60) days and the Named Insured is notified at the time of issuance that it may not be renewed.
    e. The Named Insured requests a change in the terms or conditions or risks covered by the policy within sixty (60) days prior to the end of the policy period.
    f. The Insurer has made a written offer to the Named Insured, within the prescribed time period, to renew the policy under changed terms or conditions or at a changed premium rate, where the increase is more than 25%. As used herein, "terms or conditions" includes, but is not limited to, a reduction in limits, elimination of coverages, or an increase in deductibles.

5. In the case of conditional renewal, failure of the Named Insured to satisfy conditions provided by the Insurer for renewal, by the expiration date of the policy or thirty (30) days after mailing or delivery of such notice, whichever is later, the conditional renewal shall be treated as an effective non-renewal.

**C. CONDITIONAL RENEWAL**

1. If the policy has been in effect for more than sixty (60) days or if the policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

    a. Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by the Named Insured or Insured(s) which materially increase any of the risks or hazards insured against.
    b. Failure by the Named Insured or Insured(s) to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

GSL7541CA (11-04)
Page 2
Continental Casualty Company
Insured Named: Professional Collection Consultants, Inc
© CNA  All Rights Reserved.

Policy No:  425525639
Endorsement No:  7
Effective Date:  02/17/2013

GAREN DECLARATION - EXHIBIT A
48



      c.    A determination by the commissioner that loss of or changes in an insurer's reinsurance covering all or part of the risk covered by the policy would threaten the financial integrity or solvency of the Insurer unless the change in the terms or conditions or rate upon which the premium is based is permitted.

      d.    A change by the Named Insured or Insured(s) in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

2.    A written notice will be mailed or delivered to the Named Insured, at the last mailing address known to the Insurer, and the producer of record at least thirty (30) days prior to the effective date of any increase, reduction or change.

3.    The notice will state the effective date of, and the reasons for, the increase, reduction or change

4.    If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL7541CA (11-04)  
Page 3  
Continental Casualty Company  
Insured Named: Professional Collection Consultants, Inc

Policy No:   425525639  
Endorsement No:   7  
Effective Date:   02/17/2013

© CNA. All Rights Reserved.

GAREN DECLARATION - EXHIBIT A  
49