CLARK GAREN, SBN 50564
RACHEL ZWERNEMANN, SBN 286515
LAW OFFICES OF CLARK GAREN
EMPLOYEES OF PROFESSIONAL
COLLECTION CONSULTANTS,
6700 SOUTH CENTINELA, THIRD FLOOR,
CULVER CITY, CALIFORNIA 90230
(310) 391-0800, FAX: (310) 636-4771
CELL PHONE: (760) 668-7777

ATTORNEYS FOR DEFENDANT AND
CROSS-COMPLAINANT THE BEST
SERVICE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>-vs-<br><br>PROFESSIONAL COLLECTION CONSULTANTS,<br><br>Defendant. | CASE N0. CV-15-02342 MWF (VBKx)<br><br>ANSWER TO COMPLAINT BY DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS; COUNTER-CLAIM AGAINST WESTERN WORLD INSURANCE COMPANY; and DEMAND FOR JURY TRIAL |

Defendant PROFESSIONAL COLLECTION CONSULTANTS, appearing for itself and itself alone, hereby appears and answers the allegations of Plaintiff's Complaint as follows:

1. In answer to the allegations contained in Paragraph 1 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

2. In answer to the allegations contained in Paragraph 2 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

3. In answer to the allegations contained in Paragraph 3 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained

therein.

4. In answer to the allegations contained in Paragraph 4 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

5. In answer to the allegations contained in Paragraph 5 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

6. In answer to the allegations contained in Paragraph 6 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

7. In answer to the allegations contained in Paragraph 7 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

8. In answer to the allegations contained in Paragraph 8 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

9. In answer to the allegations contained in Paragraph 9 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

10. In answer to the allegations contained in Paragraph 10 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

11. In answer to the allegations contained in Paragraph 11 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

12. In answer to the allegations contained in Paragraph 12 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained

therein.

13. In answer to the allegations contained in Paragraph 13 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

14. In answer to the allegations contained in Paragraph 14 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

15. In answer to the allegations contained in Paragraph 15 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

16. In answer to the allegations contained in Paragraph 16 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

17. In answer to the allegations contained in Paragraph 17 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

18. In answer to the allegations contained in Paragraph 18 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

19. In answer to the allegations contained in Paragraph 19 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

20. In answer to the allegations contained in Paragraph 20 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

21. In answer to the allegations contained in Paragraph 21 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained

GAREN DECLARATION - EXHIBIT B

3

therein.

22. In answer to the allegations contained in Paragraph 22 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

23. In answer to the allegations contained in Paragraph 23 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

24. In answer to the allegations contained in Paragraph 24 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

25. In answer to the allegations contained in Paragraph 25 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

26. In answer to the allegations contained in Paragraph 26 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

27. In answer to the allegations contained in Paragraph 27 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

28. In answer to the allegations contained in Paragraph 28 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

29. In answer to the allegations contained in Paragraph 29 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained therein.

30. In answer to the allegations contained in Paragraph 30 of Plaintiff's Complaint, this answering defendant admits each and every allegation contained

- 4 -

1   **therein.**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GAREN DECLARATION - EXHIBIT B
5

31. In answer to the allegations contained in Paragraph 31, this answering defendant has no information or belief on the subjects mentioned therein to enable it to answer the allegations thereof, and, basing its denial on that ground, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant did not even know that Hudson claimed to have reported what he believed to be illegal conduct to the California Employment Department in 2007 until this answering defendant was served with a copy of his proposed complaint against it on January 13, 2015 at a mediation session attempting to resolve Hudson's complaint against this answering defendant.

32. In answer to the allegations contained in Paragraph 32, this answering defendant has no information or belief on the subjects mentioned therein to enable it to answer the allegations thereof, and, basing its denial on that ground, this answering defendant denies each and every allegation contained therein.

33. In answer to the allegations contained in Paragraph 33, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant affirmatively alleges that on or about June 17, 2013, Hudson was counseled about his job performance and complained that his supervisor was not fairly distributing accounts. This charge was investigated; the supervisor was discharged; and the accounts were re-distributed. A few days later, Hudson expressed satisfaction with the resolution. In addition, during that meeting, Hudson expressed an opinion that PCC was doing something illegal, but when asked to specifically identify the practices that he through were illegal or questionable, he shrugged his shoulders and refused to provide any further response or details.

34. In answer to the allegations contained in Paragraph 34, this answering defendant admits each and every allegation contained therein.

