**EXHIBIT "A"**

1  LAW OFFICES OF CLARK GAREN
   CLARK GAREN (Cal. Bar No. 50564)
2  RACHEL ZWERNEMANN (Cal. Bar No. 286515)
   6700 South Centinela, Third Floor
3  Culver City, CA  90230
   Telephone: (310) 391-0800
4  Facsimile: (310) 636-4771
   Email: clarkgaren@msn.com
5  Email: rzwernemann@pcc-crs.com

6  LAW OFFICE OF DAVID W. WIECHERT
   DAVID WIECHERT (Cal. Bar No. 94607)
7  JESSICA C. MUNK (Cal. Bar No. 238832)
   115 Avenida Miramar
8  San Clemente, California  92672
   Telephone:(949) 361-2822
9  Facsimile: (949) 496-6753
   Email: dwiechert@aol.com
10 Email: jessica@davidwiechertlaw.com

11 Attorneys for Defendant,
   Professional Collection Consultants
12

13            IN THE UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16

17 WESTERN WORLD INSURANCE            Case No. 2:15-cv-02342 MWF (VBKx)
   COMPANY,
18                                    **DEFENDANT PROFESSIONAL**
19            Plaintiff,              **COLLECTION CONSULTANTS'**
                                      **STATEMENT OF GENUINE**
20 v.                                 **DISPUTES OF MATERIAL FACT**

21 PROFESSIONAL COLLECTION            Date:  March 21, 2016
22 CONSULTANTS,                       Time: 10:00 a.m.
                                      Ctrm: 1600
23            Defendant.              Judge: Hon. Michael W. Fitzgerald

24                                    Trial Date: November 15, 2016
                                      Complaint Filed: March 30, 2015
25                                    Discovery Cut-Off: July 8, 2016

26

27      As required under L.R. 56-2, Defendant Professional Collections Consultants

28 ("PCC") hereby submits this Statement of Genuine Disputes of Material Fact setting

                                   -1-
        DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
        GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

forth issues of material fact necessary to be litigated. Facts 1- 41 and Legal

Conclusions 1-7 below correspond to the facts and supporting evidence filed by

Plaintiff Western World Insurance Company ("Western World"). These facts are

followed by additional material facts and supporting evidence also showing genuine

issues

| Western World's Alleged Uncontroverted Facts | PCC's Response and Evidentiary Support |
|---|---|
| 1. Western World issued a "Directors, Officers, Insured Entity and Employment Practices" liability insurance policy to Professional Collection Consultants for the policy period February 17, 2014 to February 17, 2015, under policy number BRL8000034. | Not Disputed.<br><br>However PPC notes that Western World cites to Rentko Decl., Ex. A for this, when it is really Rentko Decl., Ex. B. |
| 2. The Western World policy provides, "in consideration of the payment of the premium in reliance upon the statements made and information furnished to us as part of the 'application', and subject to all the provisions of this policy, we agree to provide insurance described in this Coverage Form and its applicable endorsements." | Not Disputed. |
| 3. Under Coverage A -Directors and Officers Liability, the Western World policy insures "loss" the insured becomes legally obligated to pay because of a "claim first made against the insured during the policy period for "wrongful acts" arising out of an "individual insured's" performance of his or her duties on behalf of the "organization," or attributed to the "organization." | Not Disputed. |
| 4. The Western World policy defines "individual insureds" to mean "any person(s) who were, now are, or will be | Not Disputed. |

-2-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| directors, trustees, officers, "employees", or committee members of the "organization", including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy." | |
| 5.  The Western World policy defines claim to mean, in pertinent part: | Not Disputed. |
| a.      A written demand for monetary relief received by an insured seeking to hold the insured responsible for a "wrongful act", "wrongful employment act", or "third party wrongful act" including, but not limited to, the service of suit or the institution of arbitration or mediation proceedings against the insured; | |
| d.      A civil proceeding against any insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading; | |
| e.      A criminal proceeding against any insured, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges; | |
| f.      A civil, administrative or regulatory proceeding against any insured commenced by the filing of a notice of charges or similar document; | |
| g.      A civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by any "individual insured" of a written notice, | |

-3-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| investigative order, or subpoena from the investigating authority identifying such "individual insured" as an individual, against whom a proceeding described in paragraph c., d., or e. immediately above, may be commenced. | |
| 6.  The Western World policy contains a "prior knowledge" exclusion under which Western World policy "does not apply to any 'loss' or 'defense costs' in connection with any 'claim' made against an insured, arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving:<br><br>any actual or alleged act, error or omission, breach of duty or circumstance that an insured:<br><br>a.    Had knowledge of prior to the effective date of the policy; and<br><br>b.    Had a reasonable belief the actual or alleged act, error or omission, breach of duty or circumstance could result in a 'claim'." | Not Disputed. |
| 7. The Western World policy contains a "Reliance Upon Another's Application Endorsement," form DEL88 (10/11), which amends Section VI – Conditions, Subsection B to add the following:<br><br>8.    Representations:<br><br>Any and all references to an "application" in this policy will include the application or proposal described below.  We have relied upon all statements, | Not Disputed. |

-4-

RJN - EXHIBIT A
Page 000006

| | |
|---|---|
| representations and other information and documents contained in or submitted with the other application or proposal <u>as if they were submitted directly to us using our own "application" form.</u><br><br>Type of Application/Proposal EPack Extra<br>Carrier: CNA<br>Date Signed: 2/7/2014 | |
| 8.  PCC applied to Western World for a directors and officers liability insurance policy by submitting a CNA-branded application form entitled EPack Extra Renewal Application accepted by Western World, signed by PCC President Todd Shields and submitted to Western World on February 7, 2014. | Not Disputed.<br><br>However PPC notes that Western World cites to Rentko Decl., Ex. B for this, when it is really Rentko Decl., Ex. A. |
| 9.  On page 3 of the Application, PCC responded "No" to the following question: "None of the individuals to be insured under any Coverage Part (the 'Insured Persons') have a basis to believe that any wrongful act, event, matter, fact, circumstance, situation, or transaction, might reasonably be expected to result in or be the basis of a future claim?" | PPC does not dispute that it responded "No" to the question. However PCC disputes that the question was applicable. It only applied if the applicant was seeking increased policy limits from its prior year coverage, which PCC was not. Thus PCC was not required to answer the question, which was nonmaterial, and only did so in error. Garen Decl. ¶ 4; See arguments set forth in PCC's Opposition, filed concurrently herewith. |
| 10.  PCC is a debt collection agency. | Not Disputed. |
| 11.  The Federal Bureau of Investigation ("FBI") conducted a search of the PCC offices, seized evidentiary material, and conducted interviews with PCC employees, including Hudson, pursuant to a Search and Seizure Warrant issued August 23, 2013. | Disputed.<br><br>The FBI served a search warrant but did not conduct any interviews with PCC employees, including Hudson, on August 23, 2014. Garen Decl. ¶ 9. They later served separate grand jury |

-5-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | | |
|---|---|---|
| 1 2 | | subpoenas on various PCC employees, which were subsequently cancelled. |
| 3 4 5 | 12.  The FBI Search and Seizure Warrant issued August 23, 2013 sought voluminous documentary records of PCC and its employees, including Mike Flowers. | Not Disputed. |
| 6 7 8 | 13.  On or about September 11, 2013, PCC President Todd Shields' counsel met with an Assistant United States Attorney who advised that Shields was the target of a federal criminal investigation. | Not Disputed.<br><br>PCC notes that this was only communicated orally, not in writing. Garen Decl. ¶ 17. |
| 9 10 11 12 13 | 14.  On September 25, 2013, PCC was served with a federal grand jury subpoena to produce documents concerning allegations that PCC illegally obtained financial and employment information about debtors. | Disputed.<br><br>The subpoena does not state allegations. It seeks PCC's training and policy records. |
| 14 15 16 17 18 19 20 21 22 23 24 25 26 | 15.  The September 25, 2013 federal grand jury subpoena identified the focus of the investigation as: the US Department of labor-Office of Inspector General's hotline received an allegation from a confidential source who stated that a government official has been illegally selling sensitive wage information to a debt collector.  The source reported that the Arizona Department of Economic Security employee, Les Nelson (Nelson), provides the sensitive wage information to Michael S. Flowers (Flowers) for a cash kickback. Flowers is an employee for a collection agency called Professional Collection Consultants (PCC).  This subpoena request is being submitted together all of PCC's training and policy records. | Not Disputed. |
| 27 28 | 16.  The September 25, 2013 federal grand jury subpoena also sought PCC's records that included "any education | Not Disputed. |

-6-

| | |
|---|---|
| provided to employees as it relates to the Fair Debt Collection Act" and "any and all operational manuals as it relates to the day-to-day operation of Professional Collection Consultants, Inc." | |
| 17.  PCC was served with another federal grand jury subpoena on October 15, 2013, which sought the production of additional documents concerning Michael Flowers. | Not Disputed. |
| 18.  PCC was served with another federal grand jury subpoena on November 26, 2013. | Not Disputed. |
| 19.  On December 10, 2013, an attorney from the Department of Justice interviewed PCC employee Gregory Hudson, and Hudson produced documents. | Not Disputed. |
| 20.  PCC terminated Hudson on March 19, 2014. | Not Disputed. |
| 21.  In 2007, Hudson reported what he believed to be illegal conduct by PCC to the California Employment Development Department ("EDD"). | PPC does not dispute that Hudson did so. However PCC did not discover Hudson's reporting until PCC attended a mediation session regarding Hudson's claim on January 13, 2015. Garen Decl. ¶ 6. |
| 22.  As of March 2013, Hudson claimed he stated to other PCC personnel that PCC, including fellow employee Mike Flowers, illegally obtained and made use of private financial information of debtors and believed that PCC would be forced to close. | PCC does not dispute that Hudson made such claims. However, PCC did not learn of Hudson's claims to other PCC employees until the search warrant was issued in August, 2013. Garen Decl. ¶ 44. |
| 23.  PCC knew prior to February 7, 2014 that Hudson stated to other PCC personnel that PCC illegally obtained and made use of private financial information of debtors and believed that PCC would be forced to close. | Not Disputed. |
| 24.  On July 7, 2014, Hudson demanded mediation with PCC as a prerequisite to initiating litigation arising from PCC's | Not Disputed. |

