**EXHIBIT "D"**

| | | |
|---|---|---|
| **Admitted to Practice**<br>*in*<br>**California and Texas** | *Law Offices of*<br>**CLARK GAREN**<br>ATTORNEYS AT LAW<br>P.O. BOX 1790, PALM SPRINGS, CALIFORNIA 92263<br>(760) 323-4901, Fax: (760) 288-4080 | *Host of*<br>***Night Bites***<br>*with*<br>***CLARK GAREN***<br>*syndicated Monday - Friday*<br>*from 11:30 P.M. to*<br>*12:30 P.M. on*<br>*TV CHANNEL 4*<br>*Palm Springs, Ca.* |

May 17, 2015

Mr. David A. Evans,
Selvin, Wraith, Halman, LLP,
505 14th Street,
Suite 1200,
Oakland, California 94612
Via Fax Only (510) 465-8976

Re: Western World Insurance vs.
Professional Collection Consultants,
U.S.D.C. Case No. 2:15-cv-02342

Dear Mr. Evans:

We talked early this month about our joint report. As I am leaving this Friday and will not return until June 13, I would like to get this report prepared and filed this week.

This letter has my Palm Springs contact information. This is where I spend most of my time. Accordingly, please do not expect to reach me at the Professional Collection Consultants phone number on the pleadings. If you really need to contact me, my cell phone number is (760) 668-7777, and it is the best number to reach me at.

As we discussed, the contents of this letter are not to be shared with current outside counsel unless and until they are no longer representing Professional Collection Consultants on any matters. I would not be comfortable in continuing to work with existing outside counsel if they should become aware of the contents of this letter.

1

I am proposing that the in-house counsel of Professional Collection Consultants take over the defense of the Hudson, McCann, and Pole cases. There are several reasons for this.

First of all, the primary damage award in employment cases consists of attorney fees. The defense gets to pay its own, and, if it loses, it also gets to pay the attorney fees of the claimant. An employer can cut its exposure in half by handling its defense in house.

In addition, Hudson is a particularly unrealistic claimant **because** he thinks Professional Collection Consultants has insurance. He thinks Professional Collection Consultants has insurance **because** we have retained outside counsel. Professional Collection Consultants always has its in house counsel handle all claims that are not covered by insurance. Substituting in-house counsel in place of outside counsel make Hudson and his attorneys believe that there really is no insurance. Since a collection agency is a business with no real assets, and since Professional Collection Consultants does not even have any clients currently assigning business, Hudson and his attorneys will soon realize that any large judgment they may collect will not be collectible.

That being said, I do not believe that either Hudson, McCann, or Pole will prevail. I believe their claims have no merit and are defensible. I just like to plan ahead for all contingencies, and I believe that substituting in house counsel into this case will really deflate the opposition because they will believe there is no coverage.

While I do not concede that Western World will prevail in its lawsuit against Professional Collection Consultants, I am concerned that Professional Collection Consultants could prevail in its lawsuits with Hudson, McCann and Pole, loose its coverage lawsuit with Western World, and still be forced out of business by the fee award Professional Collection Consultants will have to pay to Western World for a successful defense of the underlying claims. My client would rather avoid this possibility by taking over its defense from outside counsel **now!**

2

We would obviously still continue to litigate both cases. In the event that Professional Collection Consultants prevails against Western World, we would expect Western World to reimburse Professional Collection Consultants for the services of its in house attorneys and all court costs. However, we would not expect Western World to pay any attorney fees and court costs until its coverage lawsuit is concluded.

This is a wining resolution for Western World. It avoids paying any attorney fees or court costs until its coverage lawsuit is concluded. If the coverage lawsuit concludes in favor of Western World, Western World has not already paid a huge attorney fee bill to outside counsel that it cannot collect from Professional Collection Consultants. If, on the other hand, Western World fails to prevail in the coverage action, Western World only has to pay Professional Collection Consultants the attorney fees it would have owed to outside counsel anyway.

An additional and equally important reason for this request is that I do not have confidence in the outside counsel you have selected. These are the reasons for my lack of confidence.

Wendell vouched for the initial Hudson mediator. My client and I both felt the mediator was terrible and did not employ a good methodology. I do not believe this case would have settled anyway, but I was not pleased with the mediator that Wendell vouched for. I have been an attorney since January 5, 1972, and I have participated in many mediations, both as an attorney and as a court appointed mediator. I recognize a good mediator when I see one, and this mediator was sub-standard.

