UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No. CV 15-2342-MWF (VBKx)   Date: July 13, 2018
Title:   Western World Insurance Company v. Professional Collection Consultants

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                         Court Reporter:
Rita Sanchez                          Not Reported

Attorneys Present for Plaintiff:      Attorneys Present for Defendant:
None Present                          None Present

**Proceedings (In Chambers):**   ORDER RE: WESTERN WORLD INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: QUANTIFICATION OF DAMAGES [61]

Before the Court is Plaintiff Western World Insurance Company's ("Western") Motion for Partial Summary Judgment Re: Quantification of Damages (the "Motion"), filed on May 30, 2018. (Docket No. 61). On June 11, 2018, Defendant Professional Collection Consultants ("PCC") filed an Opposition. (Docket No. 68). On June 18, 2018, Western filed a Reply. (Docket No. 69). The Court held a hearing on July 2, 2018.

For the reasons discussed below, the Motion is **GRANTED**. As to the requested principal amount of $201,901.47, PCC does not dispute that it must repay Western for the Hudson settlement, nor does it dispute the amount or reasonableness of Thompson Coe's fees and costs. PCC's sole argument is that Western should have permitted Clark Garen to replace Thompson Coe pursuant to *Cumis* and its progeny. But *Cumis* does not apply, PCC had no right to select its own counsel (Garen or anyone else), and Western acted within its authority in selecting Thompson Coe to defend PCC and denying Garen's request to replace Thompson Coe. As to the requested pre-judgment interest amount of $46,207.62, though Western's presentation of its calculations could have been clearer, the Court is satisfied that Western correctly arrived at this figure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-2342-MWF (VBKx)           Date:  July 13, 2018
Title:    Western World Insurance Company v. Professional Collection Consultants

As the Court noted at the hearing, it is impossible not to have sympathy for PCC.  Its lawyer predicted exactly what would happen, namely, a financial hit to his client that appeared to be avoidable.   But the law favors the carrier here.

## I. BACKGROUND

This Court's Order Granting Summary Judgment dated March 24, 2016 (the "March 24 Order") (Docket No. 39) and the Ninth Circuit's January 2, 2018 Memorandum affirming the March 24 Order (Docket No. 46) set forth a detailed background of this case, which the Court mostly does not repeat here.  Pertinent to the present Motion are the following facts, which are based on the evidentiary record, as viewed in the light most favorable to PCC as the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in favor of the non-movant).  The facts set forth below are undisputed.

In February 2014, PCC, a now defunct debt collection company, submitted an application to Western, an insurance company, for directors and officers liability insurance, and Western enrolled PCC in a "Directors, Officers, Insured Entity and Employment Practices" policy (the "Policy").

On March 20, 2015, Western commenced this action, seeking rescission of the Policy on the basis that PCC, in connection with its insurance application, failed to disclose that it may be exposed to legal claims in light of the fact that it had been under investigation by federal authorities since 2013 for illegal debt collection practices.

Through the March 24 Order, this Court granted Western's motion for summary judgment, rescinding the Policy and declaring that Western had no duty to defend or indemnify PCC – specifically in connection with lawsuits filed by former PCC employees Gregory Hudson, Beblen Pole, and Lisa McCann, who contended that they had been wrongfully terminated based upon their reporting of PCC's illegal (or potentially illegal) debt collection activities to authorities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 15-2342-MWF (VBKx)**                    **Date:  July 13, 2018**
**Title:**     Western World Insurance Company v. Professional Collection Consultants

PCC timely appealed the March 24 Order.  On January 2, 2018, the Ninth Circuit affirmed the March 24 Order; it issued its Mandate on January 24, 2018.  (Docket Nos. 46, 49).

Through its present Motion, Western seeks to establish its damages – *i.e.*, the sums it claims it expended defending and indemnifying PCC in the underlying wrongful termination actions, plus pre-judgment interest.

Pursuant to the Policy, Western defended and indemnified PCC under a reservation of rights in connection with former employees Hudson's and Pole's lawsuits against PCC, both of which were filed in Los Angeles County Superior Court.  (Defendant Professional Collection Consultants' Statement of Genuine Issues of Material Fact ("PCC SoF") (Docket No. 68-1) ¶ 1).  Western also agreed to defend PCC against claims by former PCC employee McCann, which were seemingly resolved through pre-suit mediation; Western incurred no costs in connection with McCann's claims.  (*Id.*).