GAREN DECLARATION - EXHIBIT B
6

35. In answer to the allegations contained in Paragraph 35, this answering defendant admits that on or about September 11, 2013, Shields attorney met with an Assistant United States Attorney who advised the Shield attorney that the government considered Shields a target. By way of further answer, when the Shields attorney provided the Assistant United States Attorney with additional information, the Assistant United States Attorney refused to communicate further with the Shields Attorney because the government had not yet discovered sufficient facts upon which to initiate criminal charges against anyone and the government was continuing to investigate. By way of further answer, this answering defendant denies that any law enforcement agency has ever investigated Defendant Professional Collection Consultants for illegal debt collection practices.

36. In answer to the allegations contained in Paragraph 36, this answering defendant has no information or belief on the subjects mentioned therein to enable it to answer the allegations thereof, and, basing its denial on that ground, this answering defendant denies each and every allegation contained therein.

37. In answer to the allegations contained in Paragraph 37, this answering defendant has no information or belief on the subjects mentioned therein to enable it to answer the allegations thereof, and, basing its denial on that ground, this answering defendant denies each and every allegation contained therein.

38. In answer to the allegations contained in Paragraph 38, this answering defendant admits each and every allegation contained therein. By way of further answer, Hudson was terminated for theft and sabotage as more particularly outlined in his notice of termination, a copy of which is attached hereto, marked Exhibit 1, and incorporated herein by reference.

39. In answer to the allegations contained in Paragraph 39, this answering defendant admits each and every allegation contained therein.

40. In answer to the allegations contained in Paragraph 40, this answering defendant admits each and every allegation contained therein.

41. In answer to the allegations contained in Paragraph 41, this answering defendant admits each and every allegation contained therein.

42. In answer to the allegations contained in Paragraph 42, this answering defendant admits each and every allegation contained therein.

43. In answer to the allegations contained in Paragraph 43, this answering defendant admits each and every allegation contained therein.

44. In answer to the allegations contained in Paragraph 44, this answering defendant admits each and every allegation contained therein.

45. In answer to the allegations contained in Paragraph 45, this answering defendant admits each and every allegation contained therein.

46. In answer to the allegations contained in Paragraph 46, this answering defendant admits each and every allegation contained therein.

47. In answer to the allegations contained in Paragraph 47, this answering defendant repeats every admission, denial, and affirmative allegation set forth hereinabove in Paragraphs 1 through 46, inclusive.

48. In answer to the allegations contained in Paragraph 48, this answering defendant admits each and every allegation contained therein.

49. In answer to the allegations contained in Paragraph 49, this answering defendant admits each and every allegation contained therein.

50. In answer to the allegations contained in Paragraph 50, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering affirmatively alleges that, on February 7, 2014, PCC did not have any basis to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim against PCC that would be covered by the policy issued by Plaintiffs.

GAREN DECLARATION - EXHIBIT B

8

51. In answer to the allegations contained in Paragraph 51, this answering defendant denies each and every allegation contained therein.

51(a). In answer to the allegations contained in Paragraph 51(a), this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant affirmatively alleges that on or about June 17, 2013, Hudson was counseled about his job performance and complained that his supervisor was not fairly distributing accounts. This charge was investigated; the supervisor was discharged; and the accounts were re-distributed. A few days later, Hudson expressed satisfaction with the resolution. In addition, during that meeting, Hudson expressed an opinion that PCC was doing something illegal, but when asked to specifically identify the practices that he through were illegal or questionable, he shrugged his shoulders and refused to provide any further response or details. By way of further answer, nothing in the interview with Hudson on June 17, 2013 provided PCC or its officers or directors any basis to believe that such act constitutes a wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim against PCC that would be covered by the policy issued by Plaintiffs.

51(b). In answer to the allegations contained in Paragraph 51(b), this answering defendant admits each and every allegation contained therein. By way of further answer, this answering defendant denies that the execution of a search warrant by the FBI, the interview of PCC personnel, and the seizure of evidentiary material provides PCC or its officers or directors any basis to believe that such act constitutes a wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim against PCC that would be covered by the policy issued by Plaintiffs.

GAREN DECLARATION - EXHIBIT B
9

51(c). In answer to the allegations contained in Paragraph 51(c), this answering defendant admits that on or about September 11, 2013, Shields attorney met with an Assistant United States Attorney who advised the Shield attorney that the government considered Shields a target. By way of further answer, when the Shields attorney provided the Assistant United States Attorney with additional information, the Assistant United States Attorney refused to communicate further with the Shields Attorney because the government had not yet discovered sufficient facts upon which to initiate criminal charges against anyone and the government was continuing to investigate. By way of further answer, this answering defendant denies that any law enforcement agency has ever investigated Defendant Professional Collection Consultants for illegal debt collection practices. By way of further answer, this answering defendant denies that the communications between the Assistant United States Attorney and Shields Attorney provided PCC or its officers or directors any basis to believe that such act constitutes a wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim against PCC that would be covered by the policy issued by Plaintiffs.