-7-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| purported retaliation and discrimination against and wrongful termination of Hudson. | |
| 25.  Western World agreed to defend PCC against Hudson's claim under a reservation of rights dated August 7, 2014 and a supplemental reservation of rights letter dated January 9, 2015. | PCC does not dispute that WW has agreed to defend PCC under a reservation of rights. However PCC disputes that Western World has provided competent counsel for PCC to defend the claims. Garen Decl. ¶ 30-39. |
| 26.  Hudson filed a lawsuit against PCC on January 29, 2015, Los Angeles County Superior Court Case No. BC570780, alleging causes of action for Wrongful Termination in Violation of Public Policy, Violation of Labor Code §1102.5, Disability Discrimination in Violation of Government Code §12940 et seq., and Defamation. | Not Disputed. |
| 27.  PCC terminated two additional employees, Beblen Pole and Lisa McCann, who also demanded mediation with PCC as a prerequisite to initiating litigation arising from PCC's purported retaliation and discrimination against and wrongful termination of them. | Not Disputed. |
| 28.  The demand for mediation on behalf of both Beblen Pole and Lisa McCann was made on January 14, 2014 and was tendered to Western World on January 19, 2015. | Not Disputed. |
| 29.  Western World agreed to defend PCC against both Pole's and McCann's claims under a reservation of rights issued separately dated January 28, 2015. | Not Disputed. |
| 30.  Prior to her termination, Pole complained of dishonesty by other PCC employees, citing the FBI raid as evidence of PCC's lack of ethical standards. | Disputed.<br><br>PCC has no corroborating evidence that Pole ever complained of dishonesty by other PCC employees or cited the FBI raid as evidence of PCC's lack of ethical standards. Garen Decl. ¶ 25. |

-8-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| 31. Prior to her termination, McCann informed PCC that, like Hudson, she gave evidence in response to a federal grand jury subpoena. | PCC does not dispute that McCann gave evidence in response to a federal grand jury subpoena. However McCann was on disability leave when she was terminated and PCC did not learn that she provided information to the government until McCann appeared at Hudson's unemployment hearing in May 2014 and volunteered the information to PCC. Garen Decl. ¶ 26, 27.<br><br>McCann was terminated in November, 2014 after exhausting her disability leave and failing to provide a return date to work. She held a key accounting position and with year end and taxes approaching, PCC could no longer hold her position open waiting for her medical condition to improve. PCC voluntarily paid McCann's health insurance through her termination date, even though such was not required. Garen Decl. ¶ 26. |
| 32. Pole filed a lawsuit against PCC on February 11, 2016, Los Angeles County Superior Court Case No. BC610180, alleging causes of action for Wrongful Termination in Violation of Public Policy, Violation of Labor Code §1102.5, Race Discrimination and Harassment in Violation of Government Code §12900 et seq., Retaliation in Violation of Government Code §12940(h), Defamation and Intentional Infliction of Emotional Distress. | Not Disputed.<br><br>However PCC has not been served with this lawsuit.<br><br>PPC notes that Western World cites to Request for Judicial Notice, Ex. C for this, when it is really Request for Judicial Notice, Ex. B. |
| 33. In the Pole lawsuit, Pole alleges she was concerned about PCC's illegal activities, including the acquisition and distribution of consumers' personal information not readily available to the | PCC does not dispute that a small portion of Pole's dispute mentions Pole's alleged concern. However the majority of the complaint deals with allegations that Pole was discriminated |

-9-

DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| public, including Social Security numbers, to private parties to collect debts. | against because of her race. WW Request for Judicial Notice, Ex. B. |
| 34.  In the Pole lawsuit, Pole alleges that following the August 2013 FBI raid, she refused to cooperate with PCC's efforts to suppress employees' criticism of PCC's illegal activities. | PCC does not dispute that Pole's complaint alleges such. However PCC disputes the truth of her allegations. |
| 35.  In the Pole lawsuit, Pole alleges she complained to her supervisor and human resources; PCC thereupon pressured her to quit. | PCC does not dispute that Pole's complaint alleges such. However PCC disputes the truth of her allegations. Garen Decl. ¶ 25. |
| 36.  In the Pole lawsuit, Pole alleges PCC terminated her because of her whistle blowing activities. | PCC does not dispute that Pole's complaint alleges such. However PCC disputes the truth of her allegations. Garen Decl. ¶ 25. |
| 37.  PCC has agreed to withdraw all claims against Western World pertaining to Pole and McCann. | Disputed.

When Mr. Garen's deposition was taken, he was under the belief that the statute of limitations had expired for Pole and for McCann. Thus Mr. Garen waived these claims based on the assumption that there would be no claims from these claimants. The waiver was conditional, and the condition has not been satisfied. Garen Decl. ¶ 45. |
| 38.  PCC is regularly sued for claims that PCC violates fair debt collections practices statutes. | Disputed.

PCC is sued once or twice per year, which does not constitute "regularly," and is not unusual for a debt collection company. Garen Decl. ¶ 46. |
| 39.  PCC had not been the subject of a federal criminal investigation prior to the 2013 FBI raid and attendant issuance of federal grand jury subpoenas. | Not Disputed. |
| 40.  Western World would not have issued Western World policy no. BRL8000034 to PCC if it had known PCC was the subject of a federal criminal investigation or | Disputed.

First, Western World's witness stating this "fact", Mr. Rentko, did not identify |

-10-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| that PCC's employees were engaging in whistleblowing conduct concerning PCC's debt collection practices. | himself as a percipient witness, or as the actual underwriter on the policy, and provided no foundation for the "fact" recited in this paragraph.  Second, PCC has not yet examined Mr. Rentko in discovery to determine the basis for this "fact".  Third, the Application contains no question inquiring whether PCC was the subject of an investigation or whether their employees were possible whistleblowers.  Fourth, the literal reading of PCC's response on the Application to whether it believed that a claim might be forthcoming as set forth in Western World's Statement of Undisputed Facts No. 9 is that PCC did have that belief yet there was no further follow-up from Western World to find out why.  Fifth, according to the Application PCC didn't need to respond to the inquiry set forth in Western World's Statement of Undisputed Facts No. 9 because PCC was not seeking increased limits from its policy from the prior year. Garen Decl. ¶ 4; See arguments set forth in PCC's Opposition, filed concurrently herewith. |
| 41.  Western World filed and served the Complaint in the instant matter on March 30, 2015, alleging causes of action for rescission and declaratory judgment, thereby providing notice to PCC of rescission and an offer to return the premium. | Not Disputed. |
| **Western World's Alleged Conclusions of Law** | **PCC's Response** |
| 1. The Court has jurisdiction of this matter, pursuant to 28 U.S.C. § 1332. | Not Disputed. |
| 2. In failing to disclose the federal search and seizure warrant and grand jury | Disputed. |

-11-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF GENUINE DIPSUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | |
|---|---|
| subpoenas, and the whistleblower conduct of its employees Gregory Hudson, Beblen Pole and Lisa McCann, PCC made material misrepresentations on the application for insurance for Western World policy number BRL8000034. | See arguments set forth in PCC's Opposition, filed concurrently herewith as well as the response to Western World's Statement of Undisputed Facts No. 40. |
| 3. Western World would not have issued policy number BRL8000034 had PCC disclosed the federal criminal investigation and its employees' whistleblowing conduct. | Disputed.<br><br>See arguments set forth in PCC's Opposition, filed concurrently herewith as well as the response to Western World's Statement of Undisputed Facts No. 40. |
| 4. Western World is entitled to rescind policy number BRL8000034 issued to Professional Collection Consultants. | Disputed.<br><br>See arguments set forth in PCC's Opposition, filed concurrently herewith as well as the response to Western World's Statement of Undisputed Facts No. 40. |
| 5. Because Western World policy number BRL8000034 is void ab initio as a result of rescission, Western World has no duty to defend or indemnify, PCC, with respect to the Hudson Action, Pole Action or McCann Claim. | Disputed.<br><br>See arguments set forth in PCC's Opposition, filed concurrently herewith as well as the response to Western World's Statement of Undisputed Facts No. 40. |
| 6. The Western World policy's "prior knowledge" exclusion also bars coverage for the Hudson Action, Pole Action and McCann Claim because PCC knew of the facts and circumstances pertaining to those claims and the federal criminal investigation against PPC and that they could reasonably lead to a claim prior to the inception of the Western World policy. | Disputed.<br><br>PCC did not know of the Hudson Action, Pole Action, or McCann Claim in February 2014 when it filled out the Application.  PCC did not believe that the federal investigation would lead to a claim since at the time of the Application PCC believed that the investigation had run its course without charges and that there would be no possible claim to make against Western World relating to the defense of the investigation. Garen Decl. ¶ 28. Further, |

-12-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

| | see arguments set forth in PCC's Opposition, filed concurrently herewith. |
|---|---|
| 7. Because Western World policy number BRL8000034 provided a defense to PCC for the Hudson Action, Pole Action and McCann claim, and because the policy is void ab initio as a result of rescission, Western World did not breach the implied covenant of good faith and fair dealing. | Disputed.<br><br>See arguments set forth in PCC's Opposition, filed concurrently herewith as well as the response to Western World's Statement of Undisputed Facts No. 40 and Undisputed Conclusions of Law No. 6. |

Respectfully submitted this 29th day of February, 2016.