More concerning to me was the attitude of Wendell at the Hudson mediation. An issue arose over both counsel being served with pleadings. Wendell had failed to serve co-counsel, and co-counsel was complaining about it. Instead of apologizing for it, Wendell became belligerent and started a legal fight about it. Unfortunately, you and I as the client get to pay for this. We pay for the time spent fighting, and we pay for the difficulty in counsel getting along with each other resulting from this ill-advised dispute over an insignificant issue.

3

My next concern was over the McCann and Pole mediation. After my first unsatisfactory experience, I insisted that Tim Corcoran, a mediator with whom I have lots of experience, was selected to handle the mediation. Wendell disagreed and wanted to use someone her firm does a lot of business with who is, according to Wendell, a loose cannon. I did not like the idea of having a mediator who was a loose cannon, and I no longer trusted Wendell's recommendation on the subject. I communicated to Wendell that I was insisting on using Tim Corcoran, and Wendell then contacted Todd Shields, the President of the company, and pitched him to use her mediator. She called late Saturday night and appeared to Todd to have been drinking when she called Todd to pitch her mediator.

I certainly do not mind if outside counsel goes over my head to the company President, but I am used to receiving a certain amount professional courtesy in the way it is handled. This means that outside counsel seeks permission, or at least notifies me, that they are going over my head. I was very disappointed in the way this was handled.

I have been with this family owned business since 1973, and Todd is like a son to me. We work very well together, and I assure you it is not an issue of Wendell creating friction between myself and Todd. The issue is my concern over the lack of professional behavior and conduct by Wendell.

This gets a little worse. I was the person who made the decision to terminate Hudson, and Todd merely ratified my recommendation. This was clearly explained to Wendell when she was retained. However, Wendell initially prepared responses to interrogatories that stated that Todd was the only one who decided to terminate Hudson, and they left my name off of the answer completely.

This is a really important fact, since Todd is the target of the criminal investigation, not me. If Todd makes the decision to terminate, it raises the specter of retaliation. If I make the decision, retaliation is still an issue, but it is diminished since I am not the target of any criminal investigation. The incorrect answer to this interrogatory has the potential of seriously hindering the defense because it would require us to explain an initial incorrect response on a primary defense issue.

4

In addition, the discovery responses were full of absolutely ridiculous objections. For example, Plaintiff asked the form interrogatory question asking about our corporate structure. These are all matters of public record available to anyone on the California Secretary of State website. Outside counsel objected to providing this information on the ground of invasion of privacy.

It is my experience that these types of objections create unnecessary hostility between counsel, hostility that Western World and Professional Collection Consultants get to pay for. I just do not think this is a good expenditure of our money.

Finally, our contract had a provision waiving the right to trial by jury. I have repeatedly asked Wendell if this provision was enforceable, and I never received a straight answer. On another matter, I have discovered that such a pre-litigation clause is not enforceable in California because it violates public policy. Wendell should have told us about this immediately!

I am enclosing a copy of my resume. The highlights are that I was admitted to practice law in California on January 5, 1972 and I was admitted to practice in Texas on October 4, 1985. I am active in both states. I have no history of discipline in either state.
I have several published opinions to my credit, including one by the California Supreme Court.

Before joining Professional Collection Consultants, I was employed as Vice-President and General Counsel by J. J. MAC INTYRE CO., Which was one of the 100 largest collection agencies in the country. As house counsel, I was sent to an intensive five day seminar on employment offered by the America Bar Association - American Law Institute at Stanford University. I have continued to attend a yearly two and one-half day update seminar in Santa Fe, New Mexico offered by American Law Institute.

I regularly handle employment issues for my many clients, and I have previously defended two employment lawsuits against J. J. Mac Intyre Co. One was settled for a nominal sum after a Motion for Summary Judgment was defeated by the employee, and I prevailed in the other on a Motion for Summary Judgment. The employee appealed the adverse ruling, and I again prevailed on appeal.

5

My associate attorney, Rachel Zwnernemann, is a relatively new attorney but comes with an excellent legal education and a wonderful work ethic. We also employee three full time competent paralegals.

I would like to get this issue resolved as soon as possible. As you know, we have a mediation scheduled for June 16, along with outstanding unresolved discovery issues in the Hudson case. An early response would be appreciated.

Very truly yours,

LAW OFFICES OF CLARK GAREN

BY

CLARK GAREN