Western retained the law firm Thompson Coe O'Meara ("Thompson Coe") to represent PCC in connection with the wrongful termination lawsuits.  (*Id.* ¶ 6; Declaration of Sara Parker ("Parker Decl.") (Docket No. 64) ¶ 6, Ex. E).

On May 17, 2015, Clark Garen, PCC's in-house attorney, sent a letter to Western's counsel, requesting that Western relieve Thompson Coe as counsel and allow him to defend PCC in the wrongful termination actions.  (Parker Decl. ¶ 5, Ex. D).  In his letter, Garen explained that PCC would like to reduce its litigation expenses in the event the Policy was ultimately rescinded (Garen was aware that this action, which was filed just three days later, would soon be filed), that it would like Hudson to believe that PCC did not have liability insurance (which would be more plausible if it did not have outside counsel), and that Garen did "not have confidence in" the lead attorney from Thompson Coe.  (Parker Decl. Ex. D at 2-3).  Garen also indicated that he "ha[d] been with [PCC] since 1973" and that he "was the person who made the decision to terminate Hudson…."  (*Id.* at 4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 15-2342-MWF (VBKx)          Date: July 13, 2018
Title:     Western World Insurance Company v. Professional Collection Consultants

On June 3, 2015, counsel for Western sent a letter to Garen indicating that Western declined Garen's request and that Western would continue funding Thompson Coe's defense of PCC subject to its reservation of rights. (Parker Decl. ¶ 6, Ex. E). Western explained that Thompson Coe had employment litigation experience and that Garen's "written request … [did] not show that [he had] the requisite experience in handling wrongful termination and discrimination lawsuits." (*Id.* at 1). Western also explained that, since Garen had been involved in Hudson's termination, he may become a witness in Hudson's case and therefore should not also act as PCC's attorney, in accordance with the "advocate-witness rule." (*Id.* at 1-2).

Between August 2014 and March 2016 (*i.e.*, prior to the rescission of the Policy), Western expended a total of $216,142.04 defending and/or indemnifying PCC in the Hudson and Pole lawsuits, itemized as follows:

- Hudson Attorneys' Fees:     $45,292.34
- Hudson Litigation Costs:     $20,814.70
- Hudson Settlement:     $150,000.00
- Pole Attorneys' Fees:     $35.00

(PCC SoF ¶ 11; Parker Decl. ¶ 7, Ex. F).

In light of the fact that the Policy premium ($14,240.57) is to be returned to PCC following rescission, Western's net defense- and indemnity-related expenditures were **$201,901.47** ($216,142.04 - $14,240.57). (PCC SoF ¶¶ 12, 13; Parker Decl. ¶¶ 7-9, Exs. F-H).

## II.    LEGAL STANDARD

In deciding motions under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-2342-MWF (VBKx)				Date:  July 13, 2018
Title:	Western World Insurance Company v. Professional Collection Consultants

P. 56(a).  "The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial."  *Coomes v. Edmonds Sch. Dist. No*. 15, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (citing *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quoting *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)).

Once the moving party comes forward with sufficient evidence, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."  *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (quoting *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991)).  "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249–50.

### III.  DISCUSSION

#### A.  Principal

PCC does not dispute that, in light of the rescission of the Policy, it owes Western the principal amount of $135,240.57, which represents the $150,000 Hudson settlement payment minus the $14,240.57 Policy premium return.  (Opp. at 1).  But PCC argues that Western is not entitled to summary judgment with respect to the additional amount sought.  (*Id.*).

PCC argues that it should not be responsible for attorneys' fees and costs associated with Thompson Coe's defense of PCC in the Hudson and Pole actions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 15-2342-MWF (VBKx)          **Date:** July 13, 2018

**Title:**     Western World Insurance Company v. Professional Collection Consultants

because Western should have allowed Garen (a salaried PCC employee who would not have billed PCC hourly) to assume PCC's defense. (*Id.* at 6-10). Specifically, PCC argues that "as of January 9, 2015, when Western World first notified PCC of its intent to move to rescind the Policy based on reasons related to the underlying issues in the Claims (the federal investigation), an impermissible conflict existed, entitling PCC to seek appointment of Garen as *Cumis* counsel." (*Id.* at 8).