51(d). In answer to the allegations contained in Paragraph 51(d), this answering defendant has no information or belief on the subjects mentioned therein to enable it to answer the allegations thereof, and, basing its denial on that ground, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant denies these matters about which neither PCC or any of its officers or directors had any knowledge provided PCC or its officers or directors any basis to believe that such act constitutes a wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim against PCC that would be covered by the policy issued by

GAREN DECLARATION - EXHIBIT B
10

1 | Plaintiffs.

2 |      51(e). In answer to the allegations contained in Paragraph 51(e), this
3 | answering defendant has no information or belief on the subjects mentioned
4 | therein to enable it to answer the allegations thereof, and, basing its denial on
5 | that ground, this answering defendant denies each and every allegation
6 | contained therein. By way of further answer, this answering defendant denies
7 | these matters about which neither PCC or any of its officers or directors had any
8 | knowledge provided PCC or its officers or directors any basis to believe that
9 | such act constitutes a wrongful act, event, matter, fact, circumstance, situation,
10 | or transaction, might reasonably be expected to result in or be the basis of a
11 | future claim against PCC that would be covered by the policy issued by
12 | Plaintiffs.

13 |      52. In answer to the allegations contained in Paragraph 52, this answering
14 | defendant denies each and every allegation contained therein.

15 |      53. In answer to the allegations contained in Paragraph 53, this answering
16 | defendant denies each and every allegation contained therein.

17 |      54. In answer to the allegations contained in Paragraph 54, this answering
18 | defendant denies each and every allegation contained therein.

19 |      55. In answer to the allegations contained in Paragraph 55, this answering
20 | defendant denies that Western World has any grounds for recission of its policy,
21 | and agrees that it will accept the restoration of any insurance premiums paid if
22 | the Court finds in favor of Plaintiff.

23 |      56. In answer to the allegations contained in Paragraph 56, this answering
24 | defendant denies that Plaintiff is entitled to an order rescinding its policy or that
25 | the policy is void *ab initio*.

26 |      57. In answer to the allegations contained in Paragraph 57, this answering
27 | defendant denies each and every allegation contained therein.

28 |      58. In answer to the allegations contained in Paragraph 58, this answering

GAREN DECLARATION - EXHIBIT B

defendant repeats every admission, denial, and affirmative allegation set forth hereinabove in Paragraphs 1 through 57, inclusive.

59. In answer to the allegations contained in Paragraph 59, this answering defendant admits each and every allegation contained therein.

60. In answer to the allegations contained in Paragraph 60, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant alleges that their is coverage and that Plaintiff has a duty to defend PCC under its policy with respect to the Hudson, Pole, and McCann claims.

61. In answer to the allegations contained in Paragraph 61, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant affirmatively alleges that at the time the application for coverage was completed, this answering defendant had no knowledge that either Pole or McCann had been whistleblowers.

62. In answer to the allegations contained in Paragraph 62, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant alleges that their is coverage and that Plaintiff has a duty to defend PCC under its policy with respect to the Hudson, Pole, and McCann claims.

63. In answer to the allegations contained in Paragraph 63, this answering defendant denies each and every allegation contained therein. By way of further answer. This answering defendant affirmatively alleges that neither the Hudson, Pole, or McCann claim is an interrelated claim because none of said claims have anything to do with the FBI action against PCC, the federal grand jury investigation, or the investigation by the United States Attorney's Office. This answering defendant further alleges that none of the Hudson, Pole, or McCann claims arise from the same facts, circumstances, situations, events transaction, causes, or series of casually or logically connected facts, circumstances,

situations, events, transactions, or causes as the Federal Claims.

64. In answer to the allegations contained in Paragraph 64, this answering defendant denies each and every allegation contained therein.

65. In answer to the allegations contained in Paragraph 65, this answering defendant repeats every admission, denial, and affirmative allegation set forth hereinabove in Paragraphs 1 through 64, inclusive.

66. In answer to the allegations contained in Paragraph 66, this answering defendant admits each and every allegation contained therein.

67. In answer to the allegations contained in Paragraph 67, this answering defendant admits each and every allegation contained therein. By way of further answer, this answering defendant requests this Court to determine there is coverage and a duty to defend with respect to the Hudson, Pole, and McCann claims.