LAW OFFICE OF DAVID W. WIECHERT

_/s/ David W. Wiechert_
DAVID W. WIECHERT
JESSICA C. MUNK
Attorneys for Defendant,
Professional Collections Consultants

-13-
DEFENDANT PROFESSIONAL COLLECTION CONSULTANTS' STATEMENT OF
GENUINE DISPUTES OF MATERIAL FACT Case No. 2:15-cv-02342 MWF (VBKx)

RJN - EXHIBIT A
Page 000015

EXHIBIT "B"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**JS-6**

Case No.  **CV-15-2342-MWF (VBKx)**                    Date:  **March 24, 2016**
Title:      Western World Insurance Company -*v*- Professional Collection Consultants

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER GRANTING SUMMARY JUDGMENT [23]

Before the Court is Plaintiff's Motion for Summary Judgment as to Rescission (the "Motion"), filed on February 19, 2016.  (Docket No. 23).  Defendant submitted an Opposition to Motion on February 29, 2016, and Plaintiff's Reply followed on March 7, 2016.  (Docket Nos. 30, 31).  The Court read and considered the papers filed on the Motion, and held a hearing on **March 21, 2016**.

The Motion is **GRANTED**.  Plaintiff is entitled to summary judgment on the issue of rescission because Plaintiff has met its burden of demonstrating that no genuine disputes of fact remain as to Defendant's misrepresentation and the materiality of the misrepresentation, and that Plaintiff is entitled to judgment as a matter of law. Therefore, the Policy Agreement is rescinded based on Defendant's material misrepresentation in its application for continued insurance coverage.  Furthermore, Plaintiff has no duty to defend or indemnify Defendant on the wrongful termination claims under the rescinded Policy Agreement.

I.     **BACKGROUND**

Much of the background facts are undisputed, but the parties heavily dispute the interpretations of the governing insurance contract.

On February 7, 2014, Defendant, a debt collection company, submitted an application to Plaintiff for insurance coverage.  (Plaintiff's Statement of Uncontroverted Facts ("PSUF"), Docket No. 25 ¶ 8).  The application was signed by

---

**CIVIL MINUTES—GENERAL**                                             1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**JS-6**

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**
Title:      Western World Insurance Company -*v*- Professional Collection Consultants

Todd Shields, Defendant's President. (*Id.*).  On February 17, 2014, Plaintiff and
Defendant entered into a "Directions, Officers, Insured Entity and Employment
Practices" liability insurance policy (the "Policy Agreement"). (*Id.* ¶ 1).

Plaintiff initiated this action on March 30, 2015, seeking to rescind the Policy
Agreement on the basis that Defendant misrepresented or concealed material facts in
its application for insurance. (Docket No. 1).  Specifically, Plaintiff contends that
Defendant misrepresented or concealed the fact that Defendant has been under
investigation by the United States Department of Justice since 2013 for illegal debt
collection practices. (PSUF ¶ 11).

## A.   The Federal Criminal Investigation

In 2007, Gregory Hudson, an employee of Defendant, reported what he believed
to be illegal conduct by Defendant to the California Employment Development
Department ("EDD"). (PSUF ¶ 21).  In August 2013, the FBI searched Defendant's
offices, seized evidentiary material, and later conducted interviews with Defendant's
employees. (*Id.* ¶ 11).

In September 2013, an Assistant United States Attorney met with Shields'
counsel and informed him that Shields had become the target of a federal criminal
investigation. (*Id.* ¶ 13).  In late September, a federal grand jury subpoenaed
Defendant to produce documents concerning allegations that Defendant illegally
obtained financial and employment information about debtors. (*Id.* ¶¶ 14, 15).
Specifically, the subpoena alleged that an Arizona government employee provided
sensitive wage information in exchange for cash kickbacks to Michael Flowers,
Defendant's employee. (*Id.* ¶ 15).  Defendant was later served with two additional
federal grand jury subpoenas in the following two months to produce additional
documents concerning the investigation. (*Id.* ¶¶ 16–18).  More grand jury appearances
were set in December, cancelled, and then reset twice before finally being cancelled in
January 2014. (Declaration of Clark Garen in Opposition to Motion ("Garen Decl."),
Docket No. 30-10 Ex. A ¶ 19).  Defendant claims that the cancellation of a grand jury
appearance led Defendant to believe that the federal investigation had concluded. (*Id.*

CIVIL MINUTES—GENERAL                                    2

RJN - EXHIBIT B
Page 000017

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

JS-6

Case No.  **CV-15-2342-MWF (VBKx)**               Date:  **March 24, 2016**

Title:        Western World Insurance Company -*v*- Professional Collection Consultants

¶ 20).  However, after the parties executed the Policy Agreement in February 2014, investigations resumed with two more grand jury subpoenas issued in May 2014.  (*Id.* ¶ 21).

After the parties entered into the Policy Agreement, Defendant terminated three of its employees: Gregory Hudson, Beblen Pole, and Lisa McCann.  (PSUF ¶¶ 20, 27). All three employees either gave evidence to the investigative bodies or complained about the illegal activities they believed Defendant engaged in prior to their terminations.  (PSUF ¶¶ 22, 30, 31).  Defendant argues that these employees were terminated for cause.  (Defendant's Statement of Disputed of Fact ("DSDF"), Docket No. 30 ¶ 31).  These three employees initiated Defendant's required administrative hearings and subsequently filed complaints in state court against Defendant for wrongful termination, alleging in part that they had been retaliated against for their whistleblowing activities.  (*Id.* ¶¶ 24, 28).

Plaintiff agreed to and continues to defend Defendant, under a reservation of rights, against all three terminated employees.  (PSUF ¶¶ 25, 29).  However, Defendant has countersued in this action, alleging that Plaintiff has failed to defend and indemnify Defendant under the Policy Agreement in good faith.  (Docket No. 9).

**B.      The Insurance Application and Policy Agreement that Issued**

Defendant applied to Plaintiff "for a directors and officers liability insurance policy by submitting a CNA-branded application form entitled EPack Extra Renewal Application."  (PSUF ¶ 8).  CNA was Defendant's existing insurance company at the time.  The central provision at dispute in the insurance application asks whether:

> None of the individuals to be insured under any Coverage Part (the "Insured Person") have a ***basis to believe*** that any wrongful act, event, matter, fact, circumstance, situation, or transaction, might ***reasonably*** be expected to result in or be the basis of a ***future claim***?

---

**CIVIL MINUTES—GENERAL**                                                      3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**JS-6**

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**
Title:       Western World Insurance Company -v- Professional Collection Consultants

(*Id.* ¶ 9 (emphasis added)).

Defendant answered this question by checking the "No" box. (*Id.*). However, Defendant points out that this question only applied if the applicant was seeking increased policy limits from its prior year coverage, which Defendant was not. (DSDF ¶ 9).

The Policy Agreement that issued insures against loss incurred due to a "claim first made against the insured during the policy period for "wrongful acts" arising out of an "individual insured's" performance of his or her duties on behalf of the "organization" or attributed to the "organization." (PSUF ¶ 3). "Individual insureds" is defined as individuals "who were, now are, or will be directors, trustees, officers, employees, or committee members of the organization . . . ." (*Id.* ¶ 4 (internal quotations omitted)).

Furthermore, the Policy Agreement contains a "Reliance Upon Another's Application Endorsement," which adds:  "We have relied on all statements, representations and other information and submitted with the other application or proposal as if they were submitted directly to us using our own 'application' form." (PSUF ¶ 7).  Specifically, this section references the CNA application that Defendant submitted. (*Id.* ("Type of Application/Proposal: EPack Extra; Carrier: CNA")). Plaintiff contends that, had Defendant disclosed the federal investigation, it would not have issued the Policy. (*Id.* ¶ 40).

## II.    **REQUEST FOR JUDICIAL NOTICE**

Plaintiff requests that the Court take judicial notice of complaints filed in the wrongful termination cases brought by Defendant's former employees. (Requests for Judicial Notice, Docket Nos. 26, 34).  In addition, Plaintiff requests that the Court take judicial notice of the pleadings on file in this action. (*Id.*).

The Court may take judicial notice of court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

JS-6

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**
Title:          Western World Insurance Company -v- Professional Collection Consultants

2006).  Judicial notice is also proper of complaints, court orders, judgments, and other documents filed in other litigation.  *Kourtis v. Cameron*, 419 F.3d 989, 995 n.3 (9th Cir. 2005).  Accordingly, the Court **GRANTS** Plaintiff's request.

## III.   **DISCUSSION**

In deciding motions under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted).  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.  *See Houghton*, 965 F.2d at 1537.  Once the moving party comes forward with sufficient evidence, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).  "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249–50.