    *Cumis* refers to *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.*, 162 Cal. App. 3d 358, 208 Cal. Rptr. 494 (1984). In that case, the Court of Appeal held that "where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." *Cumis*, 162 Cal. App. 3d at 375. *Cumis* has since been superseded by Civil Code section 2860, which provides, *inter alia*, that if "a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured….," and that "when an insurer reserves its rights on a given issue ***and the outcome of that coverage issue can be controlled by counsel first retained by the insurer*** for the defense of the claim, a conflict of interest may exist." Cal. Civ. Code § 2860(a)-(b) (emphasis added); *see United Enterprises, Inc. v. Superior Court*, 183 Cal. App. 4th 1004, 1010, 108 Cal. Rptr. 3d 25 (2010) (noting that *Cumis* has been superseded by section 2860).

    As PCC recognizes, a conflict of interest entitling an insured to *Cumis* counsel does not arise merely by dint of the insurer sending its insured a reservation-of-rights letter. *See, e.g., Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789, 797, 228 Cal. Rptr. 3d 228 (2018) ("Under section 2860, subdivision (b) and the relevant case law, 'not every reservation of rights entitles an insured to select *Cumis* counsel.'") (quoting *Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61 Cal. App. 4th 999, 1006, 71 Cal. Rptr. 2d 882 (1998)). Rather, in accordance with section 2860(b), "[t]here must … be evidence that 'the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 15-2342-MWF (VBKx) | Date: July 13, 2018 |
| Title: Western World Insurance Company v. Professional Collection Consultants | |

claim.'" *Gafcon, Inc. v. Ponsor & Associates*, 98 Cal. App. 4th 1388, 1421, 120 Cal. Rptr. 2d 392 (2002) (quoting *James 3 Corp. v. Truck Ins. Exchange*, 91 Cal. App. 4th 1093, 1102, 111 Cal. Rptr. 2d 181 (2001)) (alterations in original). Section 2860(b) thus means that "'[i]t is only when the basis for the reservation of rights is ***such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case*** that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise.'" *Centex*, 19 Cal. App. 5th at 798 (quoting *Gafcon*, 98 Cal. App. 4th at 1421-22).

Western's reservation of rights was premised entirely upon PCC's failure to disclose in its insurance application that it may be subject to claims in light of the fact that it had recently been the target of a federal investigation. For example, in the January 9, 2015 reservation-of-rights letter that PCC argues endowed it with the right to hire Garen as its wrongful-termination defense attorney, Western indicated that it intended to rescind the Policy because it had "now become aware that in September 2013, [PCC] became aware that it was the subject of a criminal investigation by the U.S. Attorney's Office that had been initiated by the claimant, Gregory Hudson, as the whistleblower," and that PCC failed to disclose that on its insurance application. (Parker Decl. ¶ 3, Ex. B).

The coverage dispute centered on whether PCC knowingly (or with a reasonable belief) failed to disclose the potential for a "future claim" against it in light of the federal investigation. (*See id.*). The underlying Hudson and Pole lawsuits centered on whether PCC acted with retaliatory motivation when it terminated those employees. Since these issues are separate from one another, Western's reservation of rights in this case did not endow PCC with a right to hire Garen or any other attorney of its choosing under *Cumis* and its progeny. *See Centex*, 19 Cal. App. 5th at 798 ("'[W]here the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel.'") (quoting *Gafcon*, 98 Cal. App. 4th at 1422).

PCC argues that Western's characterization (in this action) of the underlying wrongful termination actions as "whistleblower" actions somehow shows that "an

| | |
|---|---|
| **CIVIL MINUTES—GENERAL** | 7 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 15-2342-MWF (VBKx)           **Date:** July 13, 2018
**Title:**     Western World Insurance Company v. Professional Collection Consultants

actual conflict existed because 'the facts underlying the claim … show that [the underlying cases] could be litigated or defended in such a way as to affect coverage.'" (Opp. at 7) (quotation not attributed). This argument is mistaken. As an initial matter, the underlying actions were "whistleblower" actions in the sense that the former employees alleged they had been terminated in retaliation for providing information concerning PCC's illegal debt collection activities to authorities. (*See* March 24 Order at 3) ("These three employees … filed complaints in state court against Defendant for wrongful termination, alleging in part that they had been retaliated against for their whistleblowing activities."). Moreover, PCC does not explain, and the Court does not see, how Western's description, in this case, of the underlying litigation as "whistleblower" litigation could have possibly impacted Thompson Coe's defense in the underlying cases or how Thompson Coe's litigation decisions in the underlying cases could have possibly impacted Western's right to rescission in this action.