68. In answer to the allegations contained in Paragraph 68, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant affirmatively alleges that at the time the application for coverage was completed, this answering defendant had no knowledge that either Pole or McCann had been whistleblowers.

69. In answer to the allegations contained in Paragraph 69, this answering defendant denies each and every allegation contained therein. By way of further answer, this answering defendant alleges that their is coverage and that Plaintiff has a duty to defend PCC under its policy with respect to the Hudson, Pole, and McCann claims.

70. In answer to the allegations contained in Paragraph 70, this answering defendant denies each and every allegation contained therein. By way of further answer. This answering defendant affirmatively alleges that neither the Hudson, Pole, or McCann claim is an interrelated claim because none of said claims have

GAREN DECLARATION - EXHIBIT B

13

anything to do with the FBI action against PCC, the federal grand jury investigation, or the investigation by the United States Attorney's Office. This answering defendant further alleges that none of the Hudson, Pole, or McCann claims arise from the same facts, circumstances, situations, events transaction, causes, or series of casually or logically connected facts, circumstances, situations, events, transactions, or causes as the Federal Claims.

71. In answer to the allegations contained in Paragraph 71, this answering defendant denies each and every allegation contained therein.

### FIRST AFFIRMATIVE DEFENSE - ESTOPPEL

72. Plaintiff is estopped from asserting this claim because Plaintiff has been untimely in asserting its claim. Plaintiff was notified about all of the facts of this claim on July 7, 2014 as alleged in paragraph 40 of Plaintiff's Complaint. However, Plaintiff failed to present this claim until the day of the mediation with Hudson on January 13, 2015. By the time Plaintiff tendered this claim, Plaintiff had engaged attorneys for Defendant at a substantial cost to Defendant, which fees have virtually exhausted Plaintiff's retainage. Had Plaintiff timely notified Defendant of this claim, Defendant would have defended the underlying claim of Hudson in house with corporate counsel, thereby saving the fees paid to the attorneys selected by Plaintiff.

73. Furthermore, by delaying in presenting this claim, Plaintiff caused Defendant to retain defense counsel instead of defending this case in house, which notified Hudson, McCann and Pole that their claims would be covered by insurance.

### SECOND AFFIRMATIVE DEFENSE - UNCLEAN HANDS

74. Plaintiff and Counter-Claim Defendants have mishandled of the claims of Hudson, Pole, and McCann as described hereinabove and hereinafter in Paragraphs 75 - 88, which are incorporated herein by reference. As such, Plaintiff and Counter-Claim Defendants come before this Court with unclean

- 14 -

1   hands and are therefore ineligible for the equitable remedy of recission Plaintiff

2   and Counter-Claim Defendants are alleging.

3

4       W H E R E F O R E, Defendant prays for judgment, according to proof,

5   as follows:

6       1. That judgment herein be awarded to Defendant;

7       2. That Plaintiff take nothing by way of its Complaint;

8       3. For costs of suit incurred herein;

9       4. For such other and further relief as the Court deems just and proper.

10  AND    AS    A    COUNTER-CLAIM, DEFENDANT    PROFESSIONAL

11  COLLECTION CONSULTANTS ALLEGES:

12                          THE PARTIES

13      75. Defendant and Counter-Claimant Professional Collection Consultants

14  is a California corporation licensed to transact business in the State of

15  California.

16      76. At all times mentioned herein, Plaintiff and Counter-Claim Defendant

17  Western World Insurance Company is an insurer that is authorized to issue and

18  deliver policies of liability in the State of California.

19                          THE STORY

20      77. On or about February 17, 2014, Defendant and Counter-Claimant

21  purchased a policy of Directors, Officers, Insured Entity and Employment

22  Practices liability insurance policy, (Policy NumberPRL80000034) from the

23  Plaintiff and Counter-Claim Defendant. The policy had effective dates of

24  coverage from February 17, 2014 to February 17, 2015. A true and correcct copy

25  of the application is attached to the Complaint herein filed by Plaintiff and

26  Counter-Claim Defendant. Said insurance policy was actually delivered by

27  Plaintiff and Counter-Claim Defendant to Defendant and Counter-Claimant.

28      78. On or about July 7, 2014, Gregory Hudson demanded mediation with

- 15 -

Defendant and Counter-Claimant as a prerequisite to initiate litigation arising from Defendant and Counter-Claimant's purported retaliation and discrimination and wrongful termination of Hudson.