Plaintiff argues that that it is entitled to summary judgment on the issue of rescission.  (Motion at 8–17).  Alternatively, Plaintiff argues that its duty to defend and indemnify Defendant is excused under the "prior knowledge" exclusion under the Policy Agreement.  (*Id.* at 18).

---

**CIVIL MINUTES—GENERAL**                                                        5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

JS-6

Case No.  CV-15-2342-MWF (VBKx)                    Date:  March 24, 2016
Title:      Western World Insurance Company -v- Professional Collection Consultants

## A.   Rescission

An insurer has the right to rescind a policy when the insured has misrepresented
or concealed material information in its application to obtain insurance. *Nieto v. Blue
Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 75, 103 Cal. Rptr. 3d 906
(2010) (affirming rescission based on material misrepresentations and omissions in
insurance application regarding insured's medical condition and treatment).

### 1.   Misrepresentation

Defendant argues that it had no basis to believe the federal criminal investigation
would result in a claim.  (Opposition at 16).  But the threshold is not so high when the
question posed was whether "the individuals to be insured . . . have a basis to believe
that any wrongful act, event, matter, fact, circumstance, situation, or transaction, might
reasonably be expected to result in or be the basis of a future claim?"  (PSUF ¶ 9).  The
use of words such as "might," "reasonably," "expected," and "claim" do not require
that Defendant be certain of liability before it must answer the question in the
affirmative.  Instead, the thrust of the question is whether Defendant was aware of any
facts that might reasonably give rise to a future claim.

At the time Defendant completed the insurance application in February 2014, the
FBI had conducted its search and seizure of Defendant's business records, Shields'
counsel had been advised that Shields was the target of a federal criminal investigation,
and multiple federal grand jury subpoenas had issued regarding Defendant's debt
collection practices.  (PSUF ¶¶ 12–18).

Defendant argues that, by the time Defendant submitted the application to
Plaintiff in February 2014, its General Counsel had concluded that the FBI had decided
to close its investigation.  (Garen Decl. ¶ 20).  Defendant's General Counsel submitted
a declaration attesting to his belief that the investigation had ended because (1) two of
the subpoenaed grand jury appearances had been continued several times and
eventually cancelled in January 2014; and (2) the indictment, "which was supposedly
imminent," had not yet been filed.  (*Id.*).  Notwithstanding this evidence, Defendant

---

RJN - EXHIBIT B
Page 000021

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 22 of 51   Page ID
#989
Case 2:15-cv-02342-MWF-VBK   Document 39   Filed 03/24/16   Page 7 of 15   Page ID #:838

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

JS-6

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**

Title:        Western World Insurance Company -v- Professional Collection Consultants

has failed to raise a triable issue of fact regarding whether Defendant's answer "No" amounted to a misrepresentation of the facts.

Even construing all permissible inferences in Defendant's favor, no reasonable jury could conclude that a criminal investigation cannot be "reasonably [] expected to result in or be the basis of a future claim." (PSUF ¶ 9). In other words, although it is true that a criminal investigation may not necessarily raise the specter of civil claims or criminal charges, no reasonable jury could conclude that it would be **unreasonable** to expect civil claims or criminal charges to be filed following a criminal investigation. For example, even if the federal criminal investigation had ended before February 2014 (which it did not), the alleged acts could still give rise to civil liability under the lower burden of proof in civil cases.

The Court does not credit Defendant's argument that its "literal answer" to the question put Plaintiff on notice of potential claims. (Opposition at 16). According to Defendant, its answer in the negative combined with the poor drafting of the question "functionally worked to create a double negative," which in its literal interpretation served as an answer in the affirmative. (*Id.*). This argument is unsupported when the application is considered as a whole. The instructions at the beginning of the application explain that:

> Applicants that answer "Yes" to questions asked below may require substantially different terms and conditions at renewal. Please provide detailed information to any questions answered "Yes" with[in] the space provided at the end of this application. In addition, please attach the documents requested in the Specify Attachments Section.

(Declaration of Gregg C. Rentko in Support of Motion ("Rentko Decl."), Docket No. 28 Ex. A at 1). It is true that the question at issue could have been worded more clearly, but the instructions above clarify the meaning of the question. Given that answering "Yes" may require "substantially different terms and conditions at renewal," Defendant's answer "No" would not put Plaintiff on notice of the potential claims.

---

CIVIL MINUTES—GENERAL                                          7

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 23 of 51   Page ID
                                              #:890
Case 2:15-cv-02342-MWF-VBK   Document 39   Filed 03/24/16   Page 8 of 15   Page ID #:839

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL                                    JS-6

**Case No.  CV-15-2342-MWF (VBKx)**          **Date:  March 24, 2016**
Title:      Western World Insurance Company -*v*- Professional Collection Consultants

Furthermore, Defendant did not attach any of the additional information requested
when an applicant answers "Yes," which reinforces the understanding that Defendant's
answer "No" meant exactly that.

### 2.      Materiality

Defendant argues that the application did not specifically ask whether Defendant
was under investigation, and therefore, its non-disclosure does not justify rescission.
Specifically, Defendant challenges the materiality of the misrepresentation when
Defendant was not required to answer the question that prompted the
misrepresentation.  (Opposition at 12–15).

At an initial glance, Plaintiff's claim of materiality appears somewhat
undermined by the fact that, under the circumstances, the application did not require
Defendant to respond to the question at issue.  (Opposition at 15; Rentko Decl. Ex. A
at 3 ("Please answer this question only if the Applicant is applying for limits of
Insurance that exceed the expiring coverage currently written . . . .")).  In other words,
had Defendant not volunteered the information, there would be no underlying
misrepresentation to form the basis of Plaintiff's rescission claim.  In fact, the
application expressly distinguished its need for this information between applications
that seek to maintain from those that seek to increase existing coverage.

"The fact that the insurer has demanded answers to specific questions in an
application for insurance is in itself usually sufficient to establish materiality as a
matter of law."  *Unionamerica Ins. Co. v. The Fort Miller Grp., Inc.*, 379 F. App'x
598, 599 (9th Cir. 2010) (citing *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904,
916, 109 Cal. Rptr. 473 (1973)).  Here, however, the application did not demand
answers to the specific question at issue.  For this reason, the cases that Plaintiff cites
are distinguishable.  *See, e.g.*, *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*,
156 Cal. App. 4th 1259, 1267, 67 Cal. Rptr. 3d 917 (2007) (application expressly
asked insured whether it "had been or was currently involved in a joint venture, and
whether it had a labor interchange with any other business"); *Mitchell v. United Nat.
Ins. Co.*, 127 Cal. App. 4th 457, 475–76, 25 Cal. Rptr. 3d 627 (2005) (application

---

**CIVIL MINUTES—GENERAL**                                              8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**JS-6**

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**
Title:      Western World Insurance Company -v- Professional Collection Consultants

expressly asked "questions concerning the ownership, size and condition of the building, the nature of the business to be conducted, and its payroll and receipts, and the existence of insurance under the FAIR Plan"); *Thompson*, 9 Cal. 3d at 914 ("Occidental contends that Thompson misrepresented or concealed the answers to questions 5 and 6."); *Zurich Am. Ins. Co. v. Expedient Title, Inc.*, No. 3:11-CV-001633 (MPS), 2015 WL 9165875, at *1 (D. Conn. Dec. 16, 2015) (application expressly asked "about whether any of [the insured's] officers was the subject of a governmental investigation"); *Upper Deck Co. v. Endurance Am. Specialty Ins. Co.*, No. 10CV1032 JM WMC, 2011 WL 6396413, at *6 (S.D. Cal. Dec. 15, 2011) (application "required [insured] to identify whether [it] was aware of any alleged deficiencies, errors or omissions in work performed by [insured] that had not been previously been reported").

The Court notes, however, that the application Defendant submitted was a "***CNA-branded*** application form entitled EPack Extra Renewal Application." (PSUF ¶ 8). In other words, Defendant borrowed an application form from CNA, Defendant's existing insurance company, and submitted the application to Plaintiff for consideration. Therefore, the contents of the CNA application do not reflect the questions that Plaintiff seeks in its own application. Furthermore, having volunteered false information in the CNA application that denies any knowledge of potential claims against Defendant, Defendant in effect foreclosed Plaintiff's further inquiry into this information. Otherwise, according to the declaration submitted by Gregg Rentko, Plaintiff's Second Vice President in the Professional Lines Department of the Underwriting Division, "[a]n insured's knowledge of claims pending against it or circumstances that could give rise to a claim against it is a critical consideration in Western World's decision to write this coverage." (Rentko Decl. ¶ 10).

The Policy Agreement that issued explicitly states that Plaintiff relied on all information submitted by Defendant to determine the appropriate premium and coverage. (PSUF ¶ 7). Therefore, the misrepresentation became material when Defendant volunteered it in the application and Plaintiff subsequently relied on it. The Court's interpretation that materiality is determined at the time the Policy Agreement issued is supported by section 356 of the California Insurance Code: "The completion

---

CIVIL MINUTES—GENERAL                                              9

RJN - EXHIBIT B
Page 000024

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 25 of 51   Page ID
#:992
Case 2:15-cv-02342-MWF-VBK   Document 59   Filed 03/24/16   Page 10 of 15   Page ID #:841

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**JS-6**

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**
Title:      Western World Insurance Company -v- Professional Collection Consultants

of the contract of insurance is the time to which a representation must be presumed to refer."  Cal. Ins. Code § 356.   The fact that the CNA application did not request the specific information is irrelevant to whether Plaintiff would have demanded it. *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 181, 243 Cal. Rptr. 639, 644 (1988) (Materiality is "a subjective test; the critical question is the effect truthful answers would have had on [that insurer], not on some 'average reasonable' insurer.").   The Court notes that Defendant's reliance on *Stipcich v. Metropolitan Life Insurance Company*, 277 U.S. 311, 318 (1928) is misplaced because the Supreme Court reached its ruling under Oregon law.