       During the hearing, counsel for PCC argued that the underlying whistleblower actions and this rescission action are sufficiently interrelated to trigger *Cumis* because the mere existence of the underlying litigation, which arose out of the federal investigation that PCC failed to disclose, somehow bolstered Western's rescission argument. But, as the Court noted in its March 24 Order (at 12-13), it is well settled that an insurer may rescind a policy on the basis of an insured's misrepresentation so long as the misrepresentation is material, regardless of whether the misrepresentation is related to the insured's (and thus the insurer's) loss. *See, e.g., Mitchell v. United Nat. Ins. Co.*, 127 Cal. App. 4th 457, 474, 25 Cal. Rptr. 3d 627 (2005) ("The misrepresentation need not relate to the loss ultimately claimed by the insured… The test for materiality is whether the information would have caused the underwriter to reject the application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts."); *Torbensen v. Family Life Ins. Co.*, 163 Cal. App. 2d 401, 405, 329 P.2d 596 (1958) (insurer was entitled to rescind on the basis of insured's failure to disclose in his life insurance application that he had been diagnosed with heart disease even though the cause of the insured's death was lung cancer). Western thus had nothing to gain in this action by either prolonging the underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 15-2342-MWF (VBKx)           Date:  July 13, 2018
Title:    Western World Insurance Company v. Professional Collection Consultants

whistleblower lawsuits (or otherwise altering its strategy in those cases to PCC's detriment) or by labeling them "whistleblower" lawsuits.

In sum, *Cumis* does not apply, PCC had no right to select its own counsel (Garen or anyone else), and Western acted within its authority in selecting Thompson Coe to defend PCC and denying Garen's request to replace Thompson Coe.  *See, e.g., Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1468, 78 Cal. Rptr. 3d 483 (2008) ("Generally, an insurer owing a duty to defend an insured … has the right to control defense and settlement of the third party action against its insured, and is … a direct participant in the litigation...  The insurer typically hires defense counsel who represents the interests of both the insurer and the insured.") (internal quotation marks and citations omitted).

Since PCC does not dispute the amount or reasonableness of Thompson Coe's fees and costs (Opp. at 14) and since Western appropriately retained (and continued retaining) Thompson Coe, PCC must reimburse Western for attorneys' fees and litigation costs incurred in connection with the Hudson and Pole cases.

Accordingly, the Motion is **GRANTED** as to the principal amount of **$201,901.47**.

### B. Pre-Judgment Interest

Western also seeks $46,207.62 in pre-judgment interest.  (Mot. at 5-6, 8-9, 11). According to Western, this amount represents "[t]en percent (10%) prejudgment interest from the date of each invoice…."  (Western World Insurance Company's Statement of Uncontroverted Facts ("Western SoF") (Docket No. 66-1) ¶ 14).  Western summarizes its total damages, including pre-judgment interest, in a chart attached to Ms. Parker's declaration as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 15-2342-MWF (VBKx)          **Date:** July 13, 2018
**Title:**     Western World Insurance Company v. Professional Collection Consultants

| **WWIC FEES/COSTS & SETTLEMENT** | | | |
|---|---|---|---|
| **Description** | **Amount** | **10% Interest** | **Total** |
| Hudson Fees | $45,292.34 | $9,397.81 | $54,690.15 |
| Hudson Costs | $20,814.70 | $4,501.69 | $25,316.39 |
| Pole Fees | $35.00 | $6.75 | $41.75 |
| **Subtotal** | $66,142.04 | $13,906.25 | **$80,048.29** |
| Hudson Settlement | $150,000.00 | $32,301.37 | $182,301.37 |
| **TOTAL EXPENDITURES** | **$216,142.04** | $46,207.62 | **$262,349.66** |
| Insurance Premium | ($14,240.57) | | ($14,240.57) |
| **TOTAL** | **$201,901.47** | **$46,207.62** | **$248,109.09** |

(Parker Decl. Ex. F at 1).