79. On or about July 11, 2014, Defendant and Counter-Claimant provided notice to Plaintiff and Counter-Claim Defendant of Hudson's demand for mediation. Plaintiff and Counter-Claim Defendant agreed to defend Defendant and Counter-Claimant against Hudson's claim on August 7, 2014. At the time Plaintiff and Counter-Claim Defendant agreed to defend Defendant and Counter-Claimant against Hudson's claim on August 7, 2014, Plaintiff and Counter-Claim Defendant had full and complete knowledge of all of the details alleged in Plaintiff's and Counter-Claim Defendant's Complaint.

80. On or about January 14, 2015. Bevlin Pole and Lisa McCann also demanded mediation with Defendant and Counter-Claimant as a prerequisite to initiating litigation arising from Defendant and Counter-Claimant's purported retaliation and discrimination against and wrongful termination of Pole and McCann.

81. On or about January 15, 2015, Defendant and Counter-Claimant provided notice to Plaintiff and Counter-Claim Defendant of the demand for mediation by Pole and McCann on January 15, 2015. Plaintiff and Counter-Claim Defendant agreed to defend Defendant and Counter-Claimant against the Pole and McCann claims on January 28, 2015. At the time Plaintiff and Counter-Claim Defendant agreed to defend Defendant and Counter-Claimant against the claims of Pole and McCann, Plaintiff and Counter-Claim Defendant had full and complete knowledge of all of the details alleged in Plaintiff's and Counter-Claim Defendant's Complaint.

82. Defendant and Counter-Claimant is informed and believe and thereon allege that Plaintiff and Counter-Claim Defendant failed to conduct a prompt, full, and complete investigation of the facts and circumstances giving rise to the

- 16 -

claims asserted by Hudson, Pole, and McCann. Had Plaintiff and Counter-Claim Defendant conducted a prompt, full, and complete investigation of the facts and circumstances giving rise to the claims asserted by Hudson, Pole, and McCann, Plaintiff and Counter-Claim Defendant would have discovered that:

(A) The termination giving rise to the claims of Hudson, Pole, and McCann have nothing to do with the search warrant served by the F.B.I, in August, 2013 or the investigation by the Federal Government in connection therewith and are based on completely unrelated matters. Plaintiff and Cross-Claim Defendant would have discovered that Hudson was terminated for intentionally made an unauthorized withdrawal of funds from the trust account of an attorney for a debtor and then attempted to conceal the withdrawal from management of Defendant and Counter-Claimant; Pole was terminated for twice attempting to mail a batch of 25 to 100 illegal collection that she had been told not to mail because they were illegal and then causing a confrontation with multiple supervisors when she was counseled for this misconduct; and McCann, who held the key position of accountant and human resources director in a small company,

went out on disability leave and was terminated after she had exhausted her leave by several months and, in addition thereto, was unable to provide a date on which she would return to work.

(B) That while Hudson reported in 2007 what he believed to be illegal conduct to the California Employment Development Department, no such illegal conduct was, or ever had occurred and were also not known to Defendant and Counter-Claim Defendanta when it applied for the insurance policy at issue herein;

(C) That while Hudson stated to other personnel of Defendant and Cross-Claimant that Defendant and Cross-Claimant was illegally obtaining and making use of private financial information of debtors and that Defendant and

- 17 -

GAREN DECLARATION - EXHIBIT B
17

Cross-Claimant would be forced to close, those reports were not true and were also not known to Defendant and Counter-Claim Defendanta when it applied for the insurance policy at issue herein;

(D) That while in August, 2013, the F.B.I. did conduct a search of the offices of Defendant and Counter-Claimant, seize evidentiary material, and conduct interviews with certain employees, including Hudson, these events had nothing to do with the termination of Hudson, Pole, or McCann as described in more detail in Paragraph 81(A) hereinabove.

(E) That while on September 11, 2013, the attorney for the President of Defendant and Counter-Claimant was advised by the Assistant United States Attorney that his client (the President) was the target of a criminal investigation, the investigation was not for alleged illegal debt collection practices. In addition, based on the information provided to the Assistant United States Attorney by the counsel for the President of Defendant and Counter-Claimant, no charges have been filed because the Assistant United States Attorney realized that the government was unable to prove that either Defendant and Counter-Claimant or any of its employees had violated any criminal laws.

(F) That on or about November 26, 2013, Hudson was served with a Federal Grand Jury Subpoena to testify and produce documents concerning allegations that Defendant and Counter-Claimant had illegally obtained financial and employment information about debtors from EDD and banks. While this is true, these events had nothing to do with the termination of Hudson, Pole, or McCann as described in more detail in Paragraph 82(A) hereinabove. Furthermore, Hudson himself was the person who obtained financial and employment information from the Bank of America and G.M.A.C., but his obtaining of such information was not believed to be illegal by either Defendant and Counter-Claimant or Hudson when he obtained such information;

GAREN DECLARATION - EXHIBIT B

18

(G) That on or about December 10, 2013, Hudson was interviewed by an attorney from the United States Attorneys Office and produced documents. While this is true, these events had nothing to do with the termination of Hudson, Pole, or McCann as described in more detail in Paragraph 82(A) hereinabove.