Furthermore, the California Civil Jury Instructions also demonstrate that demand for the misrepresented information is not an element of a rescission claim based on misrepresentation.  The CACI instruction for "Rescission for Misrepresentation or Concealment in Insurance Application—Essential Factual Elements" requires that "the application asked for [the] information" *only when* the claim is based on concealment rather than misrepresentation.  CACI Instruction No. 2308 ("Element 3 applies only if plaintiff omitted information, not if he or she misrepresented information.").  As for materiality, CACI requires only "[t]hat [the insurer] would not have issued the insurance policy if [the insured] had stated the true facts in the application."  *Id.*  This requirement is consistent with the definition of "materiality" in the California Insurance Code:

> Materiality is to be determined not by the event, but
> solely by the probable and reasonable influence of the
> facts upon the party to whom the communication is due,
> in forming his estimate of the disadvantages of the
> proposed contract, or in making his inquiries.

Cal. Ins. Code §§ 334 (concealment), 360 (misrepresentation).

Plaintiff's declaration from its Second Vice President, who bore the "ultimate responsibility for the decision to issue" the Policy Agreement, confirms that Plaintiff "would not have issued the policy to [Defendant] had it known of the ongoing federal

---

RJN - EXHIBIT B
Page 000025

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 26 of 51   Page ID
#:998
Case 2:15-cv-02342-MWF-VBK   Document 59   Filed 03/24/16   Page 11 of 15   Page ID #:842

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

JS-6

Case No.  CV-15-2342-MWF (VBKx)                    Date:  March 24, 2016
Title:      Western World Insurance Company -v- Professional Collection Consultants

criminal investigation and whistleblower claims against [Defendant]." (Rentko Decl.
¶¶ 2, 10). Although "the trier of fact is not required to believe the 'post mortem'
testimony of an insurer's agents that insurance would have been refused had the true
facts been disclosed," Plaintiff's declaration satisfies the materiality element in the
absence of any contrary evidence. *Nieto*, 181 Cal. App. 4th at 77–78 (summary
judgment appropriate when insurance company's declarations "constituted the only
evidence on the point" of materiality); *see also LA Sound USA*, 156 Cal. App. 4th at
1269 ("Contrary to plaintiffs' claim, St. Paul had no obligation to produce the specific
underwriter who reviewed the application. Materiality may be shown by the effect of
the misrepresentation on the 'likely practice of the insurance company'—'[t]he test is
the effect which truthful answers would have had *upon the insurer.*'" (emphasis in
original and citations omitted)).

At the hearing, defense counsel argued that discovery is still pending regarding
the actual underwriting decision at issue in this case. But evidence of actual reliance
on the misrepresentation is not necessary to Plaintiff's claim. An "insurer can make an
adequate showing that the misrepresentation was material to its decision, without
actually presenting testimony from the underwriters who reviewed the application.
Rather, '[m]ateriality may be shown by the effect of the misrepresentation on the
'likely practice of the insurance company . . . .'" *Sigelman v. Lawyers' Mut. Ins. Co.*,
No. D050783, 2008 WL 4418183, at *12–13 (Cal. Ct. App. Oct. 1, 2008) ("[T]o the
extent that Plaintiff now contends that Insurer failed to prove actual reliance on the
alleged misstatements or omissions in the application, Plaintiff mistakenly relies upon
inapposite tort cases involving fraud and deceit."), *as modified on denial of reh'g* (Oct.
28, 2008).

"[M]ateriality . . . must be determined 'solely by the probable and reasonable
influence' which the admittedly undisclosed information would have had upon [the
insurer's] decision to issue the policy." *Imperial Cas. & Indem. Co.*, 198 Cal. App. 3d
at 181. "[A] simple incorrect answer on an insurance application will not give rise to a
defense of fraud, where the true facts, if known, would not have made the contract less

CIVIL MINUTES—GENERAL                                                      11

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 27 of 51   Page ID
#:994
Case 2:15-cv-02342-MWF-VBK   Document 59   Filed 03/24/16   Page 12 of 15   Page ID #:843

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**JS-6**

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**
Title:        Western World Insurance Company -v- Professional Collection Consultants

desirable to the insurer." *Merced County Mut. Fire Ins. Co. v. State*, 233 Cal. App. 3d
765, 773, 284 Cal. Rptr. 680 (1991) (citing *Thompson*, 9 Cal. 3d at 916).

Misrepresentations are material, however, when the insurer would have
evaluated the risk to be insured differently, such as by denying the policy or charging
different premiums, if the true facts had been known. *Century Sur. Co. v. Helleis*, 539
F. App'x 749, 750 (9th Cir. 2013) (citing *Old Line Life Ins. Co. v. Superior Court*, 229
Cal. App. 3d 1600, 1606, 281 Cal. Rptr. 15 (1991)).  Based on the evidence presented
at summary judgment, no reasonable jury could conclude that knowledge of the
criminal investigation would not have, at a minimum, altered Plaintiff's evaluation of
the risk in issuing the Policy Agreement.  Indeed, "other courts and commentators have
recognized that the existence of circumstances that can lead to litigation are material to
an insurer's decision to issue a directors and officers' liability policy," which is the
precise type of policy at issue in this case. *Jaunich v. Nat'l Union Fire Ins. Co. of
Pittsburgh, Pa.*, 647 F. Supp. 209, 211 (N.D. Cal. 1986); *accord Butcher v. Gulf Ins.
Co.*, No. C 03-3553 PJH, 2005 WL 1514086, at *12 (N.D. Cal. June 15, 2005) ("[T]he
existence of circumstances that can lead to litigation are material to an insurer's
decision to issue a policy, particularly when the information has been specifically
requested as part of the insurance application.").

**3.  Nexus Between Misrepresentation and Claimed Loss**

Defendant dedicates a portion of its Opposition to argue that the employment
termination claims and criminal investigation are not related.  (Opposition at 17).

It is not necessary, however, that an insured's misrepresentation relate to the loss
ultimately claimed by the insured.  The question is whether the misrepresentation is
such that, if Plaintiff had known the true facts regarding the criminal investigation, it
would have made further inquiries or would have been influenced materially in its
decision in accepting the risk.  Here, there is sufficient evidence that, if Plaintiff had
known about the criminal investigation, it would not have issued the policy.  The law
does not impose a nexus requirement between the misrepresentation and claimed loss
at issue.  *See, e.g., Torbensen v. Family Life Ins. Co.*, 163 Cal. App. 2d 401, 405, 329

RJN - EXHIBIT B
Page 000027

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

JS-6

**Case No.  CV-15-2342-MWF (VBKx)**                    **Date:  March 24, 2016**

Title:       Western World Insurance Company -*v*- Professional Collection Consultants

P.2d 596 (1958) (because insurer may never have issued the policy had it known of insured's heart condition, insurer was entitled to rescind on the basis that insured had misrepresented that he had never been diagnosed with heart disease even though insured died of lung cancer).

Because Defendant misrepresented material information in its application, Plaintiff's motion for summary judgment is **GRANTED**, and Defendant's conclusory "cross-request for summary judgment" as to rescission is **DENIED**.  Because the Court concludes that rescission is proper, the Court does not reach the alternative issues raised by Plaintiff regarding "prior knowledge."

   **B.       No Duty to Defend or Indemnify**

   A rescission "effectively renders the policy totally unenforceable from the outset, so that there never was any coverage . . . ." *Atmel*, 426 F. Supp. 2d at 1044.  A rescinded insurance contract extinguishes the policy *ab initio*, "as though it never existed," and those claiming to be insureds "in law, never were insureds under [the] policy of insurance." *Id.* at 1045.  Therefore, "there is no duty to defend if an insurer has unilaterally rescinded a policy unless and until the rescission has been set aside." *Id.* at 1044–46.

   Because summary judgment is granted in favor of Plaintiff regarding rescission, the Motion is also **GRANTED** as to Plaintiff's request for declaratory judgment that Plaintiff does not have a duty to defend or indemnify Defendant.

   Defendant's counterclaims alleging Plaintiff's failure to defend or indemnify are therefore moot. *See, e.g.*, *Imperial Cas. & Indem. Co.*, 198 Cal. App. 3d at 184–85 ("upon a rescission of a policy of insurance, based upon a material concealment or misrepresentation, all rights of the insured thereunder (except the right to recover any consideration paid in the purchase of the policy) are extinguished"); *U.S. Fid. & Guar. Co. v. Lee Investments LLC*, No. CVF995583OWW/SMS, 2008 WL 5101345, at *17 (E.D. Cal. Dec. 3, 2008) (rescission of insurance contract bars breach of contract and breach of implied covenant of good faith and fair dealing claims).  Defendant's

_____

**CIVIL MINUTES—GENERAL**                                      **13**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES—GENERAL

Case No.  **CV-15-2342-MWF (VBKx)**                    Date:  **March 24, 2016**

Title:      Western World Insurance Company -*v*- Professional Collection Consultants

---

singular reliance on an ***Illinois*** case for the proposition that an insurer must seek rescission in a reasonably prompt manner is inapposite.  (Opposition at 21 (citing *Certain Underwriters at Lloyd's, London v. Abbott Labs.*, 16 N.E. 3d 747, 758 (Ill. App. Ct. 2014))).