      In diversity actions, a prevailing party's entitlement to prejudgment interest, and in what amount, is governed by state law. *See, e.g., U.S. Fidelity & Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011). Section 3287(a) of the California Civil Code provides, in pertinent part as follows:

> A person who is entitled to recover damages ***certain, or capable of being made certain by calculation***, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 15-2342-MWF (VBKx)          **Date:** July 13, 2018
**Title:**     Western World Insurance Company v. Professional Collection Consultants

> except when the debtor is prevented by law, or by the act of
> the creditor from paying the debt.

Cal. Civ. Code § 3287(a) (emphasis added).

      Civil Code section 3289(b) – which Western does not cite but upon which the Court presumes it relies – provides that, in a breach of contract action where no prejudgment interest rate is specified in the contract, "the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b). Though Western has failed to explain its rationale for requesting 10% rather than some other amount, the Court presumes that this is the correct figure in light of section 3289(b) and in light of PCC's lack of opposition to the proposed percentage.

      Western contends that interest should be calculated from the date that it paid the $150,000 settlement in the Hudson case and, for the attorneys' fees and litigation costs incurred in the Hudson and Pole cases, from the date of each relevant Thompson Coe invoice. (*See* Mot. at 9; Parker Decl. Ex. F at 2-5). PCC does not dispute this method of calculation, and Western is correct, as Western's damages were "certain, or capable of being made certain by calculation" (Cal. Civ. Code § 3287(a)) on the date that the $150,000 settlement payment was made and on the dates that Thompson Coe issued its relevant invoices. *See, e.g., Lee Investments*, 641 F.3d at 1139 ("the test for awarding prejudgment interest under § 3287(a) … entail[s] a determination of whether the 'defendant actually knows the amount owed or from reasonably available information could … have computed that amount'") (quoting *Children's Hospital & Medical Center v. Bonta*, 97 Cal. App. 4th 740, 774, 118 Cal. Rptr. 2d 629 (2002)); *CoPart, Inc. v. Travelers Indemn. Co. of Illinois*, No. C-97-1862-VRW, 1999 WL 977948, at *2-3 (N.D. Cal. Oct. 22, 1999) (interest calculated from dates that attorney billed the insured).

      The Court (and, apparently, PCC) takes no issue with Western's general approach to the calculation of prejudgment interest. Although Western's implementation – or at least its display of its implementation – is somewhat difficult to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 15-2342-MWF (VBKx)                    **Date:**  July 13, 2018
**Title:**      Western World Insurance Company v. Professional Collection Consultants

follow, it appears that Western has implemented its approach correctly.  A summary of Western's calculations is reflected in Exhibit F to Ms. Parker's declaration, which is a table reflecting the dates and amounts of Thompson Coe invoices and the interest that has accrued between the invoice date and April 30, 2018.  The Court is not sure why Western chose April 30, 2018 as an end date since judgment will not be entered until at least July 2, 2018 (the date the Motion is being heard), but this choice obviously does not work to PCC's disadvantage.

Assuming April 30, 2018 is a proper cutoff date, Western's table indicates that it properly calculated the interest that accrued between the issuance of various invoices and April 30, 2018.  For example, Western calculates the interest due on the $150,000 Hudson settlement as $32,301.37, assuming 786 days between March 5, 2016 (the date of the settlement) and April 30, 2018 (Western's selected cut-off date).  (Parker Decl. Ex. F at 6).  Assuming a 10% annual interest rate, the daily interest on $150,000 would be approximately $41.10 ((0.10 ÷ 365) x $150,000 = 41.0958904).  This daily interest multiplied by 786 days equals $32,301.37, the amount of interest that Western seeks in relation to the $150,000 settlement payment.  Western's interest calculations are similarly accurate with respect to the other relevant payments/invoices.  (*Id.* at 3-6).

Because Western's methodology and calculations are correct, and since PCC offers no contrary arguments or evidence, the Motion is **GRANTED** as to Western's request for prejudgment interest in the amount of **$46,207.62**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**   CV 15-2342-MWF (VBKx)                           **Date:**  July 13, 2018
**Title:**     Western World Insurance Company v. Professional Collection Consultants

### III.   CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**.  PCC shall pay Western a sum of **$248,109.09**, which represents principal in the amount of $201,901.47 plus pre-judgment interest in the amount of $46,207.62.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.  Local Rule 58-6.

IT IS SO ORDERED.