83. Subsequently, Plaintiff and Counter-Claim Defendant denied the tender of defense and initiated this action to rescind the policy.

84. Defendant and Counter-Claimant is informed and believe and therein allege that Plaintiff and Counter-Claim Defendant failed and refused to:

(A) Conduct a prompt, full and complete investigation of the claims in addition to those matters that were alleged in the pleadings filed by Hudson, Pole, and McCann;

(B) Defend their insureds from the claims asserted by Hudson, Pole, and McCann;

(C) Indemnify their insureds from the claims asserted by Hudson, Pole, and McCann;

(D) Conduct any investigation after they rejected the tender of defenses and Defendants and Counter-Claimants advised Plaintiff and Counter-Claim Defendants that they had failed to conduct a proper investigation into the circumstances surrounding the claims asserted by Hudson, Pole, and McCann;

(E) Advise Defendants and Counter-Claimants in a timely matter regarding the status of the claim and the need to obtain independent legal representation;

85. Thereafter, Plaintiff and Counter-Claim Defendant provided Defendant and Counter-Claimant with counsel. However, since the policy had a $50,000 retainage for claim and defense costs, Defendant and Counter-Claimant was paying the defense counsel selected by Plaintiff and Counter-Claim Defendant. Had Plaintiff and Counter-Claim Defendant immediately

- 19 -

notified Defendant and Counter-Claimant that it was denying coverage, Defendant and Counter-Claimant would have elected to defend all of these claims in house with its in house law firm.

86. Plaintiff and Counter-Claim Defendant waited until January 13, 2015 to advise Defendant and Counter-Claimant that it had changed its mind and was denying coverage of the Hudson claim. Plaintiff and Counter-Claim Defendant advised Defendant and Counter-Claimant of its decision on the day of the mediation with Hudson, some seven (7) months *after* Plaintiff and Counter-Claim Defendant had full knowledge of all of the facts surrounding the Hudson claim.

87. The reason Plaintiff and Counter-Claim Defendant waited eight months until the eve of mediation to advise Defendant and Counter-Claimant that it had changed its mind and was denying coverage of the Hudson claim was to pressure Defendant and Counter-Claimant and Hudson into reaching a settlement. Plaintiff and Counter-Claim Defendant insisted that Hudson and his attorney be notified of the denial of coverage to gain an advantage in negotiating a settlement, but Defendant and Counter-Claimant refused to allow Plaintiff and Counter-Claim Defendant to make this disclosure. In retaliation, Plaintiff and Counter-Claim Defendant was only willing to offer $50,000.00 to settle the Hudson matter, which was not a reasonable offer with any likelihood of being accepted by Hudson. It would have been better had Plaintiff and Counter-Claim Defendant made no settlement offer at all instead of making one that was insulting and unreasonable.

88. As a proximate result of the delay of Plaintiff and Counter-Claim Defendant in denying coverage, the defense of the Hudson claim has been hopelessly compromised. Defendant and Counter-Claimant has been forced to pay almost $50,000.00 in fees to defense counsel selected by Plaintiff and Counter-Claim Defendant, an expense Defendant and Counter-Claimant would

GAREN DECLARATION - EXHIBIT B
20

not have incurred had Plaintiff and Counter-Claim Defendant timely notified Defendant and Counter-Claimant that it was denying the Hudson claim. In addition, Hudson would not have been notified that Defendant and Counter-Claimant had insurance coverage by the failure of Defendant and Counter-Claimant to defend his claim with in house counsel. Finally, Hudson would not have been justifiably insulted and further enraged by the mediation proceedings and the presentation of a ridiculous offer by Plaintiff and Counter-Claim Defendant.

89. Defendant and Counter-Claimant has performed all of their obligations under the policies identified herein.

## FIRST CAUSE OF ACTION FOR ESTOPPEL TO RESCIND POLICY

90. Defendant and Counter-Claimant incorporates each and every admission, denial, and affirmative allegation in Paragraphs 75 - 89, hereinabove by reference.

91. Plaintiff and Counter-Claim Defendants have mishandled of the claims of Hudson, Pole, and McCann as described hereinabove. As such, Plaintiff and Counter-Claim Defendants are estoppped to deny coverage for the claims of Hudson, Pole, or McCann.