### C.      Defendant's Request to Continue

In the alternative, Defendant requests that, if the Court is inclined to grant summary judgment, Defendant be allowed to complete discovery before the Court renders a decision.  (Opposition at 21–22).

Under Rule 56(d):

> [A] trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims.  The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Based on the authorities cited above, the outstanding discovery is not essential to the opposition.  Based on the undisputed facts, and regardless of what the discovery responses would be, no rational jury could ever find in favor of Defendants.

Accordingly, Defendant's request is **DENIED**.

---

**CIVIL MINUTES—GENERAL**                                                     14

RJN - EXHIBIT B
Page 000029

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES—GENERAL

Case No.  **CV-15-2342-MWF (VBKx)**                    Date:  **March 24, 2016**

Title:        Western World Insurance Company -*v*- Professional Collection Consultants

## IV.   **CONCLUSION**

For the above reasons, the Motion is **GRANTED**.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.

IT IS SO ORDERED.

RJN - EXHIBIT B
Page 000030

**EXHIBIT "C"**

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 32 of 51   Page ID
Case 2:15-cv-02342-MWF-VBK   Document 43   Filed 01/02/18   Page 1 of 7   Page ID #:898
#:899

**FILED**

**NOT FOR PUBLICATION**

JAN 02 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY, | No.   16-55470 |
| Plaintiff-Appellee, | DC No. CV 15-2342 MWF |
| v. | MEMORANDUM[*] |
| PROFESSIONAL COLLECTION CONSULTANTS, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted December 5, 2017
Pasadena, California

Before:   TASHIMA and BERZON, Circuit Judges, and KENNELLY,[**]
District Judge.

In August 2013, FBI agents executed a search warrant at the offices of

Professional Collection Consultants ("PCC").  Over the next several months,

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

investigators subpoenaed several PCC employees and PCC produced thousands of

documents.  In February 2014, PCC applied for directors and officers liability

insurance from Western World Insurance Co. ("Western"), and Western issued

PCC a policy.  PCC had submitted (and Western accepted) a CNA insurance

renewal application form, even though Western is not a CNA Company and PCC

was not renewing a Western policy.  In 2015, Western moved to rescind the policy

on the basis that PCC made a material misrepresentation in its application.  The

disputed question read:

> None of the individuals to be insured under any Coverage Part (the
> "Insured Persons") have a basis to believe that any wrongful act,
> event, matter, fact, circumstance, situation, or transaction, might
> reasonably be expected to result in or be the basis of a future claim?

PCC marked "No."

The district court granted Western's summary judgment motion for

rescission and denied PCC's request for additional discovery.  PCC appealed.  We

have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's

grant of summary judgment, *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100,

1104 (9th Cir. 2017), and we review for abuse of discretion the denial of a

discovery continuance, *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir.

2006).  We affirm.

2

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 34 of 51   Page ID
#:1001
Case 2:15-cv-02342-MWF-VBK   Document 46   Filed 01/02/18   Page 3 of 7   Page ID #:900

1.    PCC's answer was a material misrepresentation because it was aware

of existing circumstances – the federal investigation – that could lead to a claim

covered by the policy.  Under California law, a party may rescind an insurance

contract if the other party made representations "false in a material point."  Cal.

Ins. Code § 359.  "Materiality is determined solely by the probable and reasonable

effect which truthful answers would have had upon the insurer."  *Thompson v.*

*Occidental Life Ins. Co.*, 513 P.2d 353, 360 (Cal. 1973); *see also* Cal. Ins. Code §§

334, 360.  The materiality inquiry is a "subjective test viewed from the insurer's

perspective."  *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 104 Cal. Rptr. 3d 508,

520 (Ct. App. 2010), *as modified on denial of reh'g* (Feb. 22, 2010).  "[R]escission

effectively renders the policy totally unenforceable from the outset so that there

was never any coverage and no benefits are payable."  *Imperial Cas. & Indem. Co.*

*v. Sogomonian*, 243 Cal. Rptr. 639, 645 (Ct. App. 1988); *accord U.S. Fid. & Guar.*

*Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1136 (9th Cir. 2011).

PCC contends that it did not misrepresent the truth because, if the

application question is read literally, PCC's "no" answer informed Western that

PCC *was* aware of circumstances that could lead to a claim.  However, the form

instructions stated that a "yes" answer would require applicants to provide

"detailed information" about their answer and could precipitate "substantially

3

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 35 of 51   Page ID
#:1003
Case 2:15-cv-02342-MWF-VBK   Document 48   Filed 01/02/18   Page 4 of 7   Page ID #:901

different terms and conditions." PCC provided no additional information to

explain its answer. Given that context, Western reasonably understood PCC's

answer to mean PCC was not aware of any circumstances that could lead to a

claim. The policy covered claims arising from, *inter alia*, a civil, regulatory,

criminal, or administrative proceeding or investigation against PCC or any of the

individual insureds. Although PCC claims it thought the federal investigation was

over before PCC completed the application,[1] the only reasonable conclusion is that

the federal criminal investigation, even if closed or on hold, nonetheless *might* lead

to a claim under the policy.

PCC also contends its answer was immaterial because the question was

required only for applicants who, unlike PCC, sought increased policy limits.

Specific demand for information "is in itself usually sufficient to establish

materiality," *Thompson*, 513 P.2d at 360, but not necessary. Courts also "inquire

into the nature of the information withheld." *Taylor v. Sentry Life Ins. Co.*, 729

F.2d 652, 655 (9th Cir. 1984). Put simply, a misrepresentation is material when it

"regard[s] the nature of the risk to be insured." *Merced Cty. Mut. Fire Ins. Co. v.*

---

[1]     The investigation was in fact not over. The government issued
additional subpoenas in the Spring 2014. In November 2017, the government filed
a criminal information against PCC and PCC entered a plea of guilty pursuant to a
plea agreement.

*California*, 284 Cal. Rptr. 680, 685 (Ct. App. 1991).  PCC was not entitled to ·misrepresent the truth about the investigation simply because Western did not ask a specific question.

Moreover, Gregg Rentko, Western's senior underwriting executive, stated in a declaration that "Western World would not have issued the policy to PCC had it known of the ongoing federal criminal investigation."  PCC presented no contrary evidence.  Although the factfinder "is not required to believe the 'post mortem' testimony of an insurer's agents," *Thompson*, 513 P.2d at 360 (citations omitted), courts will accept an insurer's uncontradicted declaration as proof of materiality at the summary judgment stage.  *See Superior Dispatch*, 104 Cal. Rptr. 3d at 521–22 (concluding misrepresentation was material based on underwriter's uncontroverted declaration that truthful disclosure would have affected insured's premium or precluded policy issuance); *Mitchell v. United Nat'l Ins. Co.*, 25 Cal. Rptr. 3d 627, 639 (Ct. App. 2005) (concluding misrepresentation was material where underwriter declared she relied on insured's answers).  Western therefore carried its burden of showing materiality as a matter of law.

Nor did Western delay, as it moved to rescind the policy only after learning of the investigation.  *See LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*,

5

67 Cal. Rptr. 3d 917, 925–26 (Ct. App. 2007) (permitting rescission after insurer defended insured under reservation of rights until it discovered misrepresentation).

2. PCC requested additional discovery after Western moved for summary judgment.  Once a party moves for summary judgment, if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer the summary judgment motion to permit additional discovery.  Fed. R. Civ. P. 56(d).  Specifically, the party desiring additional discovery must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Here, PCC did not meet its Rule 56(d) burden.  PCC's declaration stated only in a conclusory fashion that additional discovery was "calculated to lead to the discovery of relevant evidence pertinent to the issues" on the summary judgment motion.  PCC identified some documents it wished to receive, but failed to "explain why those facts would have precluded summary judgment" if obtained. *Tatum*, 441 F.3d at 1100.  The district court did not abuse its discretion in denying PCC's discovery request.