## SECOND CAUSE OF ACTION FOR UNCLEAN HANDS

92. Defendant and Counter-Claimant incorporates each and every admission, denial, and affirmative allegation in Paragraphs 75 - 89, hereinabove by reference.

93. Plaintiff and Counter-Claim Defendants have mishandled of the claims of Hudson, Pole, and McCann as described hereinabove. As such, Plaintiff and Counter-Claim Defendants come before this Court with unclean hands and are therefore inelligible for the equitable remedy of recission Plaintiff and Counter-Claim Defendants are alleging.

GAREN DECLARATION - EXHIBIT B
21

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

91. Defendant and Counter-Claimant incorporates each and every admission, denial, and affirmative allegation in Paragraphs 75 - 89, hereinabove by reference.

92. Defendant and Counter-Claimant is informed and believes, and thereon alleges, that Plaintiff and Counter-Claim Defendant breached their obligation under the policy referenced hereinabove in the following manner:

A. By delaying to make a timely determination under all potentially applicable coverages as to whether or not a defense was owed by Plaintiff and Counter-Claim Defendant;

B. By failing to conduct a full and complete investigation into the facts and circumstances of the claims asserted against Defendant and Counter-Claimant as alleged hereinable;

C. By failing and refusing to defend Defendant and Counter-Claimants from the claims asserted by Hudson, Pole, and McCann;

D. By failing and refusing to indemnify the Defendants and Counter-Claimants from the claims asserted by Hudson, Pole, and Mccann;

E. By doing each of the acts or omissions alleged hereinabove in THE STORY.

93. Defendants and Counter-Complainants are informed and believe that Plaintiff and Counter-Claim Defendant failed and refused to conduct an investigation into the facts and circumstances of the claims asserted against Defendant and Counter-Claimant by Hudson, Pole, and McCann as alleged more particularly hereinabove in THE STORY. As a result of the breaches of contract by Plaintiff and Counter-Claim Defendant to conduct any investigation in the facts and circumstances of the claims asserted against Defendants and Counter-Claimants, Defendants and Counter-Claimants have been damaged, injured, and prejudiced. Defendants and Counter-Claimants have been required to retain

GAREN DECLARATION - EXHIBIT B
22

counsel and defend themselves against the claims asserted against them or, in the alternative, use in house counsel to do so.

94. As a result of the failure of Plaintiff and Counter-Claim Defendants to conduct an investigation, the Plaintiff and Counter-Claim defendants are estopped from relying upon any subsequently discovered information to support rejection of the tender of defense by Defendants and Counter-Claimants.

95. As a further result of the failure of Plaintiff and Counter-Claim Defendants to conduct an investigation, Plaintiff and Counter-Claim Defendants have waived any obligation on the part of Defendant and Counter-Claimant to cooperate with Plaintiff and Counter-Claim Defendants in the defense of the Hudson, Pole, and McCann claims.

96. As a direct and proximate result of the breach by Plaintiff and Counter-Claim defendants of their obligations under the insurance policy which is the subject of this action, Defendants and Counter-Claimants have been damaged as follows:

A. Defendants and Counter-Claimants have been required to retain attorneys to defend themselves or to use house counsel to defendant themselves from the claims asserted by Hudson, Pole, and McCann;

B. Defendants and Counter-Claimants may be required to pay for a settlement or a judgment obtained by Hudson, Pole, or McCann;

C. General damages in an amount to be proved at trial.

D. Defendants and Counter-Claimants are informed and believe and thereon allege that the denial of benefits, as alleged in this Counter-Claim, was vexatious and without reasonable cause, as alleged herein. Pursuant to *California Insurance Code Section* 1619, Defendants and Counter-Claimants are entitled to reasonable attorney fees incurred in prosecuting this action in an amount to be proved at trial.

**THIRD CAUSE OF ACTION FOR BREACH OF**

- 23 -

## COVENANT OF GOOD FAITH AND FAIR DEALING

97. Defendant and Counter-Claimant incorporates each and every admission, denial, and affirmative allegation in Paragraphs 75 - 89, hereinabove by reference.