**EXHIBIT "D"**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 24 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>PROFESSIONAL COLLECTION CONSULTANTS,<br><br>        Defendant - Appellant. | No. 16-55470<br><br>D.C. No. 2:15-cv-02342-MWF-VBK<br>U.S. District Court for Central California, Los Angeles<br><br>**MANDATE** |

The judgment of this Court, entered January 02, 2018, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Jessica F. Flores Poblano
Deputy Clerk
Ninth Circuit Rule 27-7

EXHIBIT "E"

1 LAW OFFICES OF CLARK GAREN
  CLARK GAREN (Cal. Bar No. 50564)
2 RACHEL ZWERNEMANN (Cal. Bar No. 286515)
  6700 South Centinela, Third Floor
3 Culver City, CA  90230
  Telephone: (310) 391-0800
4 Facsimile: (310) 636-4771
  Email: clarkgaren@msn.com
5 Email: rzwernemann@pcc-crs.com

6 LAW OFFICE OF DAVID W. WIECHERT
  DAVID WIECHERT (Cal. Bar No. 94607)
7 JESSICA C. MUNK (Cal. Bar No. 238832)
  115 Avenida Miramar
8 San Clemente, California  92672
  Telephone:(949) 361-2822
9 Facsimile: (949) 496-6753
  Email: dwiechert@aol.com
10 Email: jessica@davidwiechertlaw.com

11 Attorneys for Defendant,
   Professional Collection Consultants
12

13                 IN THE UNITED STATES DISTRICT COURT

14            FOR THE CENTRAL DISTRICT OF CALIFORNIA

15                         WESTERN DIVISION

16

17 WESTERN WORLD INSURANCE          | Case No. 2:15-cv-02342 MWF (VBKx)
   COMPANY,                         |
18                                  | DECLARATION OF CLARK GAREN
             Plaintiff,             | IN OPPOSITION TO WESTERN
19                                  | WORLD INSURANCE COMPANY'S
   v.                               | MOTION FOR SUMMARY
20                                  | JUDGMENT
   PROFESSIONAL COLLECTION          |
21 CONSULTANTS,                     | Date:  March 21, 2016
                                    | Time: 10:00 a.m.
22           Defendant.             | Ctrm: 1600
                                    | Judge: Hon. Michael W. Fitzgerald
23                                  |
                                    | Trial Date: November 15, 2016
24                                  | Complaint Filed: March 30, 2015
                                    | Discovery Cut-Off: July 8, 2016
25

26

27

28                                -1-
           DECLARATION OF CLARK GAREN Case No. 2:15-cv-02342 MWF (VBKx)

RJN - EXHIBIT E
Page 000038

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 42 of 51   Page ID
#:1909
Case 2:15-cv-02342-MWF-VBK   Document 30-10   Filed 02/29/16   Page 2 of 11   Page ID
#:587

## DECLARATION OF CLARK GAREN

I, Clark Garen, declare as follows:

1. If duly called as a witness and sworn to give testimony herein, my testimony would be as hereinafter stated.

2. All of the facts stated herein are within my own, personal knowledge.

3. I have been practicing law in California since January 5, 1972. I am admitted to practice law in California and in Texas.  I am also admitted to practice law before the United States Supreme Court; the United States Court of Appeals for the Ninth Circuit; the United States District Courts for the Central, Southern, Northern, and Eastern Districts of California, the Southern and Northern Districts of Texas, and the District of Arizona; and the United States Tax Court.  I am the Vice-President and General Counsel of Defendant Professional Collection Consultants ("PCC"), and have served as an attorney to PCC since 1975.

4. A true and correct copy of the Directors & Officers Liability, Fiduciary Liability, and Employment Practices Liability insurance policy, No. 425525639, with a $1,000,000 limit, issued to PCC by Continental Casualty Company for the period of February 17, 2013 and February 17, 2014, is attached hereto as Exhibit "A."

5. Gregory Hudson ("Hudson") was hired as a Collection Representative by PCC on February 3, 2002. His employment was terminated on March 19, 2014.

6. PCC did not know that Hudson reported what he believed to be illegal conduct to the California Employment Department ("EDD") in 2007 until PCC was given a copy of his proposed complaint and a written statement on January 13, 2015 at a mediation session attempting to resolve Hudson's claims. According to Hudson's written statement presented at the mediation, the EDD investigated Hudson's claim and dismissed it when they could find no evidence of wrongdoing.

7. Beblen Pole ("Pole") was hired as a Collection Representative by PCC on March 1, 2013. Her employment was terminated on February 18, 2014. She had

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 43 of 51   Page ID
#:1919
Case 2:15-cv-02342-MWF-VBK   Document 36-10   Filed 02/29/16   Page 3 of 11   Page ID
#:588

1   initially been hired by The Best Service Company on March 11, 2008, and came to

2   work for PCC when it acquired The Best Service Company.

3        8. Lisa McCann ("McCann") was hired as a H.R and Accounting Director by

4   PCC on February 28, 2013. This was a key position because PCC is a very small

5   company.  She went out on disability leave in February, 2014. When she had

6   exhausted all of her leave and was unable to return to work, she was terminated on

7   November 20, 2014.

8        9. Pursuant to a search warrant issued August 23, 2013 the Federal Bureau of

9   Investigation ("FBI") conducted a search of the PCC offices and seized evidentiary

10   material related to potential Title 18 violations including conspiracy, wire fraud and

11   theft or bribery concerning programs receiving federal funds. I clarify that while

12   PCC's Answer to Western World's Complaint, paragraph 82.D. can be read that

13   Hudson and other employees were interviewed during this search, they were not.

14        10. After the execution of the search warrant, I personally arranged for

15   attorney James Riddet to be retained on August 29, 2013 to represent Todd Shields

16   for the sum of $15,000.00, which was to cover all services prior to indictment. This

17   retainer was paid by PCC.

18        11. On August 30, 2013, I retained the law firm of Corrigan, Welbourn &

19   Stokke to represent PCC for the sum of $15,000.00 in connection with the August

20   23, 2013 search. This retainer was paid by PCC.

21        12. On August 30, 2013, the Law Offices of William Kopeny was retained to

22   represent Michael Flowers in connection with the August 23, 2013 search, for the

23   sum of $15,000.00.  This retainer was paid by PCC.

24        13. On September 4, 2013, the firm of Bienert, Miller and Katzman was

25   retained to represent Donald Hopp in connection with the August 23, 2013 search,

26   for the sum of $15,000.00. This retainer was paid by PCC.

27

28

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 44 of 51   Page ID
#:1031
Case 2:15-cv-02342-MWF-VBK   Document 30-10   Filed 02/29/16   Page 4 of 11   Page ID
#:589

14. On September 20, 2013, the sum of $5,000.00 was paid to James Riddet to cover the cost of investigation fees. This was paid by PCC.

15. On January 9, 2014, the sum of $4,000.00 was paid to attorney Robert Van Hoy to represent PCC employees who had been subpoenaed to testify before the grand jury. This was paid by PCC.

16. PCC paid a total of $69,000.00 in attorney fees and investigation expenses related to the FBI search warrant and subpoenas. I did not submit a claim for these expenditures or have PCC submit a claim under PPC's Continental Casualty Company Directors & Officers Liability, Fiduciary Liability, and Employment Practices Liability insurance policy, No. 425525639 for the policy period of February 17, 2013 to February 17, 2014 because I did not know that this policy extended coverage for these expenses or any expenses related to a criminal investigation. I assumed that such expenses were not insurable pursuant to California public policy. Had I known that coverage was afforded for these expenses, I would have certainly had PCC submit a claim therefor.

17. On or about September 11, 2013, I learned that the Assistant United States Attorney orally advised Todd Shields' counsel that Shields was a target of a federal investigation and faced imminent indictment. Shields' counsel responded by providing exculpatory information to the federal prosecutor.

18. In October, 2013 the United States Attorney's Office questioned three PCC employees before a grand jury.

19. In November, a grand jury subpoena was issued to two PCC employees, Michael Jackson, aka Ron Jacobs, and Gary Condon, aka Gary Gamble. Attorney Robert Van Hoy was retained by PCC to represent these employees in the grand jury investigation. The appearance dates were continued several times and eventually cancelled.

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 45 of 51   Page ID
#:1012
Case 2:15-cv-02342-MWF-VBK   Document 30-10   Filed 02/29/16   Page 5 of 11   Page ID
#:590

20. The FBI search warrant identified the crimes of bribery, conspiracy, and wire fraud. As an officer of PCC, I did not believe that the corporation or any of its employees had committed the crimes of bribery, conspiracy, or wire fraud. In addition, I did not believe that any of the documents obtained by the search warrants or subpoenas or any of the testimony provided by any of the witnesses provided sufficient evidence to sustain an indictment for bribery, conspiracy, or wire fraud. Since the indictment, which was supposedly imminent, had never been filed and since the investigation appeared to have been halted based on the exculpatory information provided to the Assistant United States Attorney and the evidence and testimony obtained, as well as the cancellation of the grand jury subpoenas, by February 7, 2014, I had concluded that the FBI had decided to close its investigation in to PCC.

21. It was only after PPC completed the Application, and the Policy was issued, did the federal investigation commence again when two grand jury subpoenas were issued in May 2014.

22. As stated in Paragraph 33 of the PCC Answer to the Western World Complaint, on or about June 17, 2013, I, in my capacity as Vice-President and General Counsel of PCC, personally counseled Hudson about his job performance. He complained that his supervisor was not fairly distributing accounts. This charge was investigated; the supervisor was discharged; and the accounts were re-distributed. A few days later, I personally questioned Hudson and he expressed satisfaction with the resolution. During the June 17, 2013 meeting, Hudson expressed an opinion that PCC was doing something illegal, but when I asked to specifically identify the practices that he through were illegal or questionable, he shrugged his shoulders and refused to provide any further response or details to me. Therefore, I assumed that Professional Collection Consultants was not doing anything that was illegal or unethical. I have now listened to three complete days of depositions with

Case 2:15-cv-02342-MWF-VBK   Document 63-1   Filed 05/30/18   Page 46 of 51   Page ID
#:1013
Case 2:15-cv-02342-MWF-VBK   Document 36-10   Filed 02/29/16   Page 6 of 11   Page ID
#:591

1   Hudson, and during those three days of depositions has still not articulated any

2   actions by PCC that I believe are either illegal or unethical.

3          23. A true and correct copy of the PCC Answer to the Western World

4   Complaint is attached hereto as Exhibit "B."

5          24. On or about March 19, 2014, I made the decision to terminate the

6   employment of Hudson. Trusted employees of PCC had reported to myself and Todd

7   Shields that Hudson had used the company ACH account to withdraw $100.00 from

8   an the trust account of an attorney of a debtor without authorization. Trusted

9   employees of PCC further reported to Todd Shields and me that Hudson had refused

10  to cooperate in and in fact had obstructed their attempts to identify the transaction

11  that resulted in the unauthorized withdrawal. Trusted employees of PCC reported to

12  me and Todd Shields that they believed the actions of Hudson were intentional.