98. Defendant and Counter-Claimant is informed and believes and thereon alleges that Plaintiff and Counter-Claim Defendant breached the implied covenant of good faith and fair dealing arising out of the insurance policy which is the subject of this action in the following respects:

A. Plaintiff and Counter-Claim Defendant unreasonably and without proper cause failed and refused to conduct an investigation into the facts which gave rise to the claims asserted by Hudson, Pole, and McCann;

B, Plaintiff and Counter-Claim Defendant unreasonably and narrowly interpreted the insurance policy which is the subject of this action and the application for coverage in connection therewith in a manner calculated to deny benefits to Defendants and Counter-Claimants under the policy, including relying on an unpublished appellate court opinion that was based on completely different facts;

C. Plaintiff and Counter-Claim Defendant unreasonably refused to pay for the defense of the claims of Hudson, Pole, and McCann;

D. Plaintiff and Counter-Claim Defendant unreasonably refused to pay for settlement of the claims of Hudson, Pole, and McCann;

99. The denial of the benefits claimed by Defendants and Counter-Claimants under the policy which is the subject of this action was done by Plaintiff and Counter-Claim Defendants without reasonable cause. Plaintiff and Counter-Claim Dfendants knew that a duty to defend was owed to Defendants and Counter-Claimants, yet refused to provide such a defense. As a direct and proximate result of the unreasonable conduct of Plaintiff and Counter-Claim Defendants, Defendants and Counter-Claimants have been forced to retain

attorneys or use house counsel to obtain benefits due them under the policy. Defendants and Counter-Claimants may also be forced to enter into a settlement of the Hudson, Pole, or McCann claims of which Defendants and Counter-Claimants vigorously deny any wrongdoing and/or disputed any liability.

100. As a direct result of the tortious conduct of the Plaintiff and Counter-Claim Defendants, Defendant and Counter-Claimant was damaged and injured. Defendants and Counter-Claimants are therefore entitled to recover:

A. Reasonable attorney fees incurred by Defendants and Counter-Claimants in obtaining policy benefits in an amount to be proved at time of trial;

B. An award of general damages in an amount to be proved at time of trial;

C. Any settlement payments made to either Hudson, Pole, or McCann, including the attorney fees incurred in defending each of these claims;

101. Defendant and Counter-Claimant is informed and believes, and thereon alleges, that Plaintiff and Counter-Claim Defendant has intentionally engaged in a course of conduct which was intended to oppress the Defendant and Counter-Claimant and dissuade Defendants and Counter-Claimants, and their counsel, from seeking benefits due to Defendant and Counter-Claimant under the policy by threatening and initiating retaliatory litigation and by including material in its Complaint regarding the F.B.I search that Plaintiff and Counter-Claim Defendant know or should have known was false and thereby necessitate the waiver of Fifth Amendment rights by officers of Defendant and Counter-Claimant to enable Defendant and Cross-Complainant to defend this action and prosecute this Counter-Claim.

102. The refusal of the Plaintiff and Counter-Claim Defendants to carry out their obligations under the insurance policy to investigate, defend, indemnify, and to properly and timely communicate their coverage position to their insureds, and the acts of their agents were all done under a conscious

- 25 -

disregard of the rights of the Defendants and Counter-Claimants to receive the benefits due them under the policy. These acts were done with the knowledge and approval and ratification of the officers of the Plaintiff and Counter-Claim Defendant. These acts continued even after the Defendants and Counter-Claimants protested to the Plaintiff and Counter-Claim Defendant and Defendant and Counter-Claimant was powerless to obtain from Plaintiff and Counter-Claim Defendant compliance with their obligations. Defendants and Counter-Claimants are therefore entitled to recover punitive damages.

W H E R E F O R E, Defendant and Counter-Claimant prays for judgment, according to proof, as follows:

1. For damages for breach of contract, including costs of defense incurred by Defendant and Counter-Claimant in their defense of the claims of Hudson, Pole, and McCann and the amounts, if any, paid in settlement of those claims;

2. For general and compensatory damages including, but not limited to, injuries resulting from humiliation, mental anguish, and emotional distress;

3. For attorney fees incurred in bringing this action pursuant to *California Insurance Code Section* 1619;

4. For attorney fees incurred in obtaining policy benefits, as propvided by law; and

5. For prejudgment interest in an amount to be proved at time of trial;

6. For punitive damages in an amount sufficient to deter and make an example of Plaintiff and Counter-Claim Defendant.

7. For such other and further relief as the Court may deem just and proper.

Dated: April 6, 2015

- 26 -

**LAW OFFICES OF CLARK GAREN**

**By**

/s/CLARK GAREN
CLARK GAREN,
ATTORNEY FOR DEFENDANT AND
CROSS-COMPLAINANT
PROFESSIONAL COLLECTION
CONSULTANTS

## CERTIFICATE OF SERVICE

I certify that on February 19, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California, Western Division by using the CM/ECF system.

I further certify that all of the participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Clark Garen
CLARK GAREN

- 27 -