13  Because of the potential damage an employee of PCC could do to the company by

14  intentionally misusing its ACH account privileges to make unauthorized withdrawals

15  from customer bank accounts, I made the decision to terminate Hudson.

16         25. Pole was terminated on February 18, 2014. On the date that she was

17  terminated, no one in the management of Professional Collection Consultants had

18  any knowledge or information that she was a whistle blower or had provided any

19  assistance whatsoever to any investigation, criminal or otherwise. Nor did PCC have

20  any knowledge that Pole ever complained of dishonesty by other PCC employees or

21  cited the FBI raid as evidence of PCC's lack of ethics.  Pole was an excellent

22  collector, but she had printed out about 50 collection notices that were illegal notices

23  because a printer error put the disclosures required by Federal and California law on

24  the back of the form instead of on the front of the form where they are required to be.

25  A supervisor pulled the illegal forms from the mailbox and explained why the forms

26  were illegal and asked her to re-issue them. The next work day, the supervisor found

27  the same illegal forms in the mailbox again. He again removed the forms from the

28

1   mailbox and asked Ms. Pole why she put those illegal forms in the mailbox again.

2   Ms. Pole became very angry, very threatening, and was completely out of control

3   yelling and screaming at the supervisor. As a result of the commotion, the collection

4   manager came to the scene and tried to quiet Ms. Pole. Her efforts were completely

5   unsuccessful. Ms. Pole continued to make a scene, disrupted the entire work floor

6   and work force, and left the company with no choice but to terminate her. Since

7   collectors as skilled as Ms. Pole are very difficult to find, the company really did not

8   want to terminate her, but her behavior that day left management with no choice.

9       26. McCann became a PCC employee through the acquisition of The Best

10   Service Company on February 28, 2013. She was employed in the capacity of H.R.

11   director and accounting director. She was the only employee who was responsible for

12   accounting. Because PCC has fewer than 50 employees, the H.R. and accounting

13   function was a key position and not easy to replace. McCann went out on disability

14   leave in February, 2014. She had a medical condition that truly prevented her from

15   working and doing her job, and it was the type of ailment that has no readily

16   effective treatment. When she went on disability leave, the management of PCC had

17   no knowledge that she was a whistle blower or that she had communicated in any

18   way with any investigating agency. PCC continued to allow Ms. McCann to remain

19   on disability leave and paid her health insurance premiums even after she had

20   exceeded the period for which leave was allowed or health insurance premiums had

21   to be paid. In September, 2014 management realized that the company could not

22   continue to function without hiring someone to perform the duties formerly

23   performed by McCann, so PCC retained outside counsel who formulated letters that

24   were sent to McCann inquiring about her disability status. When McCann was unable

25   to return to work in November, 2014 as she had previously stated she would be able

26   to return to work, her employment was terminated because a replacement had to be

27

28

-7-

1  hired to perform her accounting functions to prepare year end reports and income tax

2  returns.

3      27. PCC did not discover that McCann had communicated with the FBI until

4  McCann appeared at the unemployment hearing Hudson in May 2014 to testify on

5  his behalf. At a break from the hearing McCann told Todd Shields and myself that

6  she had told the FBI about all of the illegal activities of PCC. However, she never

7  identified specifically what those activities were.

8      28. PCC lacked the knowledge that Hudson, Pole and McCann were

9  "whistleblowers" until after they had been terminated and filed claims against PCC.

10  Furthermore all three employees were fired for cause for matters wholly separate to

11  any cooperation they may have provide to the government in its investigation. As the

12  ultimate decision maker for each of their terminations, I can state that their

13  terminations were in no way related to the federal investigation, a view which I have

14  repeatedly expressed to Western World's counsel.

15      29. On July 7, 2014, Hudson served a demand for mediation under his

16  employment contract with PCC. Western World agreed to defend this claim under a

17  reservation of rights letter dated August 7, 2014, a true and correct copy of which is

18  attached hereto as Exhibit "C."

19      30. PCC provided Western World with a copy of Hudson's EDD appeal

20  hearing, which discussed the federal investigation, on July 9, 2014. Western World

21  waited seven months, after PCC had accepted insurance-assigned counsel and paid a

22  $50,000 retainage, until January 9, 2015 to notify PCC that it would not honor its

23  coverage in a supplemental reservation of rights letter, a true and correct of which is

24  attached hereto as Exhibit "D."

25      31. As explained in paragraphs 87, 88 of PCC's Answer to the Western World

26  Complaint, this unreasonable delay prejudiced PCC in numerous ways, most

27  significantly in that Hudson refused several offers to settle because of the incorrect

28

1   belief that PCC had deep pockets because of its Western World insurance coverage,

2   and insurance assigned counsel's mishandling of the case and inflammatory

3   settlement offers.

4       32. On January 12, 2015 I responded promptly to Western World's denial of

5   coverage by letter, a true and correct copy of which is attached hereto as Exhibit "E."

6       33. Western world responded with a further denial advising they would be

7   seeking declaratory action as to their obligations under the Policy, in a letter dated

8   January 28, 2015, a true and correct copy of which is attached hereto as Exhibit "F."

9       34. On May 17, 2015 I sent a letter to Western World's counsel voicing my

10  concerns with the insurance-appointed defense, including the unsatisfactory mediator

11  that insurance-appointed counsel had vouched for, and the continued issue that

12  Hudson would not accept reasonable settlement offers because Hudson continued to

13  believe that PCC had insurance as long as insurance-appointed counsel was

14  representing PCC. A true and correct copy of this letter is attached hereto as Exhibit

15  "G."

16      35. On May 19, 2015 I sent a letter to Western World's counsel, noting that

17  even the insurance-appointed counsel supported the substitution. A true and correct

18  copy of this letter is attached hereto as Exhibit "H."

19      36. Western World's counsel responded on June 3, 2015 disregarding my

20  concerns and denying my request to be substituted in as counsel for PCC in order to

21  mitigate costs for all involved. A true and correct copy of this letter is attached hereto

22  as Exhibit "I."

23      37. Intentionally Left Blank.

24      38. I advised Western World's counsel in a June 9, 2015 letter that such denial

25  constituted bad faith on behalf of Western World, a true and correct copy of which is

26  attached hereto as Exhibit "J."

27

28

DECLARATION OF CLARK GAREN Case No. 2:15-cv-02342 MWF (VBKx)

1    39. Mediation is once against scheduled in the Hudson matter on March 5,

2  2016 and I fear that Western World's continued insistence that insurance-appointed

3  counsel attend will diminish the likelihood of Hudson accepting a reasonable

4  settlement.

5    40. If the CNA Application asked whether or not PCC was aware of or under

6  any federal investigation, both myself and Todd Shields would have truthfully

7  disclosed that it was.

8    41. As an attorney and a business owner, I am relatively familiar with insurance

9  and insurance policies. One of the basic fundamental insurance rules that I am aware

10  of is that in California it is against public policy to obtain insurance coverage for

11  indemnity for criminal or willful actions. In my 44 years as an attorney, I have looked

12  at and examined many insurance policies, but I have never looked at an insurance

13  policy that offered any coverage for criminal activities. Frankly, I never knew such a

14  policy existed. I never reviewed, or advised Todd Shields to review the Continental

15  Policy after commencement of the federal criminal investigation, as I believed it did

16  not cover criminal matters.

17    42.  Neither myself nor Todd Shields were given any definition as to what

18  constituted a "claim" as used in the CNA application. When PCC answered the CNA

19  Application page 3 question "no" on February 7, 2014, I did know of any facts or

20  have any basis to believe that Hudson, Pole or McCann had a claim for wrongful

21  termination, as all were still employed at PCC.  Also I did not notice that this question

22  only applied if PCC was requesting increased policy limits, which it was not.

23    43. PCC has exhausted its $50,000.00 retainage on the Hudson case and has a

24  $50,000 retainage on each of the Pole and McCann cases, which has not yet been

25  exhausted.

26    44. It was not until the FBI Search Warrant was issued on August 23, 2013 that

27  PCC learned that Hudson stated to other PCC personnel that PCC, including fellow

28

-10-
DECLARATION OF CLARK GAREN Case No. 2:15-cv-02342 MWF (VBKx)

Feb 28 Case 2:15-cv-02342-MWF-VBK Document 63-1 Filed 05/30/18 Page 51 of 51 Page ID
Case 2:15-cv-02342-MWF-VBK Document 30-10 Filed 02/29/16 Page 11 of 11 Page ID
#:596

1  employee Mike Flowers, illegally obtained and made use of private financial

2  information of debtors and believed that PCC would be forced to close.

3      45. When I was deposed by Western World's counsel I was under the erroneous

4  belief that the statute of limitations had expired for the Pole and McCann claims and

5  thus conditionally waived the claims based on such belief.

6      46. As I testified to in my deposition by Western World's counsel, PCC is sued

7  one to two times per year for relatively minor Fair Debt Collection Practices Act

8  violations, which I do not believe constitutes "regularly," and which is not unusual for

9  a debt collection company.

10     I declare under penalty of perjury under the laws of the United States that the

11 foregoing is true and correct.

12     Executed on February 27, 2016 at North Palm Springs, California.

13

14

15

16                    CLARK GAREN

17

18

19

20

21

22

23

24

25

26

27

28